LATHAM & WATKINS LLP
  Jessica Stebbins Bina (Bar No. 248485)
  *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:  +1 424.653.5501

BABST CALLAND
  Nicholas McDaniel (*pro hac vice* forthcoming)
  *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:  +1 202.853.3491

HOLLAND & KNIGHT LLP
  James W. Noe (*pro hac vice* forthcoming)
  *jim.noe@hklaw.com*
  Ashley Akers (*pro hac vice* forthcoming)
  *ashley.akers@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525
Facsimile: + 1 202.955.5564

*Attorneys for Defendants Sable Offshore Corp.*
*and Pacific Pipeline Company*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF PARKS AND RECREATION,<br><br>Plaintiff,<br><br>v.<br><br>SABLE OFFSHORE CORP., PACIFIC PIPELINE COMPANY, and DOES 1-50 inclusive,<br><br>Defendants. | Case No.   2:26-cv-2946<br><br>**DEFENDANTS SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S NOTICE OF REMOVAL**<br><br>Removed from Santa Barbara County Superior Court on March 19, 2026 Case No. 26CV01759<br><br>Complaint Filed: March 17, 2026 |

**TO THE CLERK OF COURT, PLAINTIFF, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Sable Offshore Corp. ("Sable Offshore") and Pacific Pipeline Company ("PPC") (collectively, "Sable"), through undersigned counsel, hereby file this Notice of Removal to remove the above-captioned action—with reservation of all defenses and rights—from the Superior Court of California, County of Santa Barbara, to the U.S. District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446.

This action involves the State of California's efforts to stop Sable from carrying out a federal directive from the U.S. Secretary of Energy, pursuant to authority delegated by the President of the United States. California has sued Sable for flowing oil through Sable's pipeline—the exact action mandated by the federal order. Removal is appropriate because this Court has federal officer jurisdiction.

## I.   BACKGROUND

1.   On March 17, 2026, Plaintiff the California Department of Parks and Recreation ("CDPR") filed a complaint in the Superior Court of the State of California, County of Santa Barbara, in the case captioned *California Department of Parks and Recreation v. Sable Offshore Corp.*, No. 26CV01759. A copy of the complaint is attached as Exhibit A.

2.   The complaint brings two causes of action for injunctive and declaratory relief. CDPR alleges that Sable's Santa Ynez Pipeline System includes a four-mile segment running underground through state land in Gaviota State Park. *See* Ex. A ¶¶ 1-2, 4. CDPR alleges that Sable lacks an easement to use that segment and therefore is "not currently authorized" to flow oil through the pipeline, yet nonetheless is flowing oil through that segment. *Id.* ¶ 2. CDPR therefore requests an injunction against use of that pipeline segment, an injunction ordering Sable to

"remove that segment of the Pipeline," and declaratory relief establishing the status of the easement and the parties' rights. *Id.* at 10.

3. CDPR's complaint is the second-filed lawsuit on this exact dispute. On March 13, 2026—four days prior to initiation of CDPR's suit—Sable filed a complaint against Armando Quintero, the Director of CDPR, in this Court. *See Sable Offshore Corp. v. Quintero*, No. 26-cv-02739 (C.D. Cal. Mar. 13, 2026). The *Quintero* complaint is attached as Exhibit E. As explained in the *Quintero* complaint, Sable initiated oil flow through the relevant pipeline segment in order to comply with a federal order commanding Sable to immediately begin flowing oil through the entire Santa Ynez Pipeline System, of which the segment is part, pursuant to the Defense Production Act (the "DPA Order," attached as Exhibit F). *Id.* ¶ 1. Sable asserts a claim for declaratory relief that CDPR is preempted—by the DPA Order and other federal law—and estopped from asserting easement-related obstacles to pipeline restart. Ex. E at 108-10.

4. CDPR was aware of the *Quintero* lawsuit when it filed the instant action.

## II. LEGAL STANDARD

5. A notice of removal requires only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), with "plausible allegation[s]" that this Court has jurisdiction, *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The notice "need not contain evidentiary submissions," and the Court should accept a removing defendant's allegations in the absence of countervailing evidence by the plaintiff. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924-25 (9th Cir. 2019).

