Rob Bonta
Attorney General of California
Jessica E. Tucker-Mohl
Supervising Deputy Attorney General
Alice Segal (SBN 288108)
Matthew Struhar (SBN 293973)
Deputy Attorneys General
  600 West Broadway, Suite 1800
  San Diego, California 92101
  Tel: (619) 738-9640
  E-mail: Alice.Segal@doj.ca.gov
*Attorneys for Plaintiff*
*Department of Parks & Recreation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF PARKS AND RECREATION,**<br><br>Plaintiff,<br><br>v.<br><br>**SABLE OFFSHORE CORP., PACIFIC PIPELINE COMPANY,**<br><br>Defendants. | Case No. 2:26-cv-02946-WLH-MAA<br><br>**DECLARATION OF EMMA SIVERSON IN SUPPORT OF THE DEPARTMENT OF PARKS & RECREATION'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:          April 24, 2026<br>Time:          1:30 p.m.<br>Courtroom:   9B<br>Judge:         Hon. Wesley L. Hsu<br>Trial Date:    Not Set<br>Action Filed: 3/17/2026<br>Date Removed: 3/19/2026<br><br>Filed/Concurrently Lodged with: Motion for Preliminary Injunction; Declaration of Dena Bellman; Declaration of David Flora; Proposed Preliminary Injunction Order; Request for Judicial Notice |

I, Emma Siverson, declare as follows:

1. I am currently employed as a Senior Staff Counsel at the Department of Parks and Recreation ("State Parks"). I have held an attorney position with State Parks since 2017. I have personal knowledge of the facts stated in this declaration and could, if called upon to do so, testify competently thereto.

1

2. Since approximately April 2024, Sable has been in discussions with State Parks regarding obtaining an easement that would allow Sable to restart the transportation of oil through the Pipeline. On July 24, 2024, I sent an email to Lee Alcock, Assistant General Counsel of Sable Offshore Corporation ("Sable"), and copied Stephen Laperouse, Vice President of Land at Sable, among others. A true and correct copy of my July 24, 2024 email is attached hereto as **Exhibit J**. This email followed up on earlier correspondence from Mr. Laperouse at Sable, including a letter dated April 11, 2024 addressed to Kate Wilson, Senior Park and Recreation Specialist/Channel Coast District Planning Chief at State Parks. A true and correct copy of this letter is attached as **Exhibit I**. Rather than pursuing an easement as State Parks had recommended, Sable initially pursued a right of entry ("ROE") permit to perform the anomaly digs mentioned above.

3. On May 22, 2025, I, along with State Parks' representatives Liz McGuirk, Tara E. Lynch, Greg Martin, Dena Bellman, Brian Dewey, Darla Guenzler, Bahadur Mann, and representatives from the California Department of General Services, met with representatives of Sable to discuss Sable's interest in re-initiating its request for a pipeline easement through Gaviota State Park. During the meeting, State Parks explained the steps Sable would need to take to apply for an easement, and reiterated that Sable was not authorized to transport oil through the Pipeline unless and until it obtained an easement from State Parks.

4. On June 27, 2025, I sent a letter to Mr. Alcock and Sable's outside counsel that set forth the steps Sable would need to take to apply for an easement. A true and correct copy of my June 27, 2025 letter is attached hereto as **Exhibit K**.

5. On July 25, 2025, I sent an email to Sable's counsel stating that State Parks "believes [the Annual Permit] clearly does not allow restart. I explained to you why that is not possible in my June 27 letter." Attached hereto as **Exhibit L** is a true and correct copy of an email I sent to Christian Marsh, Sable's counsel, in the afternoon of July 25, 2025.

DECL. OF EMMA SIVERSON ISO MOTION FOR PRELIMINARY INJUNCTION (2:26-02946-WLH-MAA)

6. State Parks conducted a preliminary review of Sable's easement request and determined that the proposed activity (transporting oil under Gaviota State Park) is a discretionary project for purposes of the California Environmental Quality Act (CEQA). State Parks also determined that that activity is not exempt from CEQA. State Parks further determined that the specific location of a prior pipeline easement held by Celeron Corp. was not an accurate statement of the location of the easement being requested by Sable. Attached hereto as **Exhibit M** is a true and correct copy of my email to Mr. Marsh on August 1, 2025, explaining that additional areas of Gaviota State Park beyond what was listed as the legal description for the expired Celeron Corp. easement will need to be included as part of the "project description" for purposes of State Parks' CEQA evaluation. Sable has not satisfied all of State Parks' requests from Sable for information generally, including information required for the CEQA process, and the CEQA process is not complete.

