LATHAM & WATKINS LLP
  Jessica Stebbins Bina (Bar No. 248485)
  *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:   +1 424.653.5501

BABST CALLAND
  Nicholas McDaniel (*pro hac vice*)
  *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

HOLLAND & KNIGHT LLP
  James W. Noe (*pro hac vice*)
  *jim.noe@hklaw.com*
  Ashley Akers (*pro hac vice*)
  *ashley.akers@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525
Facsimile:  +1 202.955.5564

*Attorneys for Defendants Sable Offshore Corp.
and Pacific Pipeline Company*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF PARKS AND RECREATION,<br><br>Plaintiff,<br><br>v.<br><br>SABLE OFFSHORE CORP., PACIFIC PIPELINE COMPANY, and DOES 1-50 inclusive,<br><br>Defendants. | Case No. 2:26-cv-02946-WLH-MAA<br><br>**DEFENDANTS SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing: April 24, 2026<br>Time: 1:30 p.m.<br>Hon. Wesley L. Hsu<br><br>Complaint Filed: March 17, 2026<br>Date Removed: March 19, 2026 |

## **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

BACKGROUND ...........................................................................................................3

LEGAL STANDARD .....................................................................................................7

ARGUMENT .................................................................................................................7

I.   CDPR IS NOT LIKELY TO PREVAIL ON THE MERITS ..........................7

   A.   This Court May Not Order Sable To Violate Federal Law ................8

   B.   CDPR's Trespass Claim Is Not Likely To Succeed ..........................8

      1.   The Trespass Claim Is Time-Barred ......................................8

      2.   CDPR Is Estopped From Asserting A Trespass Claim ........................................................................................10

   C.   Sable's Affirmative Defenses Are Likely To Succeed .....................11

      1.   CDPR's Claim Is Preempted .......................................11

      2.   CDPR Violates The Commerce And Import-Export Clauses ..............................................................................14

II.   CDPR DOES NOT SHOW IMMINENT AND IRREPARABLE HARM ....................................................................................14

   A.   Trespass Is Not Per Se Imminent Or Irreparable Harm ....................15

   B.   Federal Regulatory Preemption Is Not Irreparable Harm..................16

   C.   CDPR's Desire to Conduct Additional Environmental Review Is Not Immediate Or Irreparable Harm...............................17

III.   AN INJUNCTION WILL HARM SABLE AND THE PUBLIC INTEREST ..........................................................................................19

   A.   An Injunction Will Subject Sable To Imminent Civil And Criminal Penalties .........................................................................19

   B.   An Injunction Will Seriously Harm Sable's Finances And The Livelihoods Of Hundreds Of Sable Employees........................20

   C.   An Injunction Will Harm The Public Interest..................................20

   D.   Comity Concerns Weigh Against An Injunction ..............................21

IV.   THE SEVERITY OF THE HARM CDPR SEEKS TO CAUSE NECESSITATES A BOND ..........................................................................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

V.      CONCLUSION.................................................................................................22

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

ii

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahlman v. Barnes*,
No. 20-55568, 2020 WL 3547960 (9th Cir. June 17, 2020) ...............................14

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ...................................................................................7

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
167 F.4th 1247 (9th Cir. 2026) ...............................................................................21

*Ass'n for Women in Sci. v. Califano*,
566 F.2d 339 (D.C. Cir. 1977) ................................................................................11

*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Co.*,
626 F. Supp. 3d 1030 (W.D. Wis. 2022) ......................................................10, 16, 21

*Baker v. Burbank Glendale Pasadena Airport Auth.*,
705 P.2d 866 (Cal. 1985) ...........................................................................................9

*Bassidji v. Goe*,
413 F.3d 928 (9th Cir. 2005) .....................................................................................8

*Beck Dev. Co. v. S. Pac. Transp. Co.*,
52 Cal. Rptr. 2d 518 (Cal. Ct. App. 1996) ..............................................................10

*Bergh v. Washington*,
535 F.2d 505 (9th Cir. 1976) ...................................................................................22

*California v. PHMSA*,
No. 26-508 .................................................................................................................21

*California v. Wright*,
No. 2:26-cv-03396 (C.D. Cal. Mar. 31, 2026) .......................................................21

*Camsi IV v. Hunter Tech. Corp.*,
282 Cal. Rptr. 80 (Cal. Ct. App. 1991) .....................................................................9

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

iii

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)..................................................................................13

*Davilla v. Enable Midstream Partners L.P*,
913 F.3d 959 (10th Cir. 2019) ................................................................16

*Dep't of Revenue v. Ass'n of Wash. Stevedoring Cos.*,
435 U.S. 734 (1978)..................................................................................14

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ....................................................................7

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ................................................................15

*Enbridge Energy, LP v. Whitmer*,
2025 WL 3707609, No. 20-cv-1141 (W.D. Mich. Dec. 17, 2025) ....................12

*Env't Democracy Proj. v. Green Sage Mgmt., LLC*,
No. 22-CV-03970, 2022 WL 4596616 (N.D. Cal. Aug. 23, 2022)....................22

*Env't Prot. Info. Ctr. v. Carlson*,
968 F.3d 985 (9th Cir. 2020) ....................................................................7

*Eureka Citizens for Responsible Gov't v. City of Eureka*,
147 Cal. App. 4th 357 (Cal. Ct. App. 2007)........................................18

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) ................................................................................13

*Florida v. Dep't of Health & Hum. Servs.*,
19 F.4th 1271 (11th Cir. 2021) ..............................................................16

*Fund for Animals, Inc. v. Lujan*,
962 F.2d 1391 (9th Cir. 1992) ..............................................................19

*Haaland v. Brackeen*,
599 U.S. 255 (2023)..................................................................................11

*In Johnson v. Tyson Foods, Inc.*,
580 F. Supp. 3d 382 (N.D. Tex. 2022) ..................................................13

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

iv

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

*Indiana v. Haaland*,
No. 24-cv-1665, 2024 WL 5213401 (D.D.C. Dec. 24, 2024) ............................16

*Jameson Beach Prop. Owners Ass'n v. United States*,
No. 2:13-cv-01025, 2014 WL 4377905 (E.D. Cal. Sept. 4, 2014).....................15

*Kohleriter v. Dep't of Agric.*,
No. 2:25-CV-02446, 2025 WL 2986725 (E.D. Cal. Oct. 23, 2025) ............18, 19

