ROB BONTA
Attorney General of California
JESSICA E. TUCKER-MOHL
*Jessica.tuckermohl@doj.ca.gov*
Supervising Deputy Attorney General
ALICE M SEGAL (SBN 288108)
*alice.segal@doj.ca.gov*
MATTHEW T. STRUHAR (SBN 293973)
*Matthew.struhar@doj.ca.gov*
NICHOLAS TSUKAMAKI (SBN 253959)
*Nicholas.Tsukamaki@doj.ca.gov*
Deputy Attorneys General
State Bar No. 288108
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  Telephone:  (619) 738-9640
  Fax:  (916) 732-7920
*Attorneys for Plaintiff*
*California Department of Parks and Recreation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **California Department of Parks and Recreation,**<br><br>Plaintiff,<br><br>v.<br><br>**Sable Offshore Corp. and Pacific Pipeline Company,**<br><br>Defendants. | Case No. 2:26-cv-02946-WLH-MAA<br><br>**DEPARTMENT OF PARKS & RECREATION'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　　　　April 24, 2026<br>Time:　　　　1:30 p.m.<br>Courtroom:　　9B<br>Judge:　　　Hon. Wesley L. Hsu<br>Trial Date:　　Not Set<br>Action Filed: 3/17/2026<br>Date Removed: 3/19/2026<br><br>Filed/Concurrently Lodged with: Supplemental Declaration of Dena Bellman; Supplemental Request for Judicial Notice; State Parks' Response to Defendants' Objections to Evidence in Support of Motion for Preliminary Injunction; State Parks' Objections to Evidence in Support of Defendants' Opposition to Motion for Preliminary Injunction |

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................................1

ARGUMENT .................................................................................................1

I.    State Parks Is Likely to Succeed on the Merits ...................................1

    A.    Sable's Flowing of Oil Constitutes a Continuous Trespass .......1

    B.    State Parks' Trespass Claim Is Timely....................................2

    C.    The Consent Decree Does Not Estop State Parks from Asserting Trespass ...............................................................5

    D.    Sable's Affirmative Defenses Are Meritless...........................5

        1.    The Pipeline Safety Act Does Not Preempt State Parks' Trespass Claim...........................................5

        2.    The DPA Does Not Preempt State Parks' Trespass Claim. ...................................................................6

        3.    An Injunction Would Not Require Sable to Violate Federal Law ............................................................8

        4.    The Commerce Clause and Import-Export Clause Do Not Preempt the Trespass Claim .............................8

II.    State Parks Has Demonstrated Ample Irreparable Harm. ...................9

    A.    Trespass Constitutes Irreparable Harm as a Matter of Law .......9

    B.    Sable's Prevention of Complete CEQA Review Constitutes Irreparable Harm.......................................................9

    C.    State Parks Provided Significant Evidence of Present Threats from Sable's Operations ...........................................10

III.    The Balance of Equities Supports an Injunction ..............................10

IV.    The Public Interest Favors Granting an Injunction...........................11

V.    Comity does not Weigh Against an Injunction.................................13

VI.    The Court Should Not Require a Bond.............................................13

CONCLUSION.............................................................................................14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Al Otro Lado v. Wolf*
  952 F.3d 999 (9th Cir. 2020)......................................................................11

*Alamo Rent-A-Car, Inc. v. City of Palm Springs*
  955 F.2d 30 (9th Cir. 1991), (Jan. 24, 1992)................................................9

*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Co. Inc.*
  626 F.Supp.3d 1030 (W.D. Wis. 2022)..................................................6, 12

*Baird v. Bonta*
  81 F.4th 1036 (9th Cir. 2023)....................................................................12

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*
  39 Cal.3d 862 (1985)..................................................................................2

*Beck Dev. Co. v. S. Pac. Transp. Co*
  44 Cal.App.4th 1160 (1996)........................................................................2

*Bergh v. State of Wash.*
  535 F.2d 505 (9th Cir. 1976)......................................................................13

*Bus. Ventures, Inc. v. Searle*
  248 F.Supp.3d 1029 (D. Or. 2017)..............................................................3

*California v. PHMSA*
  No. 26-508 (9th Cir. filed Jan. 28, 2026)....................................................5

*Cassinos v. Union Oil Co.*
  14 Cal.App.4th 1770 (1993)........................................................................1

*Center for Biological Diversity, et al. v. Department of Forestry & Fire Protection, et al.*
  No. 25CV02244 (Santa Barbara County Sup. Ct. Apr. 15, 2025).................10

*DISH Network L.L.C. v. DelVecchio*
  831 F.Supp.2d 595 (W.D.N.Y. 2012).........................................................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Golf Village North LLC v. City of Powell*
333 F.Supp.3d 769 (S.D. Ohio 2018)......................................................................9

