UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:26-cv-02946-SVW-SSC | Date | May 28, 2026 |
|---|---|---|---|

| Title | *California Department of Parks and Recreation v. Sable Offshore Corp. et al* |
|---|---|

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [23]

## I.      Introduction

Before the Court is a motion for preliminary injunction, filed by Plaintiff California Department of Parks and Recreation ("Plaintiff") on March 27, 2026. ECF No. 23. For the following reasons, the motion is DENIED.

## II.      Relevant Background

### A.  Relevant Factual Background

The case arises from the fact that on or about March 16, 2026, Defendant Sable Offshore Corporation ("Defendant") began transporting oil through an underground pipeline, CA-325 (the "Pipeline"). Complaint ("Compl."), ECF No. 1, Ex. A ¶ 25. For Defendant, the Pipeline represents just one onshore pipeline segment of the Santa Ynez Pipeline System, which collectively allows for the transfer of oil from offshore oilfields in the Pacific Ocean, through a processing facility in Las Flores Canyon, to a station in Kern County. Declaration of J. Caldwell Flores, ("Flores Decl.") ¶ 4. Of relevance to this case, however, is a four-mile portion of the Pipeline, which is buried below the ground in Gaviota State Park

                                                                                                  :

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:26-cv-02946-SVW-SSC | Date | May 28, 2026 |
|---|---|---|---|

| Title | *California Department of Parks and Recreation v. Sable Offshore Corp. et al* |
|---|---|

(the "Park"), in the southern part of Santa Barbara County; the Park remains under Plaintiff's ownership and control. Declaration of Dena Bellman, ("Bellman Decl."), ECF No. 23-4 ¶ 2; Flores Decl. ¶ 7; Cal. Pub. Res. Code § 5001(b).

Historically, the Pipeline operated to transport oil with Plaintiff's permission, pursuant to a 30-year easement, granted by Plaintiff to Defendant's predecessor-in-interest in August 1987. "Easement," ECF No. 23-4 ¶ 5, Ex. B. However, the easement expired on July 17, 2016. *Id.* At the time of expiration, the Pipeline had already been decommissioned, following the 2015 rupture of pipeline CA-324, a connected onshore pipeline segment. This rupture had caused the catastrophic discharge of approximately 120,000 gallons of heavy crude oil into the Pacific Ocean and across coastal areas of Santa Barbara County. "Consent Decree," ECF No. 23-2, Ex. 1 at 1. In the aftermath of that spill, the United States government and the government of the State of California, on behalf of several state agencies, including Plaintiff, sued Defendant's predecessor-in-interest in federal court for violations of federal and state laws. *United States of America et al v. Plains All American Pipeline L.P. et al.,* 2:20-cv-02415-SVW-SSC (C.D. Cal). That case culminated in a final judgment in the form of a Consent Decree, issued on October 14, 2020. *Id.* at Dkt. No. 33.

Because that decree prevented use of the Pipeline for oil transportation until certain conditions were met, when the easement expired, the Pipeline was not operational. Since that time, Defendant gained ownership of the Pipeline. Defendant has continued to access the inactive Pipeline, but its permissive access has been limited by annual Right of Entry Permits, which allowed Defendant "access to and maintenance of [the Pipeline]" but specified that "[a]ctivities related to any new or future projects, including restarting [the Pipeline] or constructing a new pipeline" were not permitted. "ROE," ECF No. 23-4, Ex. E. Meanwhile Defendant unsuccessfully attempted to negotiate with Plaintiff for a new easement. Defendant was also unsuccessful in its attempts to satisfy state regulators that it met the requirements of the Consent Decree to restart the Pipeline.

Defendant therefore petitioned the Executive Branch of the United States government for relief. This relief came in several forms. First, the Pipeline and Hazardous Materials Safety Administration

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:26-cv-02946-SVW-SSC | Date | May 28, 2026 |
|---|---|---|---|
| Title | *California Department of Parks and Recreation v. Sable Offshore Corp. et al* | | |

("PHMSA") conducted inspections and determined that the Pipeline was part of an "interstate" pipeline facility subject to PHMSA's jurisdiction. Flores Decl. ¶¶ 28-29. Second, on March 13, 2026, empowered by Executive Order 14156—which declared a 'National Energy Emergency' and encouraged domestic energy production, particularly on the west coast—United States Energy Secretary Chris Wright issued the Pipeline Capacity Prioritization and Allocation Order (the "DPA Order"), which expressly ordered Defendant to restart active use of the Pipeline, along with the rest of the Santa Ynez Pipeline System. *Declaring a National Energy Emergency*, 90 FR 8433; DPA Order, ECF No. 23-2, Ex. 3. On or about March 16, 2026, in defiance of decisions by California state agencies and the injunction of a California court, Defendant began transporting oil through the Pipeline. ECF No. 23-2, Ex. 2.