## III. THIS COURT HAS FEDERAL OFFICER JURISDICTION

6. Under 28 U.S.C. § 1442(a), any "civil action . . . that is commenced in a State court and that is against . . . [t]he United States or any agency thereof or any

officer (or *any person acting under that officer*)" may remove to federal court. *Id.* (emphasis added). To fall within Section 1442(a), a defendant must (1) be "a person within the meaning of the statute," (2) show a "causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims," and (3) "assert a colorable federal defense." *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (alteration in original) (quoting *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019)).

7. The Supreme Court has "made clear that the statute must be 'liberally construed.'" *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). The "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Goncalves by & through Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). That is especially true where defendants wish to "assert federal immunity defenses," because the "'main point' of the federal officer removal statute '[was] to give officers a federal forum in which to litigate the merits of [those] immunity defenses.'" *Watson*, 551 U.S. at 151 (quoting *Jefferson County v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part)). And those "same considerations may apply" for "a private person [who] acts as an assistant to a federal official." *Id.*

### A. Defendants Are "Person[s]" Within The Meaning Of Section 1442(a)

8. Both Sable Offshore Corp. and Pacific Pipeline Company are corporations, and "[t]he courts of appeals have uniformly held that corporations are 'person[s]' under § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244 (second alteration in original). The first requirement of Section 1442(a) is therefore met.

### B. Defendants' Actions Occurred At The Direction Of A Federal

**Officer**

9.     The second prong of Section 1442(a) requires a "causal nexus" between Sable's conduct, a federal officer's directions, and CDPR's claims.  To demonstrate that "causal nexus," a defendant must show (1) that it was "'acting under' a federal officer in performing some 'act under color of federal office,'" and (2) a "causal[] connect[ion]" between the federally directed act and the plaintiff's claims.  *Chevron*, 32 F.4th at 755.

### 1.     **Sable Is "Acting Under" A Federal Officer**

10.     To assess whether a private party is "acting under" a federal officer, the Ninth Circuit looks to four factors: whether the defendant is (a) "working under an officer 'in a manner akin to an agency relationship'", (b) "subject to the officer's close direction," such as the "'guidance, or control' of the officer," or possessing an "'unusually close' relationship 'involving detailed regulation, monitoring, or supervision,'" (c) helping the federal officer to "fulfill 'basic governmental tasks,'" or (d) "conducting activities 'so closely related to the government's implementation of its federal duties that the . . . person faces "a significant risk of state-court prejudice."'"  *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022) (quoting *Chevron*, 32 F.4th at 756-57).

11.     Sable is subject to the "close direction" of the federal government, because it is under direct "federal control or supervision."  *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 728 (9th Cir. 2015).  It has restarted the pipeline because it was commanded to do so by the U.S. Secretary of Energy—a federal officer—acting under authority delegated by the President of the United States and through the DPA Order.  *See* Exec. Order 14391, 91 Fed. Reg. 13199 (Mar. 13, 2026).  The DPA Order is an express and targeted federal directive, naming only Sable and its wholly owned subsidiary Pacific Pipeline Company.  The DPA Order "direct[s]" and "order[s]" seven specific actions that Sable must perform,

including providing monthly reports to the Department of Energy on the volume of hydrocarbons transported or contracted for under the DPA Order during the previous month. *See* Ex. F at 116. "Sable is ordered to comply with this order immediately and to maintain such compliance until such time as the conditions necessitating the issuance of this order abate or until Sable is directed otherwise." *Id.*

12.     As the legislative history of Section 1442(a) makes clear, "[r]emoval is allowed" when the defendant's acts "are essentially ordered or demanded by Federal authority." H.R. Rep. 112-17 at 3 (2011). That is the case here: indeed, in related federal litigation, California has admitted, "[t]he DPA Order ***expressly requires Sable's immediate compliance with its directions***" and "imposes criminal penalties on defense contractors who refuse to comply." California Plaintiffs' Ex Parte Emergency Motion, *United States v. Plains All Am. Pipeline*, No. 2:20-cv-02415, at 13 (C.D. Cal. Mar. 16, 2026) (emphasis added).