7. In my role as legal counsel to State Parks, I am aware of the role environmental review plays in public agency decision-making. I am aware that other public agencies, state and federal, also conduct environmental review in connection with their decision-making. For example, I am aware that the federal Pipeline Safety and Hazardous Materials Administration (PHMSA) undertook a cursory environmental review prior to its December 2025 issuance of a (now-expired) Emergency Special Permit to Sable to operate Lines CA-324 and CA-325. However, State Parks would be faced with a different inquiry, in connection with its independent decision: the consequences of encumbering four miles of its public property for up to 30 years, factoring in any and all unique cultural and historic features, sensitive biological resources, and public visitation and recreation needs, with an easement to allow for oil to run in a pipeline across that property. Thus, the purpose of conducting CEQA review prior to State Parks specifically deciding here, in the context of whether to allow an easement to Sable to transport oil under Gaviota State Park, was to evaluate whether there would be impacts, for instance, to

DECL. OF EMMA SIVERSON ISO MOTION FOR PRELIMINARY INJUNCTION (2:26-02946-WLH-MAA)

natural, cultural, visual, or recreational values. Again, that analysis and inquiry has not been completed and it is unknown whether allowing an easement to Sable to transport oil under Gaviota State Park will cause irreparable harm to those natural, cultural, visual, and recreational values.

8. On August 5, 2025, and pursuant to his request, I sent Mr. Marsh what I believed was the final version of a ROE permit issued by State Parks to Pacific Pipeline Company ("PPC") on July 25, 2025 ("Annual Permit"), including the signatures of State Parks District Superintendent Dena Bellman and PPC's president J. Caldwell Flores (both dated July 25, 2025), and an errata to the permit that State Parks issued on August 1, 2025. See Declaration of Dena Bellman, **Exhibit E**. This Annual Permit provides PPC and Sable with limited access and maintenance rights in order to access the pipeline segment within Gaviota State Park. I subsequently discovered that the version of the permit I sent to Mr. Marsh on August 5, 2025, was incorrect, in that it contained language from an earlier version of the permit that was not included in the final version that State Parks issued on July 25, 2025. Therefore, on December 31, 2025, I sent Mr. Marsh, the complete and correct version of the permit, including the signature pages and the errata. Attached hereto as **Exhibit N** is a true and correct copy of my email to Mr. Marsh on December 31, 2025.

9. While Sable does have certain rights under the Annual Permit (which has not been revoked at present), those rights are limited to physical access to and minimal maintenance of the Pipeline and do not extend to ongoing operations, including the transportation of oil through the Pipeline. I am informed and believe that State Parks has made this clear to Sable on multiple occasions.

10. My last contact with any representatives of Sable was on approximately February 24, 2026 and no representative from Sable has contacted me since that time.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Date:   3/27/2026

DocuSigned by:

*Emma Siverson*

CCB27E34351F4F7...

Emma Siverson
Declarant

DECL. OF EMMA SIVERSON ISO MOTION FOR PRELIMINARY INJUNCTION (2:26-02946-WLH-MAA)



EXHIBIT I



April 11, 2024

Via email only:
Katharine.Wilson@parks.ca.gov

Kate Wilson
Senior Park and Recreation Specialist/Chief Planner
CA State Parks - Channel Coast
911 San Pedro Street
Ventura, CA  93001

Re: Pipeline Easement Request – Pacific Pipeline Company and California Department of Parks and Recreation

Dear Kate,

Thank you for meeting with us on Tuesday.  We appreciate your time and assistance in helping us to understand the process to extend the existing Right of Entry Permit, by and between the State of California, Department of Parks and Recreation and Pacific Pipeline Company, and to apply for a pipeline easement.  As you know, the pipeline was the subject of a Pipeline Easement by and between the State of California, Department of Parks and Recreation and Celeron Pipeline Company of California, effective July 28, 1986, as subsequently amended.

Please accept this letter as a formal request by Sable Offshore Corp., the current owner and operator of Pacific Pipeline Company, to initiate the process to obtain a new pipeline easement over, under and across a portion of Gaviota State Park as more fully described in the prior Pipeline Easement.