*Lydo Enters., Inc. v. City of Las Vegas*,
745 F.2d 1211 (9th Cir. 1984) ........................................................................15

*Mangini v. Aerojet-Gen. Corp.*,
12 Cal. 4th 1087 (Cal. 1996) ...........................................................................9

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of State*,
658 F. Supp. 2d 105 (D.D.C. 2009)..................................................................11

*Olympic Pipe Line Co. v. City of Seattle*,
437 F.3d 872 (9th Cir. 2006) ..........................................................................12

*Olympic Pipe Line Co. v. City of Seattle*,
C03-2343L, 2003 WL 27392855 (W.D. Wash. Aug. 21, 2003) .......................11

*Pacific Pipeline Co. v. California*,
No. 26-cv-01486 (E.D. Cal.) .............................................................................5

*Pharm. Soc'y of State of New York, Inc. v. New York State Dep't of Soc. Serv.*,
50 F.3d 1168 (2nd Cir. 1995) ..........................................................................22

*Robinson v. S. Cal. Ry. Co.*,
61 P. 947 (Cal. 1900)........................................................................................9

*Shell Oil Co. v. City of Santa Monica*,
830 F.2d 1052 (9th Cir. 1987) ...................................................................12, 14

*Sierra Club v. Clinton*,
689 F. Supp. 2d 1123 (D. Minn. 2010)............................................................21

*Spar v. Pac. Bell*,
1 Cal. Rptr. 2d 480 (Cal. Ct. App. 1991)..........................................................9

*Starrh & Starrh Cotton Growers v. Aera Energy LLC*,
    153 Cal. App. 4th 583 (2007) ..................................................................................9

*Stout v. Meadows*,
    No. G034463, 2005 WL 3476515 (Cal. Ct. App. Dec. 20, 2005) ........................9

*Tomek v. STP Nuclear Operating Co.*,
    No. 17-cv-00340, 2018 WL 4403281 (S.D. Tex. Aug. 28, 2018) ......................13

*Turo Inc. v. City of Los Angeles*,
    847 F. App'x 442 (9th Cir. 2021) ........................................................................16

*United States and California v. Plains All Am. Pipeline, L.P.*,
    ECF 43, 48 (C.D. Cal. Mar. 30, 2026) .................................................................21

*United States v. Shih*,
    73 F.4th 1077 (9th Cir. 2023) ..............................................................................20

*Variscite, Inc. v. City of Los Angeles*,
    No. 2:22-CV-08685, 2023 WL 3493557 (C.D. Cal. Apr. 11, 2023) ...............1, 8

*W. Oil & Gas Ass'n v. Cory*,
    726 F.2d 1340 (9th Cir. 1984) .............................................................................14

*Williams Pipe Line Co. v. City of Mounds View*,
    651 F. Supp. 551 (D. Minn. 1987) .......................................................................12

*Williams v. S. Pac. R.R. Co.*,
    89 P. 599 (Cal. 1907) .............................................................................................9

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...........................................................................................*passim*

*Wit v. United Behav. Health*,
    No. 14-CV-02346-JCS, 2024 WL 1016069 (N.D. Cal. Feb. 6,
    2024) .....................................................................................................................19

**STATUTES**

49 U.S.C.
    §§ 60101 *et seq.* ....................................................................................................2
    § 60104(c) ........................................................................................................12, 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

50 U.S.C.

    § 4513 ............................................................................................2, 13, 19

    § 4557 ..................................................................................................1

Cal. Civ. Code § 338(b) .........................................................................8

Cal. Code Regs. Title 14, § 15301 .......................................................18

Cal. Gov't Code § 51010 ......................................................................12

Cal. Pub. Res. Code § 21166 ...............................................................18

## REGULATIONS

91 Fed. Reg. 8949 (Feb. 24, 2026) ........................................................5

Executive Order 14156 ...........................................................................6

## CONSTITUTIONAL PROVISIONS

U.S. Const. Article I

    § 8, cl. 3 ............................................................................................2

    § 10, cl. 2 ..........................................................................................2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

## **INTRODUCTION**

California Department of Parks and Recreation ("CDPR") asks the Court to order Defendants Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") to stop flowing oil through a long-existing oil pipeline located in Gaviota State Park (the "Park"). But elsewhere, CDPR *concedes* that Sable is compelled by federal executive order *not* to stop. Request for Judicial Notice ("RJN"), Ex. 3 at 31. Since a "federal court … may not grant relief that would compel a party to violate federal law," *Variscite, Inc. v. City of Los Angeles*, No. 2:22-CV-08685, 2023 WL 3493557, at *9 (C.D. Cal. Apr. 11, 2023), CDPR's motion must be denied on this basis alone.

CDPR hides this history, suggesting this is merely a dispute about an easement. In fact, this case is the latest escalation in California's extraordinary efforts to prevent Sable from operating the Santa Ynez Pipeline System ("SYPS"), its principal transportation asset in which it has invested hundreds of millions of dollars. This is the third time California and those aligned with it have sought injunctive relief on the same supposed emergency basis. In December, the Ninth Circuit denied this relief. RJN Ex. 1. Last week, so did a different judge of this Court. RJN Ex. 2 at 9 ("The Court found no evidence to support a showing of irreparable prejudice."). CDPR offers nothing warranting a different result and fails to demonstrate why this Court should employ "the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

First, CDPR fails to show that it will prevail on the merits. CDPR's trespass action is time-barred: the statute of limitations on its claim that the pipeline lacks an easement ran in 2019. CDPR also fails to grapple with Sable's defenses or the ongoing litigation affecting this case, including (1) the Defense Production Act order that currently *compels* Sable to operate the pipeline, *see* ECF 23-2, Ex. 3 (the "DPA Order"), which serves as a complete defense to California's trespass action, *see* 50

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

U.S.C. § 4557; (2) the Consent Decree—to which CDPR is a party and by which it *consented* to the flow of oil through the Park without requiring a new easement; or (3) a dispute whether the appropriate regulator is the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") or the California Office of the State Fire Marshal ("OSFM")—which matters because CDPR's claims are also preempted by the Pipeline Safety Act, *see* 49 U.S.C. §§ 60101 *et seq.* And if that were not enough, CDPR's abuse of its power as landowner violates the Constitution's Dormant Commerce Clause and Import-Export Clause. *See* U.S. Const. art. I, § 8, cl. 3; *id.* § 10, cl. 2.