*Harrison v. Welch*
116 Cal. App. 4th 1084 (2004).................................................................................4

*Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*
736 F.3d 1239 (9th Cir. 2013)................................................................................3

*Hercules, Inc. v. United States*
24 F.3d 188 (Fed. Cir. 1994)...................................................................................7

*High Sierra Hikers Ass'n v. Blackwell*
390 F.3d 630 (9th Cir. 2004)................................................................................10

*Holdgrafer v. Unocal Corp.*
160 Cal.App.4th 907 (2008).....................................................................................4

*Johnson v. Couturier*
572 F.3d 1067 (9th Cir. 2009)...............................................................................13

*Johnson v. Tyson Foods, Inc.*
580 F.Supp.3d 382 (N.D. Tex. 2022)..................................................................6, 7

*Klamath Forest All. v. U.S. Fish & Wildlife Serv.*
No. 2:24-CV-02347-DC-CSK, 2025 WL 2753167 (E.D. Cal. Sept.
26, 2025).................................................................................................................13

*Linda Vista Vill. San Diego Homeowners Assn., Inc. v. Tecolote Invs.,
LLC*
234 Cal. App. 4th 166 (2015)..................................................................................2

*Mangini v. Aerojet-Gen. Corp.*
12 Cal.4th 1087 (1996).............................................................................................1

*Murphy v. Nat'l Collegiate Athletic Ass'n*
584 U.S. 453 (2018) ...............................................................................................12

*New York v. United States*
505 U.S. 144 (1992) .................................................................................................7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Norgart v. Upjohn Co.*
21 Cal.4th 383 (1999)............................................................................3, 4

*Olympic Pipe Line Co. v. City of Seattle*
437 F.3d 872 (9th Cir. 2006)....................................................................6

*Pacesetter Sys., Inc. v. Medtronic, Inc.*
678 F.2d 93 (9th Cir. 1982)....................................................................13

*Park Village Apts. Tenants Ass'n v. Mortimer Howard Trust*
636 F.3d 1150 (9th Cir. 2011)..................................................................9

*Printz v. United States*
521 U.S. 898 (1997) ................................................................................7

*Ralphs Grocery Co. v. Victory Consultants, Inc.*
17 Cal.App.5th 245 (2017).......................................................................3

*Robinson v. S. California Ry. Co.*
129 Cal. 8 (1900)....................................................................................2

*Sable v. Quintero*
C.D.Cal. 2:26-cv-02739-AB......................................................................6

*Shell Offshore Inc. v. Greenpeace, Inc.*
864 F.Supp.2d 839 (D. Alaska 2012)......................................10, 11, 12

*Shell Oil Co. v. City of Santa Monica*
830 F.2d 1052 (9th Cir. 1987)..................................................................8

*Sierra Club v. Clinton*
689 F.Supp.2d 1123 (D. Minn 2010) .....................................................12

*Starrh & Starrh Cotton Growers v. Aera Energy LLC*
153 Cal.App.4th 583 (2007).................................................................1, 2

*Strodel v. Wilcox*
137 Cal. App. 2d 781 (1955)....................................................................4

*Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*
204 U.S. 426 (1907) ................................................................................6

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Texas v. DHS*
    123 F.4th 186 (5th Cir. 2024) .................................................................. 9

*Turo Inc. v. City of Los Angeles*
    847 F. App'x 442 (9th Cir. 2021) ........................................................... 9

*U.S. v. Diapulse Corp. of Am.*
    457 F.2d 25 (2d Cir. 1972) ................................................................... 10

*United States, et al. v. Plains All American Pipeline, et al.*
    No. 2:20-cv-02415 (C.D. Cal. filed Mar. 13, 2020) ............................... 5

*United States v. California*
    921 F.3d 865 (9th Cir. 2019) ............................................................ 7, 12

*United States v. Carmack*
    329 U.S. 230 (1946) ............................................................................... 7

*United States v. Vertac Chem. Corp.*
    46 F.3d 803 (8th Cir. 1995) ................................................................... 7

*Washington v. United States Dept. of Educ.*
    807 F.Supp.3d 1275 (W.D. Wash. 2025) ............................................. 13

*Western Oil and Gas Ass'n v. Cory*
    726 F.2d 1340, 1344 (9th Cir. 1984), *aff'd*, 471 U.S. 81 (1985) .......... 8

*Williams v. S. Pac. R. Co.*
    150 Cal. 624 (1907) ............................................................................... 2

**STATUTES**

California Civil Code
    § 1007 ...................................................................................................... 2