### B. Procedural Background and Related Cases

Plaintiff filed this case for continuing trespass on March 17, 2026, in Superior Court of California, County of Santa Barbara. ECF No. 1-1. The complaint sought injunctive relief preventing Defendant from transporting oil through the four-mile portion of the Pipeline located below Plaintiff's property and a declaration of Plaintiff's ownership, rights, and authority over the land. *Id.* On March 19, 2026, Defendant removed the case before this Court, alleging federal officer jurisdiction, because Defendant claims to be acting under a federal officer by operating the Pipeline as an agent of the federal government and under its direct supervision and control. Notice of Removal, ECF No. 1. at 5-9. On March 17, 2026, Plaintiff filed the instant motion, requesting a preliminary injunction to prevent Defendant's continued operation of the Pipeline during the pendency of litigation. ECF No. 23. On April 23, 2026, Defendant opposed the motion. ECF No. 24. On April 10, 2026, Plaintiff replied. ECF No. 30. The Court entertained oral arguments at a hearing on April 27, 2026, and took the matter under submission. ECF No. 42.

It should be noted that this is one of several related cases, each representing a dispute over the restart of the Santa Ynez Pipeline System under the DPA Order. In *United States of America et al v. Plains All American Pipeline L.P. et al.*, 2:20-cv-02415-SVW-SSC, the Consent Decree is at issue, and the governments of the United States and the State of California dispute whether it should be enforced, terminated, or amended. In that case, the Court previously entertained a motion for preliminary injunction

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:26-cv-02946-SVW-SSC | Date | May 28, 2026 |
| --- | --- | --- | --- |

| Title | *California Department of Parks and Recreation v. Sable Offshore Corp. et al* |
| --- | --- |

requesting the operation of the entire pipeline be enjoined, which the Court denied for deficient showing of irreparable harm. In *Sable Offshore Corp. et al v. Armando Quintero*, 2:26-cv-02739-SVW-SSC, Defendant seeks declaratory judgment that state regulation is preempted by the DPA Order and the Consent Decree, and Defendant is protected from liability for complying with the DPA Order's commands. Finally, in *State Of California v. Chris Wright, et al.*, 2:26-cv-03396-SVW-SSC, California seeks a declaratory judgment that the DPA Order is unlawful or unconstitutional and an injunction preventing Defendant from using the DPA Order to justify continued operation of the pipeline system. All these cases remain in preliminary stages.

### III.   Legal Standard

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.*

"[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

Importantly, a "preliminary injunction is an extraordinary and drastic remedy, [and] one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Indeed, the moving party bears the burden of meeting all prongs of the *Winter* test. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011) ("To warrant a preliminary injunction [the plaintiff] must demonstrate that it meets all four of the elements of the

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:26-cv-02946-SVW-SSC | Date | May 28, 2026 |
|---|---|---|---|
| Title | *California Department of Parks and Recreation v. Sable Offshore Corp. et al* | | |

preliminary injunction test established in *Winter*[.]"). The decision of whether to grant or deny a preliminary injunction is a matter of the district court's equitable discretion. *See Winter*, 555 U.S. at 32.

## IV.    Discussion

### A.  Irreparable Harm

Plaintiff has manifestly failed to demonstrate that it will suffer irreparable harm in the absence of preliminary injunctive relief. To be sure, deprivations of property rights are often strong contenders for a showing of irreparable harm because the unique nature of property often makes injury difficult to calculate. *See, e.g.*, *Ralphs Grocery Co. v. United Food & Com. Workers Union Loc. 8*, 113 Cal. Rptr. 3d 88, 107 (Ct. App. 2010) ("[i]njunction is a proper remedy against threatened repeated acts of trespass, particularly where the probable injury resulting therefrom will be 'beyond any method of pecuniary estimation,' and for this reason irreparable") (citations omitted); *Drakes Bay Oyster Co. v. Salazar,* 921 F. Supp. 2d 972, 994 (N.D. Cal. 2013) ("Loss of an interest in real property may also be considered irreparable harm since the unique nature of real property makes a damages remedy inadequate" (citing *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d 1150, 1159 (9th Cir. 2011)). However, there is no rule that deprivation of a property interest is irreparable harm *per se*. In this case, where the property interest at stake is the use of the inside of an existing, subterranean pipeline structure, where Plaintiff has no evidence that it maintains any intention to avail *itself* of that right during the course of litigation, nor that Defendant's use of that right produces any tangible effect on the surrounding land, the Court finds good reason that the general rule does not apply.