13.     Direct federal supervision is also evident from a March 3, 2026 memorandum opinion of the U.S. Department of Justice's Office of Legal Counsel concerning the preemptive effect of Defense Production Act orders on state law with respect to *Sable* specifically.[1]

14.     Direct federal supervision is further evident from the restart process itself. As the United States has represented in other litigation, the pipelines have been "restarted under [federal regulators'] direct supervision," with federal officials "onsite with Sable during the restart of the Lines, beginning the morning after the Defense Production Act Order was issued." United States' Opposition to Ex Parte Emergency Motion, *Plains All Am.*, at 11-12 (C.D. Cal. Mar. 17, 2026). And federal regulators are on standby to exercise their "authority to order the immediate shutdown of the line" if they believe any problems have arisen. *Id.* at 12.

---

[1] *See* Preemptive Effect of Defense Production Act Order on State Law, slip op. (Mar. 3, 2026), https://www.justice.gov/olc/media/1429671/dl.

15. By contrast, cases rejecting federal officer removal have usually involved "arm's-length business arrangement[s] with the federal government," *Chevron*, 32 F.4th at 757, or defendants who "simply comply[] with the law" and no more, *Watson*, 551 U.S. at 152. As examples of conduct that does not justify removal, the Supreme Court listed "[t]axpayers who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, [and] for that matter well-behaved federal prisoners." *Watson*, 551 U.S. at 152. But these examples are a far cry from Sable, who has been specifically directed to operate a specific pipeline system and provide ongoing monthly reporting to the Department of Energy on the operation of that system. Far from merely following "generally applicable federal law[s], rule[s], and regulation[s]," *Goncalves*, 865 F.3d at 1249, Sable is the recipient of a targeted directive that lists specific tasks which it is required to perform, on pain of civil and criminal penalties. *See, e.g.*, *id.* at 1248-49 (allowing Section 1442(a) removal where government healthcare provider agreed to "extensive oversight" and contrasting with *Watson*'s taxpayer, traveler, and prisoner examples); *cf. City & County of Honolulu*, 39 F.4th at 1108 (rejecting as insufficient a DPA order that did not involve "close direction or supervision").

16. In addition, Sable is helping to fulfill "basic governmental tasks." *City & County of Honolulu*, 39 F.4th at 1107. Section 1442(a) is satisfied for defendants who are "helping the Government to produce an item that it needs." *Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 916 (9th Cir. 2024) (quoting *Watson*, 551 U.S. at 152-53). And when a private party produces goods that are "'used to help conduct a war' and at least arguably 'performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform,'" it qualifies for federal officer removal. *Chevron*, 32 F.4th at 757 (quoting *Watson*, 551 U.S. at 154). Here, Sable is producing oil from federal leases, as specifically directed by the federal government, and which the federal government has emphasized is necessary

for "our Nation's core national defense and security needs."  Ex. F at 114.  And unlike in *City and County of Honolulu*, where the court declined to find federal officer removal for oil and gas contractors sued for climate change who had produced oil and gas decades earlier under broad-spectrum DPA orders because "Defendants did not serve as government agents and were not subject to close direction or supervision," 39 F.4th at 1108, the situation here involves the Energy Secretary's determination that "restart of the pipeline is *essential*" to ensure "rapid and reliable regional fuel supply" and "military readiness" for U.S. Indo-Pacific Command and U.S. Northern Command, including specific "California military installations."  United States' Opposition to Ex Parte Emergency Motion, *Plains All Am.*, at 6-7 (C.D. Cal. Mar. 17, 2026).  And federal agents were accordingly present to supervise and monitor Sable's restart of the Santa Ynez Pipeline System, in compliance with the DPA Order.