Thank you again for your help. Please let us know the next steps to expeditiously obtain the pipeline easement.

Regards,

**Stephen T. Laperouse**
**Vice President Land**
**Sable Offshore Corp.**
**845 Texas Avenue, Suite 2920**
**Houston, Texas  77002**
**Cell: (337) 316-3034**

845 TEXAS AVENUE, SUITE 2920, HOUSTON, TEXAS 77002

# EXHIBIT J

| From: | Siverson, Emma@Parks |
|---|---|
| To: | lalcock@sableoffshore.com |
| Cc: | slaperouse@sableoffshore.com; Bellman, Dena@Parks; Wilson, Katharine@Parks; Mann, Bahadur@Parks |
| Subject: | RE: State of California Department of Parks & Recreation (State Parks) - ROE |
| Date: | Wednesday, July 24, 2024 3:03:00 PM |

Hi Lee,

It sounds like there may be a misunderstanding from last week's call. I hope to clarify State Parks' perspective.

Sable does not currently have a land right to use its pipeline at Gaviota State Park. In order for Sable to restart the pipeline running through State Parks' land, it needs an easement. Last week we discussed that that process is underway in that the applicable divisions of State Parks are aware that Sable wants an easement, but it sounds like there's a misunderstanding of how far along we are. The easement process is a negotiation that requires an appraisal and compensation. Depending on what your project entails, it may also include mitigation.

As we explained last week, State Parks can issue a right of entry permit to authorize construction and access while an easement is being finalized. However, Sable is much too early in the process. I recommend we set up a meeting to discuss your easement request and State Parks' process. Last week all we were discussing was the right of entry permit which is about to lapse.

Therefore, to prevent further delay and the lapse of the existing the Right of Entry Permit, State Parks is willing to issue a new permit to provide access for maintenance of the pipeline, as it has been for the last few years. To the extent Sable needs access to the pipeline for any of the work it is required to complete by the OSFM or any other permitting, Sable needs to disclose that to Parks, as it could require CEQA and cultural monitoring.

Please let me know if you have any questions about this.

Thanks,
Emma

Emma Siverson (she, her, hers)
Senior Staff Counsel
California State Parks
916-584-5567 Mobile

**From:** Laperouse, Stephen <slaperouse@sableoffshore.com>
**Sent:** Monday, July 22, 2024 9:22 AM
**To:** Wilson, Katharine@Parks <Katharine.Wilson@parks.ca.gov>
**Subject:** State of California Department of Parks & Recreation (State Parks) - ROE

Kate,

Pursuant to our conference call last Thursday and discussion with folks here, we recognize that State Parks needed to have a subsequent conversation with the OSFM to affirm the role and responsibilities that OSFM was entrusted with in restarting Line 325. It is our understanding that State Parks has a scheduled call with OSFM tomorrow. To assist you with that call, I am forwarding a copy of the Consent Decree. As you will note, Appendix D contains a complete listing of the requirements that Pacific Pipeline Company ("PPC") must accomplish to ensure that the pipeline meets regulatory integrity before the pipeline is allowed to restart. In anticipation of State Parks satisfying its concerns regarding restart of Line 325, I am enclosing a revised ROE which provides PPC the ability to restart Line 325.

Lee and I would welcome a call with you and Dena after your conversation with the OSFM to discuss execution of the attached ROE, which provides PPC the ability to restart Line 325, subject to OSFM approval, while working towards a new easement agreement.

Appreciate all your help,
Stephen



**Stephen T. Laperouse**
**Vice President Land**
**845 Texas Avenue, Suite 2920**
**Houston, Texas  77002**
**Cell   (337-316-3034)**
slaperouse@sableoffshore.com

EXHIBIT K

State of California • Natural Resources Agency                                    Gavin Newsom, *Governor*

**DEPARTMENT OF PARKS AND RECREATION**                          Armando M. Quintero, *Director*
**Legal Office • Post Office Box 924896 • Sacramento, CA 94296-000**

June 27, 2025                                    ***Sent via Electronic Mail and Certified Mail***

Lee Alcock, Esq.
Assistant General Counsel
Sable Offshore Corp.
845 Texas Avenue, Suite 2920
Houston, TX 77002
lalcock@sableoffshore.com

Christian L. Marsh, Esq.
Downey Brand
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
cmarsh@downeybrand.com

Re: Gaviota State Park – Sable Offshore Easement Request

Dear Mr. Alcock and Mr. Marsh:

This letter follows a May 22, 2025, meeting between California Department of Parks and
Recreation ("State Parks"), the California Department of General Services ("DGS"), and
Sable Offshore Corporation ("Sable"). The purpose of the meeting was to discuss
Sable's request for a pipeline easement through Gaviota State Park. State Parks and
DGS explained the easement process, and what Sable will be required to submit as a
complete application, which I detail below.