CDPR also identifies no imminent, irreparable harm justifying injunctive relief. A pipeline buried in the Park for nearly 40 years—and through which oil flowed for 25 years—does not suddenly constitute an *immediate* threat of irreparable harm today. CDPR's allegations of future harm are speculative and untethered to the relief sought: stopping the flow of oil entirely contained within an underground pipeline. By contrast, the balance of the equities leans sharply towards Sable. CDPR already has admitted that "[t]he DPA Order expressly requires Sable's immediate compliance with its directions." RJN Ex. 3 at 31. Court-ordered pipeline shutoff would not only expose Sable to criminal and civil penalties, *see* 50 U.S.C. § 4513, but would eliminate Sable's sole source of revenue, placing a tremendous burden on Sable, its employees, and its shareholders.

Core public interests also weigh in favor of preserving the status quo and denying injunctive relief. The United States has ordered Sable to transport oil through the pipeline to "promote the national defense" and "address energy vulnerabilities on the West Coast." ECF 23-2, Ex. 3 at 114-15. Comity principles likewise weigh against an injunction. CDPR's assertions regarding PHSMA, the Consent Decree, and the DPA Order are being actively disputed in other courts. Granting the requested relief would privilege California's view of those matters

without allowing the United States to present its own position, and would truncate the other courts' consideration of the merits.

CDPR's motion should be denied.

## BACKGROUND

Sable operates the SYPS, which connects the single largest known offshore oilfield in the United States—three oil production platforms in sixteen federal leases comprising approximately 76,000 acres of the Outer Continental Shelf in the federal waters of the Santa Barbara Channel—to an onshore terminal in Kern County, CA. *See* Declaration of J. Caldwell Flores ("Flores Decl.") ¶¶ 3-4. This case concerns Segment CA-325, an onshore segment of the System, which runs underground through the Park for approximately four miles. *Id.* ¶ 7.

In the mid-1980s, the federal Bureau of Land Management and California State Lands Commission prepared a joint Environmental Impact Report and Environmental Impact Statement ("EIR/EIS") for the construction of Segment CA-325 (among other facilities) under the National Environmental Policy Act ("NEPA") and California Environmental Quality Act ("CEQA"). *Id.* ¶ 6. The EIR/EIS included a comprehensive environmental impact analysis of Segment CA-325's construction, long-term operation, necessary repairs, and continued maintenance. *Id.* CDPR consulted regarding the portion that would be routed through the Park, *id.*, and in 1987, granted a thirty-year easement for construction, maintenance, and operation. *Id.* ¶ 7; *see also* ECF 23-4, Ex. B.

Oil flowed through Segment CA-325 under the Park for 25 years. Flores Decl. ¶ 7. In 2015, before Sable owned the pipeline segments, a leak along Segment CA-324—a different segment located outside the Park—resulted in the Refugio oil spill. *Id.* PHMSA ordered a temporary halt to oil flow through Segments CA-324 and CA-325 while pipeline conditions were evaluated. Following the temporary cessation of flow, the prior owner voluntarily withdrew its FERC tariffs, and

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

Segments CA-324 and CA-325 were subsequently designated an intrastate pipeline subject to OSFM regulation. *Id.*

In 2020, the prior operator, the United States and California (including CDPR) entered into a Consent Decree to resolve claims related to the spill. *See* ECF 23-2, Ex. 1. In exchange for civil penalties, damages payments, and compensation—of which the Consent Decree earmarked $2 million for CDPR—the parties agreed on a path to resume oil transportation through Segment CA-325. *Id.* at 29, 86-99. The only condition CDPR and its co-plaintiffs imposed was that resumption be "in accordance with the [Consent Decree]" and its "Appendix D." *Id.* at 87. Neither CDPR nor any plaintiff required any further easement rights from CDPR. *See id.* at 102-08.

In February 2024, Sable acquired the SYPS. Flores Decl. ¶ 11. Sable subsequently pursued repair and maintenance of Segment CA-325 in accordance with the Consent Decree. *Id.* ¶¶ 12-47. Over the past two years, Sable has invested over $215 million in the SYPS, installed 27 new safety valves, and accomplished hundreds of repairs. *Id.* ¶¶ 11-14. Sable has implemented above-industry-standard methods of ensuring integrity against corrosion, a new control system with real-time leak detection and automatic shutdown capability, and other ongoing maintenance consistent with the Consent Decree. *Id.* ¶ 16.

In connection with this work, Sable and its predecessors entered into a series of "Right of Entry Permit[s]" with CDPR that allowed Sable to enter the Park for maintenance and repairs on Segment CA-325. CDPR understood that the purpose of these maintenance and repair activities was to carry out work in accordance with the Consent Decree's requirements and resume the flow of oil through Segment CA-325; indeed, some of these permits explicitly contemplated oil flowing through Segment CA-325. *See* Declaration of Steven Rusch ("Rusch Decl.") ¶ 4. The most recent Right of Entry permit lasts until July 26, 2026, and Sable thus has a *current*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

right at a minimum to enter the Park to conduct maintenance and repairs on the pipeline. *See* ECF 23-4, Ex. E.

In 2025, as Sable prepared to safely resume oil flow, Governor Newsom endorsed Senate Bill 237, a bill in the Legislature expressly aimed at stopping Sable's progress by imposing new regulatory requirements.[1]  Rusch Decl. ¶ 18. Having decided to try to kill the SYPS, the State—and its agencies—suddenly stopped working with Sable.  CDPR, which had previously acknowledged that the original EIR/EIS covered pipeline maintenance and operations, suddenly changed course and demanded new environmental analyses far beyond anything discussed, let alone agreed to, in the Consent Decree.  *Id.* ¶¶ 14, 17, 38-42.  And when Sable tried to obtain clarification, CDPR stonewalled it—providing no substantive response to Sable's inquiries for four months despite at least eighteen separate follow-ups.  *Id.* ¶¶ 19-48.

In November 2025, due to Sable's unified ownership and operation of the integrated SYPS, including those portions originating on the Outer Continental Shelf, PHMSA redesignated the SYPS as an interstate pipeline and resumed federal oversight on that basis.  *See* Flores Decl. ¶¶ 27-29.  PHMSA reviewed and approved Sable's Restart Plan, and granted Sable an Emergency Special Permit imposing heightened safety standards which matched special conditions previously imposed by OSFM.  *See id.* ¶¶ 30-33.  Sable has since applied for a non-emergency Special Permit on substantially identical terms, and PHMSA has noticed that permit for public comment.  *See* 91 Fed. Reg. 8949, 8949 (Feb. 24, 2026).  Sable is complying with all terms of the Special Permit.  *See* Flores Decl. ¶ 33.