California Code of Civil Procedure
    § 312 ....................................................................................................... 3
    § 315 .................................................................................................... 3, 4
    § 318 .................................................................................................... 3, 4
    § 338 ....................................................................................................... 4

## INTRODUCTION

Sable's Opposition reveals how Sable became frustrated with the progress of negotiations over an easement that would allow it to run oil through a pipeline on State Parks' land, so Sable decided to take matters into its own hands. Sable did this by restarting a long-dormant pipeline in March 2026 without any right to use the State's property. That is a new and continuing trespass, pure and simple. No federal law or federal government action authorizes that kind of incursion on a sovereign State's land—nor could it, consistent with the Constitution's anti-commandeering doctrine. This Court should enjoin Sable's trespass.

## ARGUMENT

### I. STATE PARKS IS LIKELY TO SUCCEED ON THE MERITS

#### A. Sable's Flowing of Oil Constitutes a Continuous Trespass

State Parks is likely to succeed on its claim that Sable is trespassing at Gaviota State Park by flowing oil through the four-mile segment of Line CA-325 that runs underground through Gaviota State Park (the "Pipeline"), because Sable lacked permission to use State Parks' property such as through a new easement similar to the previously expired easement. Sable claims that the flow of oil through the Pipeline does not constitute a continuing trespass because the oil is contained within the Pipeline. But Sable's conduct of flowing oil through the Pipeline constitutes a trespass under established California law because it subverts the rights of State Parks as a property owner to refuse entry (in this case, of hydrocarbons) to its property. *See Cassinos v. Union Oil Co.*, 14 Cal.App.4th 1770, 1778 (1993) ("[C]ausing subsurface migration of fluids into a mineral estate without consent constitutes a trespass"); *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal.App.4th 583, 592 (2007) ("[A] continuing trespass is an intrusion under circumstances that indicate the trespass may be discontinued or abated."); *accord Mangini v. Aerojet-Gen. Corp.*, 12 Cal.4th 1087, 1097 (1996). Because Sable can discontinue the flow of oil through the Pipeline at any time, Sable's trespass is

REPLY TO OPP. TO MOT. FOR PRELIM. INJ. CASE NO. 2:26-CV-02946-WLH-MAA

properly characterized as continuing rather than permanent. *See Starrh,* 153 Cal.App.4th at 595-596.

The cases Sable relies on do not lead to a different conclusion. Neither *Starrh* nor *Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal.3d 862 (1985) supports the proposition that the unauthorized resumption of oil flow through a long-dormant pipeline is not a continuing trespass, as Sable asserts. See ECF 24, Opp. at 9-10. Rather, *Starrh* explains that causing subsurface migration of liquids without consent "presents a classic continuing trespass," and the court "stressed that, where some means of abatement exist, classifying the trespass or nuisance as permanent" is incorrect. 153 Cal.App.4th at 597. Sable's analogy to turn-of-the-century railroad jurisprudence does not support its argument. Neither of the cited cases even considers the question of whether a train inflicts a separate trespass from the underlying railroad. *Williams v. S. Pac. R. Co.,* 150 Cal. 624, 625 (1907) (railroad track obstructing street access was permanent trespass); *accord Robinson v. S. California Ry. Co.*, 129 Cal. 8, 11 (1900). Similarly, *Beck Dev. Co. v. S. Pac. Transp. Co.*, which involved groundwater contamination, has no bearing on whether flowing oil within a pipeline is itself a trespass if it meets all the elements of trespass under California law. 44 Cal.App.4th 1160 (1996). Even if the Pipeline itself were a permanent trespass, the flow of oil through the Pipeline is a continuous trespass that only began last month. *Starrh,* 153 Cal.App.4th at 595-596; ECF 23-4, Bellman Decl. ¶7.

**B.    State Parks' Trespass Claim Is Timely**

Sable does not claim that it owns any easement or other property right at Gaviota State Park under state law. Yet its contention—that the State is forever foreclosed from injunctive relief to stop the ongoing encroachment—amounts to the practical equivalent of creating a new, permanent easement after the previous, time-limited one lapsed. But California explicitly prohibits the use of statutes of limitations to create such easements against the State. Cal. Civ. Code § 1007; *Linda*

*Vista Vill. San Diego Homeowners Assn., Inc. v. Tecolote Invs., LLC*, 234 Cal. App. 4th 166, 178 (2015) ("There can be no adverse holding of [public land] which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations.").