This is not to say that injunctive relief will not be appropriate as a final award if Plaintiff prevails on the merits of the suit. Rather, "[i]t is settled that a trespass of a continuing nature, the constant recurrence of which renders the remedy at law inadequate, unless by a multiplicity of suits, affords sufficient ground for relief by way of injunction." *Slater v. Pacific American Oil Co.*, 212 Cal. 648, 655 (1931). However, for a *preliminary* injunction during the pendency of litigation, the burden of successive suits is inapplicable. Here, there must be an indication of irreparable injury between now and the resolution

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:26-cv-02946-SVW-SSC | | Date | May 28, 2026 |
|---|---|---|---|---|
| Title | *California Department of Parks and Recreation v. Sable Offshore Corp. et al* | | | |

of this action. If the value of the property right intruded upon were incalculable or beyond "pecuniary estimation," then such relief may be appropriate. But this is not the situation here. In this case, the intrusion is contained within the fixed structure of a pipeline and amounts to the transportation of a calculable quantity of oil over a measurable distance. The value of this discrete, economic use—the only use available for the area of property in question, given the permitted presence of the pipeline—is actually unusually well suited to monetary valuation. If Plaintiff prevails in this suit, calculating the value of this infringed right should not be a barrier to compensation.

In the Court's view, the only factor that would impact this analysis is the risk that oil would leak out of containment within the pipeline, causing environmental damage that could likely be incalculable. However, the evidence militates to indicate the absence of such an imminent risk. The Pipeline operated for nearly thirty years below Plaintiff's property without incident. Although the Pipeline was initially discontinued due to a catastrophic spill, it is not alleged that any part of the relevant Pipeline was responsible for the offending leak, particularly not the segment running beneath the Park. Instead, that leak originated in pipeline CA-324, a wholly separate segment of onshore pipeline.

On the issue of imminent environmental harm, Plaintiff's briefing did identify a "depression or sinkhole forming in the area of Gaviota State Park that runs along a portion of the Pipeline." Mot. at 6. Although at oral argument, Plaintiff emphasized this "sinkhole" as *symbolic* of risk rather than a risk in itself, the clear implication was that restarted use of the Pipeline was causing tangible environmental harm beyond its confines. Plaintiff, however, is grasping at straws, and its appeal to this argument is itself symbolic of its deficient showing on this issue. In briefing and at oral argument, Defendant put forward the testimony of an expert witness, who attested to the fact that this "sinkhole" was no more than a rodent burrow. ECF No. 25, Ex. A at 4; Transcript of Hearing, ECF No. 48 at 23. In light of this evidence, Plaintiff had no retort.

Finally, Plaintiff asserts that its inability to conduct environment review and assess pipeline safety may constitute irreparable harm. That argument is also unavailing. Plaintiff may not use its contracting power to effect or impose safety regulations on a pipeline beyond the scope of its authority. *See Olympic*

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:26-cv-02946-SVW-SSC | | Date | May 28, 2026 |
|---|---|---|---|---|
| Title | *California Department of Parks and Recreation v. Sable Offshore Corp. et al* | | | |

*Pipe Line Co. v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006). Plaintiff's noted concerns about its inability to address environmental and safety concerns undoubtedly refer to an inability to regulate the Pipeline's use. Under the binding Consent Decree, however, regulation of the Pipeline is to be controlled by California's Office of the State Fire Marshal ("OSFM"). Consequently, there is no irreparable harm in Plaintiff's inability to regulate, because Plaintiff, who is also a party to the Consent Decree, has no regulatory authority over the Pipeline of which it may be deprived.

In conclusion, Plaintiff fails to show a likelihood of irreparable harm during the pendency of litigation. This deficiency alone is fatal to Plaintiff's claim of entitlement to preliminary injunctive relief.

**B.  The Remaining *Winter* Factors**

Having found Plaintiff's argument for the risk of irreparable harm deficient, the Court need not address the remaining *Winter* factors.

**V.      Conclusion**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED.**

:

| | |
|---|---|
| Initials of Preparer | DTA |