17.    Further, California has treated Sable's actions as those of the federal government.  The day the DPA Order issued, Governor Newsom issued a release titled, "Governor Newsom condemns and vows to fight Trump for exploiting Iran war crisis of his own making to harm California's coastline: Sable Pipeline would have zero impact on oil or gasoline prices, but could once again damage the California coast."[2]  The release continued, "Governor Gavin Newsom today condemned President Trump and Energy Secretary Chris Wright's desperate, reckless, and illegal orders invoking the Defense Production Act to attempt to restart the Sable Offshore pipeline," and further argued "[t]he Trump administration and Sable are defying multiple court orders, and we will see them back in court."

---

[2] Press Release, Governor Gavin Newsom, Governor Newsom Condemns and Vows to Fight Trump for Exploiting Iran War Crisis of His Own Making to Harm California's Coastline (Mar. 13, 2026), https://www.gov.ca.gov/2026/03/13/governor-newsom-condemns-and-vows-to-fight-trump-for-exploiting-iran-war-crisis-of-his-own-making-to-harm-californias-coastline/.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF REMOVAL

18.   The present action is a paradigmatic example of why federal officer removal is appropriate.  The "purpose of the statute" is to "protect the Federal Government from the interference with its operations that would ensue were a State able" to take legal action "in a State court for an alleged offense against the law of the State." *Chevron*, 32 F.4th at 755-56 (quoting *Watson*, 551 U.S. at 150).  Even if unsuccessful, these "state-court proceedings may have the effect of impeding or delaying the enforcement of federal law." *Id.*  CDPR seeks to do precisely that: assert a state-law action, in state court, for an injunction and declaratory relief to prevent Sable from complying with an explicit federal directive.  Whatever the merits of CDPR's claims, they are properly decided in a federal forum.

### 2.   CDPR's Claims Are "Causally Connected" To A Federal Directive

19.   The DPA Order and Sable's resulting restart of the pipeline unquestionably bear a "causal[] connect[ion]" to CDPR's claims. *Chevron*, 32 F.4th at 755.  A defendant "'need show only that the challenged acts "occurred because of what they were asked to do by the Government,"'" and the court must "'credit the defendant's theory of the case.'" *DeFiore v. SOC LLC*, 85 F.4th 546, 557 (9th Cir. 2023) (first excerpt quoting *Goncalves*, 865 F.3d at 1245; second excerpt quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014)).  As California has argued in other litigation, Sable is "rely[ing] on the DPA Order to restart the Pipeline." California Plaintiffs' Ex Parte Emergency Motion, *Plains All Am.*, at 13.  And as CDPR stated in its complaint in this case, it brought this suit because "Sable began transporting oil through the pipeline." Ex. A ¶ 2.  This suit unambiguously resulted from the federal DPA Order and Sable's compliance with that federal directive.

### C.   Defendants Will Assert Federal Defenses

20.   To show a colorable federal defense, a defendant must merely present a defense that "depends on federal law." *Jefferson County*, 527 U.S. at 431.

Importantly, "the scope of the court's inquiry is only whether the defendant advanced a colorable federal defense, 'not whether [the] defense will be successful,'" and a "[d]efendant[] 'need not win [their] case' before removal." *DeFiore*, 85 F.4th at 558 (first quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); then quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). The federal defense is colorable as long as it is not "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *Id.* at 560 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

21. "When a plaintiff's alleged injuries arise from conduct of the defendant acting under federal law and the court is charged with 'the proper interpretation of . . . the statute' to 'determin[e] . . . the scope of [the defendant's] duties,' then a 'colorable federal defense' exists." *DeFiore*, 85 F.4th at 558 (alterations in original) (quoting *Mesa v. California*, 489 U.S. 121, 129-30 (1989)). And as the legislative history of Section 1442(a) makes clear, where the defendant's acts "are essentially ordered or demanded by Federal authority," that "gives rise to Federal defenses required by the statute." H.R. Rep. 112-17 at 3 (2011).