*Impact of Current Litigation on Easement Request*

State Parks understands that there is ongoing litigation related to the Las Flores
pipeline system. Two of those cases currently have restraining orders against Sable and
other parties prohibiting actions toward restart of the pipeline. In Santa Barbara County
Superior Court case numbers 25CV02244 and 25CV02247, the judge's statement from
the bench could be interpreted to broadly include any further action on the pipeline
toward restart, such as negotiating this easement. To the extent Sable's actions related
to executing an easement with State Parks are limited by any restraining order or court
action, State Parks will not execute an easement until any applicable order is lifted.
Additionally, State Parks is aware of the preliminary injunction against Sable in Santa
Barbara County Superior Court case number 25CV00974, and that the result of that
litigation could impact this easement negotiation.

Page **1** of **5**

Alcock, et al
June 27, 2025
Page 2

State Parks requests Sable's confirmation and support for whether it is authorized to work on this easement application before the orders are lifted.

*Easement Request*

This easement request will be reviewed under Public Resources Code section 5012, which authorizes State Parks to grant an easement for oil pipeline purposes. The decision to grant an easement is a discretionary one.

State Parks requires full compensation to the department, including mitigation of any impacts to State Parks resources. To that end, State Parks must carefully consider impacts that may occur over the life of the encumbrance, including the burden and effect of ongoing maintenance and other intrusions. All issues related to maintenance and accessibility of the encumbered property shall be addressed.

    I.       <u>Cost Reimbursement Agreements</u>

As explained during the May 22, 2025 meeting, State Parks and DGS will need Sable to enter into cost reimbursement agreements. Please have Sable coordinate directly with Darla Guenzler, Chief of Acquisitions and Real Property Services Division, for State Parks' cost reimbursement agreement. Please have Sable coordinate directly with Mike Butler, Assistant Branch Chief, Real Estate Services Division, at DGS regarding the DGS' cost reimbursement agreement.

    II.      <u>Project Description</u>

As with the Right of Entry Permit ("ROE") process, State Parks' easement process requires Sable to submit a complete project description. During the May 22, 2025, meeting, I explained that the project description is required (1) for the determination of whether and under what conditions State Parks may approve the easement request, (2) for the California Environmental Quality Act ("CEQA") purposes, as well as (3) to inform the scope of the appraisal.

In reviewing the project description, State Parks must consult with its resource specialists to determine whether there will be impacts to natural, cultural, visual, or recreational values. Loss of those values not accounted for in the appraisal should be compensated for with mitigation projects or monetary payment. This cost is separate from the fair market value appraisal process.

The project description must include:

    1.  Proposed encumbrance; and

Alcock, et al
June 27, 2025
Page 3

Explanation of (1) the use and purpose of the easement, (2) the proposed footprint including all access routes, (3) the period of time requested, (4) frequency of access, and (5) how emergencies are handled.

Please note that some of the information State Parks will need, such as an emergency plan, Sable may have already submitted during past access request. For purposes of addressing every item, please re-package and label so that it is clearly being submitted in support of the easement request. State Parks cannot be required to make any assumptions about what document Sable believes is satisfying the request.

2. All associated operations, development, and maintenance

This includes all anticipated maintenance and uses of the property through the requested term. State Parks understands Sable is requesting 30 years. Please submit information detailing answers to the following questions:

- What type of equipment will be installed/replaced during the term of an easement?  What is the nature of the maintenance?  Are solutions or materials used that could be spilled or deposited on the soil?
- What type of maintenance is required and how often is it projected to occur?
  - How many anomaly digs/year?
  - Any other type of digs or physical maintenance?
  - Description of access by road
  - Description of access from road to pipeline. To the extent this cannot be addressed as the anomaly digs could require access anywhere along the pipeline, please identify the most difficult terrain to access and any areas where there are known cultural sites based on the most recent data.
- What type of inspections are required, and how often?
- How will Sable maintain the roads and how often?  To what standard? (if gravel, for example, is gravel sufficient for frequent heavy equipment?  At a minimum, they would need to provide more gravel over the years and leave it in a good, graveled condition at the end of the term?
- What is the clean-up and close-down plan at the end of the term?