On March 13, 2026, on behalf of and under authority delegated by the President of the United States, the Secretary of Energy issued the DPA Order

---

[1] Senate Bill 237 is the subject of a lawsuit in the Eastern District of California, *Pacific Pipeline Co. v. California*, No. 26-cv-01486 (E.D. Cal.).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

ordering Sable to immediately resume petroleum transportation throughout the SYPS, including Segment CA-325, concluding such transportation is "necessary or appropriate to promote the national defense." ECF 23-2, Ex. 3 at 114. The Secretary cited Executive Order 14156, which declared a "National Energy Emergency," and concluded that consumers and the military require Sable's "continuous production to address energy vulnerabilities on the West Coast." *Id.* at 115. Sable complied with the DPA Order and accordingly restarted oil transportation through Segment CA-325. PHMSA technical staff have been onsite during the restart process, supervising compliance with safety requirements. *See* Flores Decl. ¶¶ 34-36, 40.

On March 14, 2026, after Sable initiated the flow of oil through Segment CA-325, CDPR wrote to Sable, explaining that—despite the fact that CDPR had entered multiple Right of Entry agreements expressly authorizing Sable to repair the existing pipeline, as the Consent Decree contemplated—it had purportedly always believed Sable "would ultimately abandon the current pipeline," and "that if the pipeline company ever continued operations, it would need to construct a new pipeline." ECF 23-4 at 95-96. CDPR explained that because of this, CDPR had limited the Right of Entry Permits "to those actions and access needs necessary for closure of the pipeline." *Id.* at 95.

On Saturday, March 21, 2026, a CDPR employee called Sable to report erosion near the pipeline markers. Declaration of Nathan Soderberg ("Soderberg Decl.") ¶ 2. The CDPR employee stated that the erosion "doesn't look like it's problematic in this very moment." *Id.* On Tuesday, March 24, 2026, a member of Sable's field team investigated and found, ten feet away from the pipeline, a small hole, approximately one foot wide. *Id.* ¶ 6. Sable's operations teams determined that, given its size and distance from the pipeline, the hole did not pose any threat. *Id.* ¶¶ 6-8. On Friday, March 27, 2026, Sable sent a message to CDPR conveying its conclusions. *Id.* ¶ 8, Ex. D. Sable thereafter retained an expert who concluded

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

6

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

that the hole was likely a flooded rodent burrow and did not pose any threat to the pipeline.  Bina Decl. Ex. A.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.*[2]  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20).  "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can [also] support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.  The movant must "make a showing on all four prongs." *Id.*

## ARGUMENT

### I.    CDPR IS NOT LIKELY TO PREVAIL ON THE MERITS

Likelihood of success "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).  If the movant fails to demonstrate the requisite probability of success, "the court need not consider the other [*Winter*] factors in the absence of serious questions going to the merits." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Here,

---

[2] Emphasis added and internal quotations/citations omitted throughout unless otherwise stated.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

CDPR's trespass claim is time-barred, and even if meritorious, Sable's defenses carry the day.

### A.    This Court May Not Order Sable To Violate Federal Law

The DPA Order directs Sable to "immediately commence" services requiring the flow of oil throughout the entirety of the SYPS—including the portion that flows through the Park—"to promote the national defense."  ECF 23-2, Ex. 3 at 116. "Sable is ordered to comply with this order immediately and to maintain such compliance until such time as the conditions necessitating the issuance of this order abate or until Sable is directed otherwise."  *Id.*  CDPR has acknowledged the DPA order "requires Sable's immediate compliance."  RJN Ex. 3 at 31.

CDPR thus seeks an injunction that would compel Sable to violate federal law, which "[a] federal court . . . may not grant."  *Variscite, Inc. v. City of Los Angeles*, No. 2:22-CV-08685-SPG-SK, 2023 WL 3493557, at *9 (C.D. Cal. Apr. 11, 2023).  In *Bassidji v. Goe*, 413 F.3d 928 (9th Cir. 2005), the Ninth Circuit refused to enforce a contract that an executive order prohibited, holding courts cannot compel performance barred by federal law.  *Id.* at 933-34.  The DPA Order plainly prohibits the conduct CDPR seeks to impose on Sable.  No court has invalidated the DPA Order.  CDPR nevertheless asks this Court to "fashion an equitable remedy . . . enforcing the precise conduct made unlawful" by the DPA Order—an order this Court cannot issue.  *Id.* at 938.

### B.    CDPR's Trespass Claim Is Not Likely To Succeed

#### 1.    The Trespass Claim Is Time-Barred

CDPR cannot succeed on its claim that oil running through the pipeline is a trespass because the statute of limitations ran on that claim in 2019.  *See* Cal. Civ. Code § 338(b) (three-year limitations period).  California law recognizes two types of trespasses: continuing and permanent trespasses.  While continuing trespasses are "successive injuries, and the statute of limitations begins anew with each injury," for

permanent trespasses, the limitations period begins to run at the time of unlawful entry. *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 592 (2007).  CDPR argues that the pipeline "is itself a trespass and has been since 2016," Mot. 2, so CDPR can only prevail if the pipeline is a continuing trespass. Under black-letter law, it is not.

California law regards pipelines "as permanent," and a plaintiff is "relegated to a single lawsuit, subject to a single limitation period, for all past and anticipated future harms." *Mangini v. Aerojet-Gen. Corp.*, 12 Cal. 4th 1087, 1100 (Cal. 1996); *see also Spar v. Pac. Bell*, 1 Cal. Rptr. 2d 480, 482 (Cal. Ct. App. 1991) (pipelines are "unquestionably permanent" for trespass purposes). California courts thus routinely characterize pipeline claims as barred outside the three-year statute-of-limitations—including the cases on which CDPR relies.  *See, e.g.*, *Starrh*, 153 Cal. App. 4th at 595 ("[P]ermanent structures such as pipelines" have been "long considered permanent . . . for the purposes of the three-year statute of limitations."); *Stout v. Meadows*, No. G034463, 2005 WL 3476515, at *4 (Cal. Ct. App. Dec. 20, 2005) (same); *Camsi IV v. Hunter Tech. Corp.*, 282 Cal. Rptr. 80, 85 (Cal. Ct. App. 1991) (same).  That is especially true for "underground" pipelines, which would "require[] considerable effort and heavy equipment" to remove.  *Mangini*, 12 Cal. 4th at 1100-01.