Even if the statute of limitations applies to Sable's trespass, under California law, a statute of limitations begins to run when the corresponding cause of action accrues, which occurs when the cause of action is "complete with all of its elements." Cal. Code Civ. Proc. § 312; *Norgart v. Upjohn Co*., 21 Cal.4th 383, 397 (1999). The general statute of limitations for actions "for the recovery of real property, or for the recovery of the possession thereof," is five years from the seizure or possession. Cal Civ. Proc. Code § 318. And the limitations period when the *State* sues "for or in respect to any real property," is ten years from accrual of the right. *Id*. § 315. One of the elements of a cause of action for trespass is the "lack of permission for the entry or acts in excess of permission." *Ralphs Grocery Co. v. Victory Consultants, Inc*., 17 Cal.App.5th 245, 262 (2017). Here, between 2016 (when the Celeron Easement expired) and March 2026, State Parks granted Sable and its predecessors-in-interest permission to keep and maintain the Pipeline in *preparation for potential future* operations.[1] ECF 23-4, Bellman Decl. ¶¶ 7-12; Bellman Supp. Decl., ¶¶ 6-7.[2] State Parks could not have sued at that time, because

---

[1] Sable makes much of an inadvertent statement in State Parks' Motion saying that Sable had been committing trespass since 2016. Opp. at 9 (citing Mot. at 2.). That passing statement (which was in the Motion's introduction—not its legal argument section)—does not reflect the basis of State Parks' lawsuit. State Parks' position is that State Parks permitted Sable and its predecessors to continue to maintain the Pipeline (even though the terms of the original easement no longer required it to grant that permission); however, it revoked that permission on March 14, 2026, which is when the Pipeline itself became an illegal trespass. In any event the resumption of operation of the Pipeline is an independent continuing trespass. ECF 23-4, Bellman Decl. ¶¶ 7-12; Bellman Supp. Decl., ¶¶ 6-7.

[2] Local Rule 7-10 authorizes a moving party to serve and file a "reply memorandum, and declarations or other rebuttal evidence." Further, courts have discretion to consider such evidence in ruling on motions for preliminary injunctions. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *accord Bus. Ventures, Inc. v. Searle*, 248 F.Supp.3d 1029, 1032 (D. Or. 2017). Accordingly, the Court can consider supplemental declarations and Requests for Judicial Notice.

the claim had not accrued: Sable had permission to continue maintaining an empty pipeline. *See Strodel v. Wilcox*, 137 Cal. App. 2d 781, 785–786 (1955). On March 14, 2026, State Parks demanded that Sable "immediately remove the pipeline." ECF 23-4, Bellman Decl., Ex. H at 1. Thus, even if the presence of the Pipeline itself was a permanent rather than a continuing trespass, and even accepting that Sable's proffered three-year statute of limitations applied (which State Parks disputes), State Parks' trespass cause of action did not accrue until March 14, 2026. On that date, Sable lost its permission to keep the Pipeline in place. *Norgart*, *supra*, 21 Cal.4th at 397. State Parks filed its Complaint three days later, well within any applicable limitations. Cal. Civ. Proc. Code §§315, 318, and 338; *Harrison v. Welch*, 116 Cal. App. 4th 1084, 1096 (2004).

In any event, under California law Sable is estopped from arguing that State Parks' trespass claim is time-barred. *See Holdgrafer v. Unocal Corp.*, 160 Cal.App.4th 907, 925 (2008) ("A defendant will be estopped to invoke the statute of limitations where there has been some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action." (internal quotation marks omitted)). Sable claims that ever since it acquired the Santa Ynez Pipeline System, it has worked with state and federal regulators to repair the Pipeline, sought and obtained the necessary permits from State Parks to make those repairs, and, since April 2024, engaged in ongoing negotiations with State Parks to obtain a new easement. ECF 27, Rusch Decl., ¶¶ 2-17, 20-50; ECF 23-5, Siverson Decl. ¶2-10.[3] Based on this conduct, State Parks had no reason to believe that Sable's intentions were anything other than to obtain a regularized property interest (via a new easement) from State Parks. Considering its conduct, Sable should be estopped from arguing that State Parks forfeited its right to assert a trespass claim. *Holdgrafer*, supra, 160 Cal.App.4th at 925-26.

---

[3] Sable's predecessors-in-interest demonstrated varying long-term objectives with respect to the Pipeline, but consistently sought and received ROE permits from State Parks for repairs and maintenance. ECF 23-4, Bellman Decl. ¶8.