22. Under the Defense Production Act, "[n]o person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or [DPA] order." 50 U.S.C. § 4557. The DPA Order requires Sable to utilize the entirety of the Santa Ynez Pipeline System— including the limited four-mile segment within CDPR's jurisdiction—to assist in providing oil for refineries to promote the national defense and alleviate the national energy shortage. Sable's compliance with the DPA Order may require exceeding CDPR's interpretation of Sable's current rights to operate its existing pipeline within Gaviota State Park. And alongside the DPA's prioritization and allocation authorities, *see* 50 U.S.C. § 4511(a), (c), Section 4557's limitations on liability preempt and bar this action, or any other similar state-law legal or equitable action,

that in effect seeks to prevent Sable from complying with the DPA Order.

23.     The DPA thus constitutes a colorable federal defense.  The U.S. Secretary of Energy, acting under congressionally authorized authority, has ordered Sable to take certain actions in the interests of the United States and national defense. This action would have the direct effect of preventing compliance, and resolving it will necessarily involve ascertaining the scope and effect of the DPA Order.  If, as Sable believes, the DPA Order preempts CDPR's attempts to force disobedience, that will serve as a complete federal defense to the present action.

24.     Moreover, Sable has other federal defenses, including that the federal Pipeline Safety Act, 49 U.S.C. § 60101 *et seq.*, and its accompanying federal regulations preempt CDPR's demand that Sable adhere to CDPR's preferred state regulatory regime as a condition of clarifying the status of and/or renewing Sable's easement in Gaviota State Park.  The State has already recognized the propriety of federal courts addressing questions of preemption relating to the federal Pipeline Safety Act when it removed *Pacific Pipeline Co. v. California*, No. 1:26-cv-01486 (E.D. Cal.), from state court in Kern County to the U.S. District Court for the Eastern District of California based on Sable's assertion of the preemptive effect of federal law over state regulation of these same pipeline segments.

25.     To the extent any elements of this case are not covered by federal officer jurisdiction, this Court has federal question or supplemental jurisdiction.  *See* 28 U.S.C. §§ 1331, 1367, 1441.

## IV.   <u>DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES</u>

26.     **Removal is timely.**  Sable timely removed within thirty days of the filing of the complaint.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).  Sable has not yet ben served.

27.     **Removal is to the proper court.**  Because the Complaint was filed in

the Superior Court of California, County of Santa Barbara, removal is proper to the U.S. District Court for the Central District of California, which encompasses the location in which the complaint was initially pending in state court. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

28. **Notice is being provided forthwith.** Pursuant to 28 U.S.C. § 1446(d), upon filing of this Notice of Removal, Sable will promptly give written notice to CDPR and will promptly file a copy of this Notice with the clerk of the Superior Court of the State of California, County of Santa Barbara.

29. **All pleadings and process are attached.** Pursuant to 28 U.S.C. § 1446(a), a copy of the state court summons is attached hereto as Exhibit B. Copies of the civil case cover sheet, civil case cover sheet addendum, and case management order—all of which were filed in the state court action—are attached hereto as Exhibits C and D.

30. **Does 1-50 cannot join in removal.** Pursuant to 28 U.S.C. § 1446(b)(2)(A), only "defendants who have been properly joined and served must join in or consent to the removal of the action." Does 1-50 have not yet been ascertained or served and therefore cannot join in this Notice of Removal.

31. **Reservation of rights.** Sable reserves the right to amend or supplement this Notice of Removal. Sable further reserves all rights and defenses, including but not limited to those available under the Federal Rules of Civil Procedure.

## V. CONCLUSION

Sable respectfully requests that this Court exercise jurisdiction over this action, enter orders, and grant relief as may be necessary to secure removal and to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF REMOVAL

prevent further proceedings in this matter in the Superior Court of the State of California, County of Santa Barbara.

Dated:  March 19, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*
LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:   +1 424.653.5501

BABST CALLAND
Nicholas McDaniel (*pro hac vice* forthcoming)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

HOLLAND & KNIGHT LLP
James W. Noe (pro hac vice forthcoming)
jim.noe@hklaw.com
Ashley Akers (pro hac vice forthcoming)
ashley.akers@hklaw.com
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525
Facsimile: + 1 202.955.5564

*Attorneys for Defendants Sable Offshore Corp. and Pacific Pipeline Company*