Once State Parks has received a complete project description, it can analyze what level of CEQA review is required.

III.    Appraisal

Alcock, et al
June 27, 2025
Page 4

On June 2, 2025, I sent you both a list of appraisers and appraisal guidelines from DGS. My email, attached to this letter, also included instructions from DGS for the appraisal process. It is important to follow these instructions to prevent issues that would cause delay.

Please also note that the appraisal cannot be completed until the footprint, including all access routes, is fully described (by survey if necessary), and the project description completely describes the interest being requested.

The appraisal will require a legal description of the proposed easement including access routes.  To create the legal description, a survey may be required. During the May 22, 2025, meeting, State Parks and DGS described that the most efficient path forward is for Sable to walk the pipeline and drop geopositioning pins to create a map of the accurate location of the pipeline.  In addition, the map shall include additional space requested, such as for maintenance purposes or where additional equipment is to be installed per the Consent Decree or State Fire Marshal waiver, and show access routes. Sable indicated they already had that information. When you are able, please deliver that to me and inform us about how and when this was created so that State Parks and DGS, as necessary, can review to determine whether an additional survey is necessary at this stage of the easement request.

IV.    Other

In order to execute an easement, Sable will need to provide a current preliminary title policy and report, a legal description and plat that will be an exhibit to the easement, as well as any other agency approvals and permits. In this case, that could include but is not limited to, State Fire Marshal, Santa Barbara County, and Coastal Commission.

V.    Summary

In sum, the items Sable will need to provide to present a complete easement application include:

- Complete project description
- Appraisal
- Survey, if needed
- Current preliminary title policy and report
- Legal description and plat
- Agency approvals and permits

VI.    Request for Interim Agreement

Alcock, et al
June 27, 2025
Page 5

Lastly, on May 22, 2025, you requested that Sable be permitted to restart pipeline operations under an interim agreement, such as the existing ROE or an additional ROE. State Parks is not able authorize the restart under a ROE, and as we have discussed, the current annual ROE does not authorize restart. The current annual ROE is simply a method of authorizing Sable general, minimal access to its offline pipeline.

A ROE is a license that authorizes physical, temporary access. It does not authorize commencement of ongoing operations. Ongoing operations of Sable's pipeline include the very real potential that all of the resource impacts listed above could occur. Therefore, even if a ROE were a proper agreement to authorize restart, State Parks would have to complete the same analysis required above.

When State Parks has mentioned pre-easement rights of entry in the past, it was prior to executing the May 8, 2025 ROE for the anomaly digs. Last year, we mentioned it in the context of projects where the easement requestor is requesting early access in order to begin construction, not to commence ongoing operations. Additionally, in that context, which is not applicable here, the parties had nearly reached an agreement and were only waiting for easement processing.

State Parks is available to you to answer any questions. Please email me at emma.siverson@parks.ca.gov and Dena Bellman, Channel Coast District Superintendent, at dena.bellman@parks.ca.gov.

Sincerely,



Emma Siverson
Senior Staff Counsel

Enclosures:

1. June 2, 2025 Email to Christian Marsh and Lee Alcock

cc:    Liz McGuirk, Chief Deputy Director
       Tara E. Lynch, Chief Counsel
       Greg Martin, Desert Division Chief
       Dena Bellman, District Superintendent II, Channel Coast District

EXHIBIT L

**From:** Siverson, Emma@Parks
**To:** Marsh, Christian L.
**Subject:** Fw: Sable ROE
**Date:** Friday, July 25, 2025 3:53:24 PM
**Attachments:** image001.png
image002.png
image003.png
Pacific Pipeline ROE 2025-26 Final.pdf
Pacific Pipeline ROE Exhibit C - Fee Schedule 2025-2026.xlsx
Pacific Pipeline ROE 2025-26 Redline.docx

Hi Christian,

To confirm, Parks agrees to the attached version I sent you this week.

To be clear with respect to our conversation earlier, Parks believes this clearly does not allow restart. I explained to you why that is not possible in my June 27 letter.