The mere fact that a pipeline may or may not be in use does not convert it from a permanent to a continuing trespass.  *See, e.g.*, *Starrh*, 153 Cal. App. 4th at 595; *see also Baker v. Burbank Glendale Pasadena Airport Auth.*, 705 P.2d 866, 869 (Cal. 1985).  No pipeline case analyzes the fluid flowing through the pipelines as a *separate* trespass—nor would such an analysis make sense given that the fluid is contained *within* the pipeline.  California courts have similarly rejected the notion that each train inflicts a trespass separate from the underlying railroad.  *See Williams v. S. Pac. R.R. Co.*, 89 P. 599, 600 (Cal. 1907); *Robinson v. S. Cal. Ry. Co.*, 61 P.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

947, 948 (Cal. 1900). CDPR cites *Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Co.*, 626 F. Supp. 3d 1030, 1040 (W.D. Wis. 2022), for the proposition that "transporting hydrocarbons … [is] a trespass," Mot. 8, but that court held a *pipeline itself* was a trespass, not the fluid within it—a claim CDPR is time-barred and estopped from bringing here.

California courts have distinguished pipeline cases from the cases on which CDPR relies, involving uncontained harms like pollution. Courts thus have found a continuing trespass where contaminants "migrate through land and groundwater causing new and additional damage on a continuous basis." *Beck Dev. Co. v. S. Pac. Transp. Co.*, 52 Cal. Rptr. 2d 518, 557 (Cal. Ct. App. 1996). But those same cases distinguished structures like "buried sewer line[s]" which they characterized as "permanent." *Id.* Thus, while a *spill* may constitute a new trespass, the mere existence of oil inside a closed pipeline—which is all CDPR alleges—does not. *Id.*

CDPR was thus obligated to bring suit regarding the presence of Segment CA-325—with or without oil in it—no later than 2019, three years after it claims the easement expired. Its claims are time-barred.

### 2. CDPR Is Estopped From Asserting A Trespass Claim

The Consent Decree—to which CDPR agreed and under which it received a $2 million payment—further bars and estops CDPR's claim. Under the Consent Decree, the pipeline's owner could take one of three paths: (1) "replace the existing" pipeline, (2) "restart the existing pipelines in accordance with the [Consent Decree]," or (3) "abandon all or any segments." ECF 23-2, Ex. 1 at 86-87. For replacement, the Consent Decree stated that new construction would be viable only "if [the pipeline owner] is able to timely obtain . . . whatever *additional* rights are needed, including rights-of-way that may be needed from landowners." *Id.* at 86. By contrast, "restart" did not require any new or renewed rights-of-way—the only condition was to restart in accordance with the Consent Decree and its Appendix D,

which prescribed a Restart Plan with requirements for initial return to service and operation. *Id.* at 87, 106. The Consent Decree did not include any requirements for securing easement rights from CDPR, *see id.* at 86-87—even though the original 30-year easement term had run in 2016, four years before CDPR entered the Consent Decree.

CDPR thus expressly agreed in the Consent Decree to both the continued presence of the pipeline in the Park and the resumption of the oil flow through it, consistent with the Consent Decree's conditions—conditions that PHMSA has determined have been satisfied. *See* RJN Ex. 4 at 49; RJN Ex. 5 ¶¶ 16-74. But CDPR now refuses to follow the process it agreed to. CDPR is estopped by the Consent Decree from asserting trespass now.

### C.    Sable's Affirmative Defenses Are Likely To Succeed

#### 1.    CDPR's Claim Is Preempted

CDPR's attempts to regulate pipeline safety and otherwise achieve California's regulatory objectives through withholding the easement are also preempted by federal law. "[W]hen Congress enacts a valid statute pursuant to its Article I powers, state law is naturally preempted to the extent of any conflict with a federal statute. End of story." *Haaland v. Brackeen*, 599 U.S. 255, 287 (2023). An executive order is "accorded the force and effect of a statute." *Ass'n for Women in Sci. v. Califano*, 566 F.2d 339, 344 (D.C. Cir. 1977). So are valid delegations of the President's executive order authority to Cabinet officials. *Cf. Nat. Res. Def. Council, Inc. v. U.S. Dep't of State*, 658 F. Supp. 2d 105, 111 (D.D.C. 2009).

#### a.    Pipeline Safety Act Preemption

A state authority may not "us[e] its status as a party to a contract to regulate preempted fields." *Olympic Pipe Line Co. v. City of Seattle*, C03-2343L, 2003 WL 27392855, at *6 (W.D. Wash. Aug. 21, 2003). CDPR asserts that one "mechanism State Parks *employs to ensure safety* when it allows an easement for a pipeline is its

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

contracting power." Mot. 14; *see also id.* (CDPR "cannot determine whether the portions of Gaviota State Park through which the Pipeline runs are safe to use."). This backdoor, pseudo-regulation of pipeline safety is improper and preempted by the Pipeline Safety Act ("PSA"). *Cf. Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1063 (9th Cir. 1987); 49 U.S.C. § 60104(c) ("A State authority may not adopt or continue in force safety standards for interstate pipeline facilities …").[3]

"Federal preemption of the regulation of interstate pipeline safety in *any . . .* manner is manifest" under the PSA. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 878 (9th Cir. 2006). In *Olympic*, a pipeline operator had a franchise with the City of Seattle allowing the pipeline along certain rights-of-way. *Id.* at 875. Following a pipeline explosion, the City withheld renewal and attempted to suspend pipeline operation pending a safety investigation. *Id.* at 875-76. The Ninth Circuit held this was preempted: the City was acting as regulator (not mere proprietor) in exercising state police powers over health and safety, which it could not do consistent with the PSA. *Id.* at 881.

The same reasoning applies here: CDPR has inappropriately attempted to regulate pipeline safety through its easement. CDPR's position would frustrate the PSA's goal of uniform safety standards, allowing individual landowners to set their own standards and creating a regulatory patchwork. That possibility is "so repugnant to the statute that the survival of such right[s] would in effect deprive [the PSA] of its efficacy." *Williams Pipe Line Co. v. City of Mounds View*, 651 F. Supp. 551, 567 (D. Minn. 1987). And orders to cease or restrict operation of a pipeline constitute regulation which Congress explicitly delegated solely to PHMSA. *Enbridge Energy, LP v. Whitmer,* 2025 WL 3707609, No. 20-cv-1141, at *13 (W.D.