**C.  The Consent Decree Does Not Estop State Parks from Asserting Trespass**

The Consent Decree did not grant the pipeline operator (then, Plains) an easement to flow oil through Gaviota State Park, nor can it serve as Sable's defense to State Parks' trespass action. ECF 23-2, RJN, Ex. 2 ¶ 74 ("This Consent Decree shall not be construed to limit the rights of [applicable agencies] to obtain … injunctive relief" except regarding topics explicitly addressed in the Consent Decree.). It is irrelevant that the Consent Decree outlined considerations attendant to constructing a replacement pipeline. ECF 24, Opp, 10:19-11:11. Such recognition is not, as Sable claims, a right to automatically restart use of the Pipeline once the pipeline safety requirements were deemed satisfied. Rather, the Consent Decree states "Defendants are responsible for achieving and maintaining full compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree *shall be no defense to any action commenced pursuant to any such laws*, ..." *Id*. ¶ 78, emphasis added. This is such an action, and nothing in the Consent Decree provides Sable with any defense.

**D.  Sable's Affirmative Defenses Are Meritless**

**1.  The Pipeline Safety Act Does Not Preempt State Parks' Trespass Claim**

California is disputing in several pending lawsuits Sable's assertions that the Pipeline is interstate.[4] But even if the Pipeline were interstate, the Pipeline Safety Act ("PSA") would not preempt State Parks' trespass claim because the PSA does not apply to common law trespass; nowhere did Congress purport to abrogate a sovereign state's property rights in its own land. Rather, the PSA precludes a party

---

[4] *See California v. PHMSA*, No. 26-508 (9th Cir. filed Jan. 28, 2026) ECF 1.1 at 2 (Petition for Review), ECF 23.1 at 34-54 (Petitioners' Opening Brief), *United States, et al. v. Plains All American Pipeline, et al.*, No. 2:20-cv-02415 (C.D. Cal. filed Mar. 13, 2020) ECF 43 at 17-18, 24-25, ECF 43-1 at 66-73.

from using the terms of an existing contract to regulate pipeline safety. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 874 (9th Cir. 2006). Unlike in *Olympic*, the present action is one of common law trespass and not an attempt to enforce a contract, let alone regulate pipeline safety. Common law trespass is not "repugnant" to the PSA and does not deprive the PSA of its efficacy. *Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 437 (1907). Sable cites no case supporting its argument that a federally regulated pipeline may ignore state property law, and does not assert eminent domain is at issue here.

Even if the Court applied the PSA to the easement negotiations, which would be improper as that is not the subject of this litigation, Sable's allegation that State Parks impermissibly exercised its property rights to impose preempted pipeline safety standards fails. A property owner, including the State, can exclude an undesirable tenant for many reasons, including managing its own property safely, without straying into preempted territory. *Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Co. Inc.*, 626 F.Supp.3d 1030, 1049 (W.D. Wis. 2022); cf. *Sable v. Quintero*, C.D.Cal. 2:26-cv-02739-AB (filed Mar. 13, 2026).

### 2.    The DPA Does Not Preempt State Parks' Trespass Claim.

Sable also argues the DPA preempts State Parks' trespass claim. But the DPA neither allows nor directs Sable to requisition the Park for the purpose of complying with the DPA.

Sable's reliance on *Johnson v. Tyson Foods, Inc.*, 580 F.Supp.3d 382 (N.D. Tex. 2022) is misplaced. *Johnson* did not hold that a defendant may commit intentional torts or make use of others' property without property owners' consent, to comply with a DPA order. Nor could it. Congress intentionally *terminated* the President's requisition authority under the DPA (see below). And the DPA certainly contains nothing about requisitioning *State*-owned property. Further, two federal courts of appeals rejected the position that the DPA excuses compliance with other

laws. *United States v. Vertac Chem. Corp.*, 46 F.3d 803, 811-12 (8th Cir. 1995); *Hercules, Inc. v. United States*, 24 F.3d 188, 202-04 (Fed. Cir. 1994). No Circuit adopted the view advanced by Sable in reliance on *Johnson*.

Indeed, such a reading of the DPA would raise serious constitutional difficulties. Under the Constitution, the federal government cannot compel a state "to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). States have the sovereign prerogative to opt out of federal programs, even if doing so would frustrate the federal scheme in question. *United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019). A state agency's choice to refrain from dedicating its property to the federal government's use thus "cannot be invalid under the doctrine of obstacle preemption" because under the federal anti-commandeering doctrine, California has "the right of refusal." *Id.*

Sable attempts to evade the anti-commandeering doctrine by contending that no federal law is conscripting California into serving as the federal government's agent. ECF 24, Opp., at 21. But Sable removed this state-law trespass action to federal court on the basis that it functions as a federal officer because it is carrying out the federal government's orders under the DPA; Sable cannot have it both ways. ECF 1, Not. Removal. And Sable relies on that alleged capacity to requisition a state-owned facility against the wishes of the State. The anti-commandeering doctrine precludes the federal government—or a private company acting at its behest—from conscripting a State to apply its property to a federal use. *Printz, supra*, 521 U.S. at 925; *cf. New York v. United States*, 505 U.S. 144, 177 (1992) (Congress could not force State to "take title" to previously private property). Nor has Sable attempted to argue this is a federal "taking" pursuant to congressionally authorized procedures. *Cf. United States v. Carmack* 329 U.S. 230, 243-246 (1946). Sable cannot hide behind the DPA by asserting the federal government validly authorized its trespass.