I will circulate the attached final version for Dena's signature and send to you. Please send me a copy of Sable's signature when you receive it.

Thanks,
Emma

Get Outlook for iOS

**From:** Siverson, Emma@Parks <Emma.Siverson@parks.ca.gov>
**Sent:** Monday, July 21, 2025 2:51 PM
**To:** patrick.veasy@stoel.com <patrick.veasy@stoel.com>
**Cc:** Marsh, Christian L. <christian.marsh@stoel.com>
**Subject:** RE: Sable ROE

Hi Patrick,

Please see attached annual ROE permit in final form, along with exhibit C. I also included a redline. Please let me know if you have any questions.

Thanks,
Emma

Emma Siverson (she, her, hers)
Senior Staff Counsel
California State Parks
916-584-5567 Mobile

**From:** Veasy, Patrick F. <patrick.veasy@stoel.com>

**Sent:** Wednesday, July 16, 2025 4:50 PM
**To:** Siverson, Emma@Parks <Emma.Siverson@parks.ca.gov>
**Cc:** Marsh, Christian L. <christian.marsh@stoel.com>
**Subject:** RE: Sable ROE

Hi Emma,

Thank you for the update.  We look forward to receiving the draft.

Patrick

**Patrick Veasy** | Partner
**STOEL RIVES LLP** | 500 Capitol Mall, Suite 1600 | Sacramento, CA 95814
Direct: (916) 527-6248
patrick.veasy@stoel.com | Bio | vCard | www.stoel.com



This email may contain material that is confidential, privileged, and/or attorney work product
for the sole use of the intended recipient. Any unauthorized review, use, or distribution is
prohibited and may be unlawful.

---

**From:** Siverson, Emma@Parks <Emma.Siverson@parks.ca.gov>
**Sent:** Wednesday, July 16, 2025 12:41 PM
**To:** Veasy, Patrick F. <patrick.veasy@stoel.com>
**Cc:** Marsh, Christian L. <christian.marsh@stoel.com>
**Subject:** RE: Sable ROE

Hi Patrick,

Thanks for your patience. We should have a draft to you in the next couple days.

Thanks,
Emma

Emma Siverson (she, her, hers)
Senior Staff Counsel
California State Parks
916-584-5567 Mobile

---

**From:** Veasy, Patrick F. <patrick.veasy@stoel.com>
**Sent:** Wednesday, July 16, 2025 10:13 AM
**To:** Siverson, Emma@Parks <Emma.Siverson@parks.ca.gov>

**Cc:** Marsh, Christian L. <christian.marsh@stoel.com>
**Subject:** RE: Sable ROE

Good morning Emma,

I am trying to follow up regarding the renewal of the annual ROE permit.  With the expiration of the current ROE permit quickly approaching, we would like to proceed with next steps as soon as possible.

Please let me know when you have a chance.

Thank you,

Patrick

**Patrick Veasy** | Partner
**STOEL RIVES LLP** | 500 Capitol Mall, Suite 1600 | Sacramento, CA 95814
Direct: (916) 527-6248
patrick.veasy@stoel.com | Bio | vCard | www.stoel.com



This email may contain material that is confidential, privileged, and/or attorney work product for the sole use of the intended recipient. Any unauthorized review, use, or distribution is prohibited and may be unlawful.

---

**From:** Siverson, Emma@Parks <Emma.Siverson@parks.ca.gov>
**Sent:** Tuesday, July 8, 2025 11:07 AM
**To:** Veasy, Patrick F. <patrick.veasy@stoel.com>
**Cc:** Marsh, Christian L. <christian.marsh@stoel.com>
**Subject:** Sable ROE

Hi Patrick,

Thank you for the call. This is just to confirm my contact info. I will follow up with you once I check in with the District on steps for kicking off the annual ROE, which expires at the end of the month. In the meantime, let me know if you have any questions!

Thanks,
Emma

Emma Siverson (she, her, hers)
Senior Staff Counsel

California State Parks
715 P Street
Sacramento, California 95814
(916) 584-5567 Mobile

saveourwater.com

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient. Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including, but not limited to, the Electronic Communications Privacy Act. If you are not the intended recipient, please immediately contact the sender and destroy all copies of the communication.