---

[3] The PSA also preempts any CDPR regulation with respect to intrastate pipelines. Federal law delegates exclusive authority for pipeline safety to PHMSA's delegate—here, OSFM, not CDPR. *See* 49 U.S.C. § 60104(c); Cal. Gov't Code § 51010.

Mich. Dec. 17, 2025). CDPR's unconcealed attempt to regulate the safety of the SYPS via the easement directly contravenes the PSA and is preempted. *See* 49 U.S.C. § 60104(c).

### b.     Defense Production Act Preemption

Impossibility preemption also bars CDPR's claims. A state law is preempted "where it is impossible for a private party to comply with both state and federal law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *accord Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963).

Sable faces two directly contradictory demands: the DPA Order, commanding Sable to flow oil, and CDPR's demand that it stop. Sable must choose between compliance with federal law—risking the lawsuit CDPR has brought here—and compliance with CDPR's demands—risking the DPA's civil and criminal penalties. *See* 50 U.S.C. § 4513. This irreconcilable conflict is the hallmark of impossibility preemption and bars CDPR's claims. *See Crosby*, 530 U.S. at 379-80.

CDPR argues in a footnote that the DPA does not cover "intentional torts." Mot. 10 n.1. But the cases CDPR cites address tortious conduct *beyond* that required by a DPA order, not preemption where the conduct is itself required by federal law. *In Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382 (N.D. Tex. 2022), the court found state-law negligence claims preempted by a DPA Order instructing the Secretary of Agriculture to ensure that meat and poultry processors continue operations, because allowing the claims to proceed would undermine the President's statutory authority. *Id.* at 388-89. The same is true here. When a defendant must choose between "liability under state [tort] laws" or running "afoul of [federal] regulations," preemption applies. *Tomek v. STP Nuclear Operating Co.*, No. 17-cv-00340, 2018 WL 4403281, at *8 (S.D. Tex. Aug. 28, 2018).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

2.    **CDPR Violates The Commerce And Import-Export Clauses**

CDPR's actions also violate the United States Constitution.  Under the Commerce Clause, a State may not take "any action which may fairly be deemed to have the effect of impeding the free flow of trade between States." *W. Oil & Gas Ass'n v. Cory*, 726 F.2d 1340, 1342 (9th Cir. 1984).  Under the Import-Export Clause, the "seaboard States, with their crucial ports of entry," may not "levy[] taxes on citizens of other States by taxing goods merely flowing through their ports to the other States." *Id.* at 1345 (quoting *Dep't of Revenue v. Ass'n of Wash. Stevedoring Cos.,* 435 U.S. 734, 752-53 (1978)).

In *Cory*, the Ninth Circuit invalidated California's usage-based leasing fees for hydrocarbon drilling on state tidelands, emphasizing that California "owns and controls [the] . . . lands in its sovereign capacity," and there is no other competitor to whom the operator can turn.  *Id.* at 1343.  The same is true here: the SYPS is a critical interstate pipeline system originating in the Outer Continental Shelf that the federal government has declared necessary to supply materials for the national defense, see ECF 23-2, Ex. 3 at 114-16, and there is no other landowner to whom Sable can turn for Segment CA-325.  California's "control over the channels of interstate commerce" does not "permit[] the State to erect substantial impediments to the free flow of commerce." *Shell*, 830 F.2d at 1057.  CDPR's actions violate both the Commerce Clause and the Import-Export Clause by impeding the free flow of trade for a critical good.

II.    **CDPR DOES NOT SHOW IMMINENT AND IRREPARABLE HARM**

CDPR fails to demonstrate any immediate, irreparable harm.  "[A] showing of irreparable injury is an absolute prerequisite" to injunctive relief.  *Ahlman v. Barnes*, No. 20-55568, 2020 WL 3547960, at *2 (9th Cir. June 17, 2020).  CDPR further has the "burden of showing that irreparable injury is likely to occur during

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

14

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

the period before the [case] is decided." *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020).

CDPR points to *no real-world consequence it has or will experience from pipeline operation.* None of CDPR's three supposed bases for immediate irreparable harm—(1) the bald allegation of a trespass, (2) the displacement of its preferred regulator OSFM, and (3) purportedly incomplete CEQA review, *see* Mot. 10-18—demonstrate harm; rather, CDPR raises at most a mere "possibility" of harm, "inconsistent with [the]… extraordinary remedy that may only be awarded upon a clear showing." *Winter*, 555 U.S. at 22.

### A.   Trespass Is Not Per Se Imminent Or Irreparable Harm

For almost forty years, a four-mile stretch of pipeline has run underneath the Park. The mere existence of this long-buried pipeline does not constitute imminent or irreparable harm. Indeed, CDPR is estopped from claiming that the pipeline's presence alone constitutes irreparable harm: in the Consent Decree, California explicitly authorized Sable's predecessor to abandon the pipeline and leave it in the ground forever. *See* ECF 23-2 at 87. Moreover, CDPR alleges the pipeline has lacked an easement since 2016 yet sought no injunctive relief. "Delay in seeking enforcement of [a plaintiff's] rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-cv-01025, 2014 WL 4377905, at *7 (E.D. Cal. Sept. 4, 2014); *see also Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).

Oil flowing within a fully-contained pipe, invisible to anyone using or recreating in the Park, does not constitute imminent, irreparable harm—especially given that the same pipeline carried oil for three decades in the same Park. Nor does CDPR's speculation that a small hole, the width of a traffic cone and ten feet from the pipeline, might somehow cause a "catastrophic" spill, demonstrate irreparable harm. ECF 23-4 ¶ 19. CDPR's assertion lacks any factual basis, is unsupported by

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

15

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

CDPR's own declaration, which expressly states it cannot draw *any* conclusions about the hole, ECF 23-3, ¶ 12, and is contracted by Sable's evidence, Soderberg Decl., ¶¶ 6-8; Bina Decl. Ex. A.