REPLY TO OPP. TO MOT. FOR PRELIM. INJ. CASE NO. 2:26-CV-02946-WLH-MAA

### 3.    An Injunction Would Not Require Sable to Violate Federal Law

An injunction issued in this case would also not require Sable to violate the DPA. Nothing in the Wright Order purports to authorize or command Sable to commit trespass in violation of State law. ECF 23-2, RJN, Ex. 3. This is because Congress intentionally did *not* empower either the executive branch, or private parties, to requisition others' property under the operative version of the DPA.

When Congress enacted the DPA in 1950, it included the power to "requisition" facilities or materials. Supp. RJN, Ex. 9. In this initial version of the DPA, the requisition provision was Title II. But Congress gave Title II an expiration date and allowed it to lapse on April 30, 1953. P.L. 83-95, 67 Stat. 129. P.L. 83-95. Since 1953, the executive branch has not had the authority under the DPA to requisition others' facilities. Sable's argument that the DPA requires it to requisition a State Parks' facility would absurdly result in the DPA granting requisition authority to contractors, even though that authority is denied to the executive branch. The DPA does not have this effect.

### 4.    The Commerce Clause and Import-Export Clause Do Not Preempt the Trespass Claim

Sable's reliance on the Commerce Clause and Import-Export Clause is a mismatch. State Parks sued Sable because Sable was and is trespassing on State Parks property. Sable had not identified any trespass cases in which the Commerce Clause or Import-Export Clause is implicated, and State Parks has not found any. The decision in *Western Oil and Gas Ass'n v. Cory* addressed whether a disproportionate exaction imposed an "undue burden" on interstate commerce. 726 F.2d 1340, 1344 (9th Cir. 1984), *aff'd*, 471 U.S. 81 (1985); *accord Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1060 (9th Cir. 1987) (city's franchise lease did not violate dormant Commerce Clause, where city did not act to favor domestically produced oil operations, posed no threat of inconsistent regulation, and was not unreasonable). Even if applied to the easement negotiations, there is no

preemption because, Sable does not contend they featured differential treatment of in-state and out-of-state corporations, or demand for an excessive fee. *See Alamo Rent-A-Car, Inc. v. City of Palm Springs,* 955 F.2d 30, 31 (9th Cir. 1991)*, as amended on denial of reh'g* (Jan. 24, 1992).

## II.   STATE PARKS HAS DEMONSTRATED AMPLE IRREPARABLE HARM.

### A.   Trespass Constitutes Irreparable Harm as a Matter of Law

This case is controlled by the "well-established" principle that a loss of interest in real property, such as being subject to a trespass, "constitutes an irreparable injury." *Park Village Apts. Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011); *see also, Golf Village North LLC v. City of Powell*, 333 F.Supp.3d 769, 781 (S.D. Ohio 2018) (collecting cases). The unpublished disposition in *Turo Inc. v. City of Los Angeles*, 847 F. App'x 442, 444 (9th Cir. 2021)—concerning an unusual fact pattern involving cars from a car-sharing platform transiting in and out of LAX—does not overrule *Park Village*. And the fact that this case involves "loss of control and use of [the State's] private property," *Texas v. DHS*, 123 F.4th 186, 211–12 (5th Cir. 2024), only heightens the irreparable injury. *See id.* (upholding TRO where federal agents "show[ed] that they intend to prevent [Texas] from 'maintaining operational control over its own property.'")

### B.   Sable's Prevention of Complete CEQA Review Constitutes Irreparable Harm

Sable's "self-help" remedy prevented State Parks from being able to follow the state-law procedures of the California Environmental Quality Act (CEQA) in deciding whether and under what conditions to grant an easement.[5] Bellman Decl. ECF 23-4, Ex. H. Because "irreparable injury flows from the failure to evaluate the

---

[5] State Parks disagrees with Sable's representations to the contrary (ECF 24, Opp. at 18-19), as State Parks has consistently required CEQA compliance for any Pipeline easement and has been harmed by Sable's failure to complete the process prior to Sable's trespass. ECF 23-5, Siverson Decl. ¶6.

environmental impact" of Sable's actions, *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 642 (9th Cir. 2004), this constitutes irreparable harm. State Parks is held hostage to the trespasser, forced to deal with the consequences of allowing Sable to use its land for operation and maintenance of the Pipeline when it has not been able to fully understand or plan for those consequences. The harm from failure to conduct environmental review is irreparable. *Id*.