# EXHIBIT M

| From: | Siverson, Emma@Parks |
| To: | Marsh, Christian L. |
| Subject: | Gaviota SP - Sable easement request |
| Attachments: | image001.png |
| | image002.png |

Hi Christian,

Thanks for the call. Feel free to call back once you have reception again. In the meantime, this is to follow up on Sable's partial easement application. It is apparent that Sable and Parks need to get on the same page about the footprint of the easement. The legal description for the Celeron easement did not include access roads nor access routes (i.e., between the road and the pipeline). As I explained in my letter, this easement does need to include the access roads and routes. This is to account for the impact to, and use and maintenance of the roads, as well as to identify agreed-upon routes/locations of access between the roads and the pipeline. Including the access road will simplify Sable's ability to conduct anomaly digs by potentially eliminating the need to obtain multiple right of entry permits.

The project description indicates that "[w]here existing roads do not exist, PPC will travel inside the existing 50-foot ROW." We know that this is inaccurate because the pipeline easement is not within 50 feet of the road in many places and this was borne out in the recent experience with the Anomaly Dig ROE where areas outside of the pipeline easement and the roads were traversed and damaged. In order to authorize access to the easement, the document must cover access points. State Parks is working on a diagram that reflects this so that Sable can more clearly understand what State Parks is requiring. This diagram may impact the scope of the appraisal, and potentially the scope of the title report. A survey will likely be required. This is why I indicated in my June 27 letter to you that it is important that we agree on a footprint before you seek an appraisal.

Other issues that were not addressed in the Project Description that Sable should be able to work on providing at this time:

1. Parks needs data on how often anomaly digs are expected to occur. The description reviews what would happen if an anomaly is detected, but did not provide any data supporting how often it can be expected to occur based on the pipeline's age and construction. Saying that few or no anomaly digs are expected to occur seems unrealistic in light of the Consent Decree, State Waiver requirements, and recent history.

2. The Project Description did not mention excavations related to the regular in-line inspections required by the State Fire Marshal waiver. Could any validation or other routine digs required in the waiver occur within the easement?

Please let me know if you have any questions about what Parks is requesting.

Thanks,
Emma


Emma Siverson (she, her, hers)
Senior Staff Counsel
California State Parks
715 P Street
Sacramento, California 95814
(916) 584-5567 Mobile



saveourwater.com

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient. Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including, but not limited to, the Electronic Communications Privacy Act. If you are not the intended recipient, please immediately contact the sender and destroy all copies of the communication.

# EXHIBIT N

| | |
|---|---|
| **From:** | Siverson, Emma@Parks |
| **To:** | Marsh, Christian L. |
| **Subject:** | RE: Gaviota SP - Annual ROE Revised Page 2 |
| **Attachments:** | image003.png |
| | image004.png |
| | image005.png |
| | Fw Sable ROE.msg |

Hi Christian,

Please see link below to a corrected version of the 2025 annual ROE. I noticed that when I compiled the ROE with signatures and the initialed page 2 (in my August 1 email below), I used an incorrect version of the ROE.

The version in the below folder is the version that the parties agreed to in the attached July 25 email, along with the initialed page 2. I wanted to make sure both parties have the accurate version. Please note, as I stated in my attached email, that this ROE does not cover Sable's operation restart.

Please let me know if you have any questions or access issues.

Sable Annual ROE 2025-26 Share

Thanks,
Emma


Emma Siverson (she, her, hers)
Senior Staff Counsel
California State Parks
916-584-5567 Mobile

---

**From:** Siverson, Emma@Parks
**Sent:** Friday, August 1, 2025 2:38 PM
**To:** Marsh, Christian L. <christian.marsh@stoel.com>
**Subject:** Gaviota SP - Annual ROE Revised Page 2

Hi Christian,

Please see letter and accompanying attachments. Let me know if this is along the lines of what you were thinking. If you agree, then please ask Sable to initial on the attached Revised Page 2 PDF, and I will do the same with Parks, compile the ROE and attachments, and send you a link to the complete file.

Let me know if you have any questions.

Thanks,
Emma

Emma Siverson (she, her, hers)
Senior Staff Counsel
California State Parks
715 P Street
Sacramento, California 95814
(916) 584-5567 Mobile



saveourwater.com

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient. Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including, but not limited to, the Electronic Communications Privacy Act. If you are not the intended recipient, please immediately contact the sender and destroy all copies of the communication.