Lacking evidence, CDPR also relies on cases holding that where a continuing trespass (not a permanent one) is fully and finally adjudicated, injunctive relief may be appropriate. Mot. 12. But those cases do not hold that a *preliminary* injunction is *per se* justified merely because a trespass is alleged or even proven. To the contrary, Circuit precedent holds that even a confirmed trespass does not relieve the plaintiff of meeting its burden to show irreparable harm. *Turo Inc. v. City of Los Angeles*, 847 F. App'x 442, 444 (9th Cir. 2021); *see also Davilla v. Enable Midstream Partners L.P*, 913 F.3d 959, 971 (10th Cir. 2019) (reversing court that enjoined trespass without requiring plaintiffs to show "the usual four-factor[s]"). Similarly, CDPR relies on *Bad River Band*, but the court there *declined* to issue an immediate injunction, permitting oil to flow despite a proven trespass, given the harms of sudden termination. 626 F. Supp. 3d at 1037, 1055-58.

## B.   Federal Regulatory Preemption Is Not Irreparable Harm

CDPR's assertion that OSFM has been displaced and CDPR cannot know "if the pipeline is being safely operated," Mot. 15, likewise is not irreparable harm. The PSA grants exclusive authority to PHMSA to regulate all aspects of interstate pipeline safety. A state does not suffer "irreparable injury" merely because "federal law preempts conflicting state law." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1292 (11th Cir. 2021). "[T]o conclude otherwise would mean that a state would suffer irreparable injury from all [] federal laws with preemptive effect." *Id.*; *see also Indiana v. Haaland*, No. 24-cv-1665, 2024 WL 5213401, at *9 (D.D.C. Dec. 24, 2024) (rejecting similar state claim of "sovereign injury"). And regardless of whether PHMSA or OSFM is the appropriate regulator, CDPR can never impose

its own safety requirements on the pipeline, and thus suffers no harm from a change in regulator. *Supra* n.3.

The same is true with respect to CDPR's assertion that lack of contractual protections will harm it. Not only is this claim time-barred given that the easement expired ten years ago, but it ignores the vast regulatory scheme under which Sable operates: federal law does not permit Sable to operate without liability insurance or without notifying authorities in the event of a spill. Flores Decl. ¶ 18. CDPR's alleged harms are speculative.

## C. CDPR's Desire to Conduct Additional Environmental Review Is Not Immediate Or Irreparable Harm

CDPR is also not harmed by the absence of additional environmental review. As a threshold matter, CDPR cannot point to any environmental review it has requested concerning transport of oil through the pipeline—nor could it, because oil contained in an existing pipe has no effect on the environment. Instead, CDPR complains about CEQA review concerning *surface-level* pipeline repairs that CDPR has repeatedly authorized and found exempt from CEQA. *See* ECF 23-5 ¶ 6 (arguing that pipeline restart would trigger CEQA for the reasons given in Exhibit M); *id.* Ex. M at 23 (describing concerns about "access points," "anomaly digs," and "excavation," not oil). Just last year, CDPR concluded that such repairs were exempt from CEQA review because they have "[n]o potential for significant or cumulative impacts to the environment." ECF 23-4, Ex. A at 9. And Sable's *existing* Right of Entry Permit, which is valid until July 26, 2026, *see* ECF 23-4 at 68-69, permits Sable to access above-surface portions of the Park. CDPR's about-face from its prior positions is telling, and even if CDPR had shown that pipeline repairs could result in some environmental harm, CDPR's demand that this Court *enjoin oil flow* would not address them.

CDPR's claim that additional environmental review is required before renewing the easement is also wrong. Segment CA-325's potential impact on the Park was extensively evaluated in the original EIR/EIS. "When an environmental impact report has been prepared for a project pursuant to [CEQA], no subsequent or supplemental environmental impact report shall be required," unless there are "[s]ubstantial changes" to the project. Cal. Pub. Res. Code § 21166. Sable is using Segment CA-325 in line with the historical maintenance and operations fully analyzed in the EIR/EIS—indeed, with oil flowing through the pipeline, CDPR cannot claim that the environmental baseline is anything but an operating pipeline consistent with the EIR/EIS. *Eureka Citizens for Responsible Gov't v. City of Eureka*, 147 Cal. App. 4th 357, 370 (Cal. Ct. App. 2007).

For the same reasons that CDPR found Sable's repairs on the pipeline to be exempt from CEQA just last year, the easement is also exempt from CEQA under the Existing Facilities (Class 1) categorical exemption. *See* Cal. Code Regs. tit. 14, § 15301. "The key consideration is whether the project involves negligible or no expansion of use." *Id.* As recently as July 2025, CDPR told Sable it leaned towards using an exemption because CEQA was already completed for the existing pipeline. And, indeed, in May 2025, CDPR issued a Notice of Exemption for Sable's pipeline repairs, stating, "[n]o potential for significant or cumulative impacts to the environment is anticipated in compliance with CEQA … as the project consists of repairs to an existing facility with no expansion of use." *See* Rusch Decl. ¶¶ 14, 17. Here, a renewed easement would be consistent with the terms of the original 1987 easement. Further CEQA review is not required.

Finally and more fundamentally, even *were* review required, a California agency's failure to complete environmental review would not require halting operations mandated by federal order. "[T]he violation of NEPA on its own [does not] constitute an irreparable injury." *Kohleriter v. Dep't of Agric.*, No. 2:25-CV-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

02446, 2025 WL 2986725 (E.D. Cal. Oct. 23, 2025); *see also Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992) ("[V]iolation of NEPA does not compel the issuance of a preliminary injunction."). Plaintiffs must "still establish that they will suffer irreparable harm" in the form of "environmental impact[s]" that "cannot be undone in short order, if ever." *Kohleriter*, 2025 WL 2986725, at *3-4. CDPR makes no attempt to meet this burden. It presents no evidence of *any* physical damage to the environment beyond a small hole in the ground that CDPR candidly admits it "cannot determine whether the Pipeline is causing or contributing." ECF 23-3, ¶ 12. And CDPR concedes that "*it is unknown whether* allowing an easement to Sable . . . will cause irreparable harm." ECF 23-5 ¶ 7.

## III. <u>AN INJUNCTION WILL HARM SABLE AND THE PUBLIC INTEREST</u>

Because CDPR has not demonstrated irreparable harm, the Court need not reach the remaining *Winter* factors. See *Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2024 WL 1016069, at *1-2 (N.D. Cal. Feb. 6, 2024). Nevertheless, proper consideration of the balance of equities and public interest also requires denial of the requested injunctive relief. *Winter*, 555 U.S. at 23.

### A. An Injunction Will Subject Sable To Imminent Civil And Criminal Penalties

CDPR argues that Sable has no protectable interest because its conduct is allegedly tortious. This argument puts the cart before the horse and willfully ignores the fact that, *as CDPR concedes*, federal law requires Sable to use the pipeline. Should Sable cease flowing oil in contravention of the DPA Order, Sable and its officers will be immediately subject to liability for civil and criminal penalties. *See* 50 U.S.C. § 4513.