### C. State Parks Provided Significant Evidence of Present Threats from Sable's Operations

State Parks' experience with Sable shows that State Parks is exposed to substantial risk as a property owner. ECF 23, Motion, 13:2-15:16. The incident with the recent sinkhole demonstrated that Sable was woefully untimely and non-communicative with State Parks. Supp. Bellman Decl., ¶¶ 2-5. State Parks lacks contractual protections for the interests of the State *Id*. 13:21-15:7. Sable provides no assurances that its unlawful use of Gaviota State Park will be covered by liability insurance to cover Sable's operation of the Pipeline, which is contrary to a court order.[6] This is a compelling case of irreparable harm that only a preliminary injunction can address.

### III. THE BALANCE OF EQUITIES SUPPORTS AN INJUNCTION

Sable's asserted harm exclusively arises from the cessation of its tortious activity. However, because its conduct is tortious and unlawful, Sable has no protectable interest at stake here, even if it would suffer economic hardship as a result of the injunction. *See U.S. v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972); *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F.Supp.2d 839, 851-52 (D. Alaska 2012) (balance of equities tipped in favor of enjoining trespass because trespass is wrongful); *DISH Network L.L.C. v. DelVecchio*, 831 F.Supp.2d 595,

---

[6] A common Commercial General Liability insurance policy exclusion relates to conduct contrary to a court order. See *Center for Biological Diversity, et al. v. Department of Forestry & Fire Protection, et al.*, No. 25CV02244 (Santa Barbara County Sup. Ct. filed Apr. 15, 2025) Order re Preliminary Injunction and Undertaking, July 29, 2025.

601-602 (W.D.N.Y. 2012) ("The only hardship to Defendant from this injunction would be to prevent him from engaging in further illegal activity, so the balance clearly weighs in Plaintiffs' favor."). Given that Sable does not dispute that the balance of hardships would tip in favor of enjoining tortious or unlawful activity, should the Court determine that State Parks will likely succeed on the merits, it must necessarily determine that the balance of equities tips in favor of granting an injunction. *See Shell Offshore*, 864 F.Supp.2d at 851-52.

Sable's claimed harms are disingenuous. Sable asserts that not trespassing will subject Sable to federal penalties under the DPA Order. However, as outlined above, nothing in the DPA Order requires Sable to commit trespass, nor could any DPA order have the authority to order trespass onto State property without violating the Constitution's anti-commandeering principle. Besides, *Sable itself* asked the federal government to issue the DPA order. ECF 23-2, RJN, ¶ 3, Ex. 3, fn.6. "[S]elf-inflicted wounds are not irreparable injury." *Al Otro Lado v. Wolf,* 952 F.3d 999, 1008 (9th Cir. 2020) (rejecting motion to stay enforcement of preliminary injunction on grounds that equitable harm alleged by government was result of government's own actions).

Sable's claim of financial harm ignores Sable's self-proclaimed alternative options for moving its oil. Sable and the Wright Order both reference alternative "non-[pipeline] … contracts or orders," including the use of boats to deliver product. ECF 23-2, RJN, ¶ 3, Ex. 3 at 3; Supp. RJN, Ex. 10. Sable may prefer to use the Pipeline but has contended it has other options. The balance of equities supports issuing an injunction here, since doing so stops a trespass interfering with State Parks' property interests and allows Sable to pursue a different avenue for transporting its hydrocarbons.

## IV.  THE PUBLIC INTEREST FAVORS GRANTING AN INJUNCTION

Sable argues that the public interest favors denying an injunction based on the federal government's declaration that the country is currently facing a national

emergency. ECF 24, Opp. at 20-21. But preventing constitutional violations always serves the public interest, and California retains its constitutional prerogative to decline to help the federal government (or Sable) implement a federal program. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 472 (2018); *United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019).

Sable baldly asserts that a shutdown of its operations would jeopardize the Nation's energy supply. ECF 24 at 20-21.[7] In light of the total production of domestic oil, that contention cannot be taken seriously. Supp. RJN, Ex. 11 (domestic total production levels); ECF 23-2, Ex. 2 (forecasted production levels of 50,000 barrels/day; <0.5% of domestic total).