**B.      An Injunction Will Seriously Harm Sable's Finances And The Livelihoods Of Hundreds Of Sable Employees**

The Santa Ynez Unit and the SYPS are Sable's sole assets.  Since 2024, Sable has invested more than $215 million in safely restoring them to full operation and began oil sales on March 29, 2026.  If operation of the SYPS is enjoined, Sable will lose substantially all its revenue, totaling approximately $5.14 million per day or $156.15 million per month.  Flores Decl. ¶ 49.  A business disruption of this magnitude will immediately and significantly harm Sable's finances and threaten its ability to pay its approximately 200 full-time employees across California.  *Id.* ¶ 51.  Court-ordered shutdown would also jeopardize longstanding relationships with contractors, whose jobs are not easily replaced if lost.  The combined annual direct employee and contractor payroll supported by Sable is estimated at $100 to $200 million.  *Id.* ¶¶ 52-53.  Shutdown could also cause a decline in the company's share price, destroying value for institutional investors and workers whose pensions and retirement plans hold equity in Sable.  *Id.* ¶ 50.  These severe harms tip the equities sharply in Sable's favor.

**C.      An Injunction Will Harm The Public Interest**

*Winter* itself noted that the balance of equities tips in the government's favor when the President has determined that the challenged activity is "essential to national security."  555 U.S. at 26.  Here, the federal government has determined that the SYPS is "a critical energy resource" necessary to address "energy vulnerabilities on the West Coast" and "adversarial dependence" on hostile foreign actors.  *See* ECF 23-2, Ex. 3 at 115.  Courts must be "hesitant to review the executive's declaration of a national emergency," *United States v. Shih*, 73 F.4th 1077, 1091-92 (9th Cir. 2023), and deference is heightened "when the President is exercising congressionally delegated national security authority, for which an

appreciable measure of deference is traditionally afforded." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 167 F.4th 1247, 1257 (9th Cir. 2026).

CDPR argues that the public interest supports an injunction because it would "enjoin tortious activity," protect the environment, and prevent the State's land from being "commandeered" by the federal government. Mot. 20-21. But in the pipeline context, courts have held that, despite compelling allegations of trespass and environmental harm (not present here), where "an immediate shutdown of the pipeline would have significant public and foreign policy implications" an injunction should not issue. *Bad River Band*, 626 F. Supp. 3d at 1037, 1055; *see also Sierra Club v. Clinton*, 689 F. Supp. 2d 1123, 1147 (D. Minn. 2010) (declining to enjoin pipeline where federal government had concluded the national interest would be served by continued operations). Moreover, as CDPR itself previously recognized, Segment CA-325's environmental impacts were adequately addressed by the EIR/EIS and remain regulated by existing permits. Rusch Decl. ¶¶ 14, 17. Finally, the anti-commandeering cases CDPR relies on are inapposite, as they address federal authorities compelling states to act as federal agents—something not at issue here.

### D.    Comity Concerns Weigh Against An Injunction

CDPR's motion presumes that Sable is acting unlawfully—asserting the DPA Order is invalid, the Consent Decree has been violated, and OSFM has jurisdiction. Yet each of these claims is vigorously disputed by the United States and subject to ongoing litigation—all brought by California—in other courts. *See California v. Wright*, No. 2:26-cv-03396 (C.D. Cal. Mar. 31, 2026) (challenging validity of DPA Order); *United States and California v. Plains All Am. Pipeline, L.P.*, ECF 43, 48 (C.D. Cal. Mar. 30, 2026) (attempting to "enforce" Consent Decree); *California v. PHMSA*, No. 26-508 (challenging PHMSA's assertion of jurisdiction). This Court should allow its sister courts to resolve these questions on the merits, with all relevant parties present, rather than issue an injunction that would collaterally attack

those proceedings. When an injunction sought in one federal proceeding would interfere with another, comity requires "more than the usual measure of restraint," and issuance of an injunction is "rarely, if ever, justified." *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976).

## IV.  THE SEVERITY OF THE HARM CDPR SEEKS TO CAUSE NECESSITATES A BOND

Finally, a preliminary injunction must be supported by an appropriate bond. While CDPR contends that no bond is required, that narrow exception only applies to cases involving the "enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes.'" *Pharm. Soc'y of State of New York, Inc. v. New York State Dep't of Soc. Serv.*, 50 F.3d 1168, 1174-75 (2nd Cir. 1995). Here, CDPR is seeking to enforce an alleged property right, not a comprehensive health and welfare statute. They ask to enjoin an operating business generating over $5 million each day, for an indeterminate time, while this litigation proceeds. And given that CDPR and the State of California have ample financial resources to post a bond, a more than nominal bond is required. *Compare Env't Democracy Proj. v. Green Sage Mgmt., LLC*, No. 22-CV-03970, 2022 WL 4596616, at *4 (N.D. Cal. Aug. 23, 2022) (requiring nominal bond where the plaintiff was a non-profit with limited financial resources and defendant did not request a bond). CDPR should be required to post a bond in the amount of $100,000,000.

## V.  CONCLUSION

Plaintiff's Motion should be denied.

Dated: April 3, 2026              Respectfully submitted,

                                  LATHAM & WATKINS LLP

                                  By: /s/ *Jessica Stebbins Bina*
                                  LATHAM & WATKINS LLP
                                  Jessica Stebbins Bina (Bar No. 248485)
                                  *jessica.stebbinsbina@lw.com*

10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:  +1 424.653.5501

BABST CALLAND
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:  +1 202.853.3491

HOLLAND & KNIGHT LLP
James W. Noe (*pro hac vice*)
jim.noe@hklaw.com
Ashley Akers (*pro hac vice*)
ashley.akers@hklaw.com
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525
Facsimile:  +1 202.955.5564

*Attorneys for Defendants Sable Offshore
Corp. and Pacific Pipeline Company*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

CASE NO. 2:26-cv-02946-WLH-MAA
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Sable Offshore Corp. and Pacific Pipeline Company, hereby certifies that this Opposition to Plaintiff's Motion for Preliminary Injunction contains 6,973 words, which complies with the word limit for L.R. 11-6.1.

Dated:  April 3, 2026                    /s/ *Jessica Stebbins Bina*

Jessica Stebbins Bina