But even if Sable's assertion were credible, the public has an overwhelming interest in the cessation of tortious activity on public property, protecting the Constitution, and preserving Gaviota State Park for the enjoyment of the public. *See, e.g.*, *Shell Offshore*, 864 F.Supp.2d at 853 ("The public interest is not disserved by an injunction that precludes illegal or tortious conduct."); *Baird v. Bonta*, 81 F.4th 1036, 1048 (9th Cir. 2023). Sable's interpretation of the authority it received from the DPA would permit a broad scope of numerous unlawful acts that it may deem necessary for DPA compliance, which in addition to forfeiting California's property interest, would critically undermine the Constitution's express limitations on the power of the executive branch (as well as the anti-commandeering doctrine).

Although Sable points to the failure to issue an immediate injunction in *Bad River Band* because of the "harms of sudden termination" (ECF 24 at 16:13-15), in that case the pipeline had been in continuous use since the original easement was granted *in 1952*. 626 F.Supp.3d at 1037-38. Sable's mere weeks of illicit trespass, following over a decade of the Pipeline sitting dormant after a catastrophic oil spill,

---

[7] Sable cites *Sierra Club v. Clinton*, 689 F.Supp.2d 1123 (D. Minn 2010) for the proposition that a mere declaration of the national interest by the executive branch will support denying a preliminary injunction on public interest grounds. *Sierra Club* held nothing of the sort as the court did not defer to the executive branch, and the case involved no alleged trespass.

do not compare favorably.

## V.   COMITY DOES NOT WEIGH AGAINST AN INJUNCTION

A preliminary injunction against Sable here would not in any way prevent other cases from proceeding regarding the validity of the Wright Order, Consent Decree, or PHMSA's jurisdiction. In *Bergh v. Washington*, a plaintiff sought to enjoin the actions of another *court*. *Bergh v. State of Wash.*, 535 F.2d 505, 506 (9th Cir. 1976). Here, State Parks seeks nothing similar. The parties and issues in this case are distinct and unique. The doctrine of comity should not deter the Court from issuing a preliminary injunction to halt Sable's flagrant trespass on State land.  *See generally Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982).

## VI.   THE COURT SHOULD NOT REQUIRE A BOND

The impact to the environment, State Parks' status as a state agency, and the likely minimal impact to Sable support waiving a bond for the present preliminary injunction. Courts have discretion to waive imposition of a bond on a plaintiff state, particularly in public-interest litigation. *Washington v. United States Dept. of Educ.,* 807 F.Supp.3d 1275, 1293 (W.D. Wash. 2025). There is similarly broad support for waiving bond requirements in the interest of environmental protection. *Klamath Forest All. v. U.S. Fish & Wildlife Serv.,* No. 2:24-CV-02347-DC-CSK, 2025 WL 2753167, at *15 (E.D. Cal. Sept. 26, 2025).

A bond should also not be required because Sable presents no evidence other than unsupported opinion that the requested injunction would harm Sable. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

This Court should grant the Motion.

Dated:  April 10, 2026                    Respectfully submitted,

ROB BONTA
Attorney General of California
JESSICA E. TUCKER-MOHL
Supervising Deputy Attorney General


*/s/ Alice M. Segal*
ALICE M. SEGAL
Deputy Attorney General
*Attorneys for Plaintiff California*
*Department of Parks and Recreation*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff California Department of Parks and Recreation, certifies that this brief contains <u>3994</u> words, which:

_X_  complies with the word limit of L.R. 11-6.1.

Dated:  April 10, 2026                            Respectfully submitted,

                                                 ROB BONTA
                                                 Attorney General of California


                                                 */s/ Alice M. Segal*
                                                 ALICE M. SEGAL
                                                 Deputy Attorney General
                                                 *Attorneys for Plaintiff California
                                                 Department of Parks and Recreation*

# CERTIFICATE OF SERVICE

Case Name: **California Department of Parks & Recreation v. Sable Offshore Corp. et al.**     No.     **2:26-cv-02946**

I hereby certify that on <u>April 10, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **DEPARTMENT OF PARKS & RECREATION'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

2. **SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THE DEPARTMENT OF PARKS & RECREATION'S REPLY TO THE OPPOSITION TO THE MOTION FOR A PRELIMINARY INJUNCTION**

3. **SUPPLEMENTAL DECLARATION OF DENA BELLMAN IN SUPPORT OF THE DEPARTMENT OF PARKS & RECREATION'S REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION**

4. **DEPARTMENT OF PARKS & RECREATION'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

5. **DEPARTMENT OF PARKS & RECREATION'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

6. **[PROPOSED] ORDER GRANTING THE DEPARTMENT OF PARKS & RECREATION'S REQUESTS FOR JUDICIAL NOTICE IN SUPPORT OF THE MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 10, 2026</u>, at Los Angeles, California.

| J. Sissov | /s/ J. Sissov |
|-----------|---------------|
| Declarant | Signature |