ROB BONTA
Attorney General of California
JESSICA E. TUCKER-MOHL (SBN 262280)
Supervising Deputy Attorney General
E-mail: Jessica.Tuckermohl@doj.ca.gov
NICHOLAS TSUKAMAKI (SBN 253959)
E-mail: Nicholas.Tsukamaki@doj.ca.gov
ALICE SEGAL (SBN 288108)
E-mail: Alice.Segal@doj.ca.gov
AMANDA JOHNSON (SBN 303457)
E-mail: Amanda.Johnson@doj.ca.gov
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Tel: (510) 879-0982
*Attorneys for Plaintiff*
*Department of Parks & Recreation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF PARKS AND RECREATION,**<br>Plaintiff,<br>**v.**<br>**SABLE OFFSHORE CORP., PACIFIC PIPELINE COMPANY,** and **DOES 1-10** inclusive,<br>Defendants,<br>and<br>**UNITED STATES OF AMERICA**<br>Intervenor-Defendant | Case No. 2:26-cv-02946-SVW-SSC<br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff California Department of Parks and Recreation ("Plaintiff" or "State Parks"), by and through its undersigned attorneys, files this First Amended Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought by State Parks to enjoin Defendants Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable") from trespassing at Gaviota State Park ("Park"), which is owned and operated by State Parks, by transporting oil through a four-mile segment of a pipeline that runs underground and through the Park, surfacing at some locations. Sable claims that its trespass is authorized by an order issued by United States Secretary of Energy Chris Wright entitled Pipeline Capacity Prioritization and Allocation Order (hereinafter the "Wright Order") on March 13, 2026, at Sable's urging. Intervenor-Defendant United States of America has proffered a similar interpretation of the Wright Order. State Parks disagrees that the Wright Order authorizes Sable's trespass.

2. State Parks previously granted an easement to Sable's predecessor-in-interest to place and operate the pipeline through the Park. That easement, however, expired in 2016, and neither Sable nor its predecessors-in-interest have acquired a new easement. Thus, Sable is not currently authorized to transport oil through the segment of the pipeline that runs through the Park. Sable is also not authorized to leave its pipeline in the Park. Despite this lack of authorization, on or about March 16, 2026, Sable began transporting oil through the pipeline, and is therefore trespassing on State Parks' property. On March 14, 2026, State Parks demanded that Sable remove the pipeline from the Park, which Sable has refused to do. Sable is therefore also trespassing on State Parks' property by leaving its pipeline in the Park without permission from State Parks. In addition, since March 16, 2026, Sable has committed additional and separate trespasses by performing certain maintenance and improvement work at the Park that exceeded the scope of the limited permit issued by State Parks for that work, and by entering the Park on

August 21 and 28, 2026, to perform work without the consent or permission of State Parks. State Parks seeks an injunction directing Sable to cease the flow of oil through the Park and to remove the pipeline according to the expired easement.

## PARTIES

3. Plaintiff State Parks is a governmental entity of the State of California formed under Public Resources Code Section 501. State Parks controls the State Park system and it owns and operates the Park. (See Pub. Resources Code, §§ 5001, subd. (b), 5006, subd. (a), 5003.)

4. Defendant Sable is a Texas corporation with a principal place of business in California, and is the owner of what Sable calls the Santa Ynez Pipeline System ("SYPS") in Santa Barbara County. The SYPS includes two onshore pipelines CA-324 and CA-325 (formerly known as Lines 901 and 903). A segment of Line CA-325 runs underground and through Gaviota State Park. All of the oil that flows through the SYPS flows through that segment of Line CA-325 that runs through the Park.

5. Defendant Pacific Pipeline Company ("PPC") is a Delaware Corporation with a principal place of business in California, and is the former owner of Lines 901 and 903. In or around 2024, Sable acquired PPC and its assets, including Lines 901 and 903, which were renamed Lines CA-324 and CA-325, respectively.

6. Defendant the United States intervened in this lawsuit as a defendant.

7. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein under the fictitious names Does 1 through 10, inclusive, are presently unknown to State Parks, who therefore sues said Defendants by such fictitious names. State Parks will seek leave to amend this Complaint to allege the true names of Does 1 through 10 when they have been ascertained. State Parks is informed and believes, and thereupon alleges, that each of the fictitiously named Defendants participated in some or all of the acts alleged herein, and are liable for the damages, costs, and other relief sought in this Complaint.

8. On information and belief, at all times each of the Defendants was the agent, servant, employee, and/or contractor of each of the remaining Defendants and was acting within the course and scope of their authority as such agent, servant, employee, and/or contractor, and with the permission and/or consent of their co-Defendants.

## JURISDICTION AND VENUE

9. On March 19, 2026, Sable filed a Notice of Removal of this action from the Superior Court of California, County of Santa Barbara, to this Court based on federal officer jurisdiction pursuant to 28 U.S.C. § 1442. State Parks does not concede that federal officer jurisdiction is applicable here, and State Parks reserves the right to seek remand of this action to state court.

10. Assuming this Court has jurisdiction over this action, which State Parks does not concede, venue is proper in this District because a substantial part of the events or omissions giving rise to State Parks' claims occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

### Gaviota State Park

11. Gaviota State Park is located at 1595 U.S. Highway 101, Goleta, California 93117, in the southern part of Santa Barbara County. State Parks has owned the Park in fee and operated it since 1952 (initially a beach area, and thousands of additional backcountry acres were then added in the 1960s).

### The Previous Easement Issued by State Parks to Sable's Predecessor-in-Interest

12. On August 26, 1987, State Parks granted an easement to Celeron Pipeline Company of California ("Celeron") to "conduct, operate, maintain, and remove an underground pipeline together with its appurtenances for the transportation of hydrocarbon substances over, under, and across" a portion of Gaviota State Park

(the "Pipeline").[1] The Pipeline as described in the easement is the same Pipeline through which Sable is currently transporting oil.[2] The easement, which was for a term of thirty (30) years, began on July 28, 1986, and expired on July 27, 2016. The easement was subsequently amended in 1996 to correct the legal description, as Sable's predecessor re-routed the pipeline during construction without State Parks' approval or knowledge until several years after construction. The expired easement is attached hereto as Exhibit B and incorporated herein by reference. The 1996 amendment is attached hereto as Exhibit C and incorporated herein by reference.

13. Celeron is Sable's predecessor-in-interest. Neither Sable nor any of its predecessors-in-interest acquired a new pipeline easement, and the original easement has been expired since 2016. Sable therefore does not currently have an easement to transport oil under or across Gaviota State Park. Sable also does not have an easement or approval from State Parks that would allow its Pipeline to remain in place under or across Gaviota State Park.[3]

**The 2015 Refugio Oil Spill**

14. On May 19, 2015, a portion of Line 901 (now Line CA-324), which is connected to the Pipeline, ruptured and discharged approximately 2,934 barrels of

[1] Public Resources Code section 5012 provides in pertinent part that State Parks "may, upon application by the proper authorities, grant permits and easements for the following purposes and upon the terms as [State Parks] may prescribe: . . . (d) For electric, gas, water, sewer, telephone, telegraph and utility lines, and pipelines and structures incidental thereto, to perform a public service or oil or gas pipelines. . . . (f)(1) To an oil and gas lessee of the state for pipeline right-of-way purposes." State Parks has discretion in determining whether to grant an easement or not to grant an easement. *Id.* Moreover, under State Parks' policy, encumbrances that do little or nothing to contribute toward State Parks' mission are generally inappropriate, and State Parks is required to carefully analyze impacts before the encumbrance is approved by the State Parks Director. State Parks' Department Operations Manual ("DOM"), § 2103.2. Section 2103.2 of the DOM is attached hereto as Exhibit A and incorporated herein by reference.

[2] Although the Pipeline crosses Highway 101 near Gaviota State Beach, no portion of the Pipeline under Gaviota State Park follows a public right-of-way.

[3] Between 2016 and March 13, 2026, State Parks granted Sable and its predecessors-in-interest permission to keep the Pipeline in place at Gaviota State Park and to minimally maintain it in a dormant state. On March 14, 2026, State Parks revoked that permission to keep the Pipeline in place.

heavy crude-oil in Santa Barbara County. A portion of the oil reached the Pacific Ocean and coastal areas in the County, including Refugio State Beach. At the time of the oil spill, the Pipeline was owned and operated by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline, L.P. ("Plains").

15. In or around 2022, Pacific Pipeline Company ("PPC") purchased Lines 901 and 903 from Plains. In or around 2024, Sable acquired PPC and its assets, including Lines 901 and 903, which were renamed Lines CA-324 and CA-325, respectively. Between the time of the oil spill in 2015 and March 14, 2026, no oil was transported through the Pipeline. On March 13, 2020, Plains, along with the United States, the State of California, and various State agencies, entered into a Consent Decree that resolved litigation related to the oil spill.

**The Annual Right of Entry Permits Issued by State Parks to Sable and its Predecessors-in-Interest**

16. Between 2016 and 2025, State Parks issued annual Right of Entry ("ROE") permits to Sable's predecessors-in-interest or companies affiliated with Sable that allowed them to access Gaviota State Park in order to physically access the Pipeline and perform minimal maintenance on the Pipeline. Those permits were necessary because, as mentioned above, Sable does not have an easement that would otherwise allow it to access the Park.

17. The most recent annual ROE permit was issued by State Parks to PPC on July 25, 2025 ("Annual Permit"). That Annual Permit is attached hereto as Exhibit D and incorporated herein by reference. The term of that Annual Permit began on July 27, 2025, and expired on July 26, 2026. The Annual Permit stated that "[a]ctivities related to any new or future projects, including restarting Line 325 or constructing a new pipeline, are not included in the Project and are not covered by this Right of Entry. Instead, the parties are negotiating separate agreements regarding Permittee's activities with respect to restarting Line 325, including any preliminary work required by any regulatory oversight agencies to be completed

prior to restart."[4] The Annual Permit also provided that (1) State Parks "grants to [PPC] permission to enter upon State's property, conditioned upon the agreement of the Parties that this Permit does not create or vest in [PPC] any interest" in Gaviota State Park; and (2) PPC is permitted to enter the Park "for the purpose of pipeline maintenance and access for existing Line 325 that is currently subject to closure orders."[5]

**The Right of Entry Permit Issued to PPC in May 2025 to Perform Anomaly Digs**

18. On May 8, 2025, State Parks issued a separate ROE permit to PPC that allowed it to perform eighteen (18) "anomaly" digs along the segment of the Pipeline that runs through Gaviota State Park. The purpose of these digs was to expose the Pipeline in certain locations to allow a physical inspection of it and to determine if repairs of the Pipeline were needed. The permit states that it "does not create or vest in [PPC] any interest" in Gaviota State Park, and that "[i]n no event shall this Permit authorize work in excess or contrary to the terms and conditions of any regulatory agency permit or approval. Under no circumstances, whether or not authorized by any regulatory agency, other permit or any person or entity other than State, shall work exceed that which is authorized by this Permit." In May or June 2025, PPC completed the 18 anomaly digs. PPC did not, however, complete one of the conditions of the ROE permit that required PPC to rehabilitate (by way of

---

[4] The previous annual ROE permit that State Parks issued to PPC on July 25, 2024, and that expired on July 26, 2025, similarly stated that "[a]ctivities related to any new or future projects, including restarting Line 325 or constructing a new pipeline, are not included in the Project and are not covered by this Right of Entry. Instead, the parties are negotiating separate agreements regarding Permittee's activities with respect to restarting Line 325."

[5] The Annual Permit further stated that "[i]n any action brought to enforce or interpret any provisions of this Permit or to restrain the breach of any agreement contained herein, or for the recovery of possession of the Property, or to protect any rights given to the State against Permittee, . . . if the State shall prevail in such action on trial or appeal, the Permittee shall pay to the State such amount in attorney's fees in said action as the court shall determine to be reasonable, which shall be fixed by the court as part of the costs of said action."

reseeding) some of the dig areas, and remediate a road located in Gaviota State Park that PPC damaged. The permit expired on August 8, 2025. As a consequence of the failed rehabilitation and lack of reseeding, the dig areas at issue are currently overgrown with invasive mustard, which is the environmental impact that the ROE permit condition aimed to prevent.

**Sable's Prior Easement Application with State Parks**

19. Between approximately April 2024 and February 2026, Sable was in discussions with State Parks regarding obtaining an easement that would allow Sable to restart the transportation of oil through the Pipeline. On July 24, 2024, Emma Siverson, Senior Staff Counsel at State Parks, sent an email to Lee Alcock, Sable's Assistant General Counsel, and copied Stephen Laperouse, Vice President of Land at Sable, among others, stating that "Sable does not currently have a land right to use its pipeline at Gaviota State Park. In order for Sable to restart the pipeline running through State Parks' land, it needs an easement. Last week we discussed that that process is underway in that the applicable divisions of State Parks are aware that Sable wants an easement . . . ."

20. Rather than pursuing an easement as State Parks had recommended, Sable initially pursued an ROE permit to perform the anomaly digs discussed above.

21. On May 22, 2025, representatives of Sable met with representatives of State Parks and the California Department of General Services to discuss Sable's interest in re-initiating its request for a pipeline easement through Gaviota State Park. During the meeting, State Parks explained the steps Sable would need to take to apply for an easement, and reiterated that Sable was not authorized to transport oil through the Pipeline unless and until it obtained an easement from State Parks.

22. The following month, on June 27, 2025, Ms. Siverson sent a letter to Mr. Alcock and Sable's outside counsel that set forth the steps Sable would need to take to apply for an easement. The letter also stated the following:

> [O]n May 22, 2025, you requested that Sable be permitted to restart pipeline operations under an interim agreement, such as the existing ROE or an additional ROE. State Parks is not able [to] authorize the restart under a ROE, and as we have discussed, the current annual ROE does not authorize restart. The current annual ROE is simply a method of authorizing Sable general, minimal access to its offline pipeline.
>
> A ROE is a license that authorizes physical, temporary access. It does not authorize commencement of ongoing operations. Ongoing operations of Sable's pipeline include the very real potential that all of the resource impacts listed above could occur. Therefore, even if a ROE were a proper agreement to authorize restart, State Parks would have to complete the same analysis required above.
>
> When State Parks has mentioned pre-easement rights of entry in the past, it was prior to executing the May 8, 2025 ROE for the anomaly digs. Last year, we mentioned it in the context of projects where the easement requestor is requesting early access in order to begin construction, not to commence ongoing operations.

23. On July 25, 2025, Ms. Siverson sent an email to Sable's counsel stating that State Parks "believes [the Annual Permit] clearly does not allow restart. I explained to you why that is not possible in my June 27 letter." On December 31, 2025, Ms. Siverson sent another email to Sable's counsel stating, in relevant part, that the Annual Permit "does not cover Sable's operation restart."

24. Sable failed to complete the necessary steps for applying for an easement.

25. The United States has supported and facilitated Sable's efforts to bypass State Parks' property rights. On March 13, 2026, Chris Wright, the Secretary of the Department of Energy, issued the Wright Order; the Wright Order itself noted that it was made in response to a request from Sable. Similarly, Sable CEO Jim Flores was quoted as describing communications between Sable and federal government

officials to "discuss legal strategies in [Sable's] ongoing battle with California authorities," including discussing "condemnation" strategies. See https://subscriber.politicopro.com/article/2026/06/wright-burgum-duffy-to-visit-sable-project-amid-california-oil-push-00944394. This article is attached hereto as Exhibit E and incorporated herein by reference.

26. On March 14, 2026, State Parks issued a letter, attached hereto as Exhibit F and incorporated herein by reference, expressing its formal denial of Sable's requested easement and further demanding Sable remove its Pipeline pursuant to State Parks' rights under the expired easement, providing a detailed rationale. As the letter makes amply clear, Sable does not currently have any easement rights or other property rights that would allow it to transport oil through Gaviota State Park, or to leave its Pipeline in the Park.

27. On March 16, 2026, State Parks became aware by means of a press release issued by Sable that Sable had restarted the transportation of oil through its Pipeline, including through the segment that runs under Gaviota State Park. State Parks did not grant Sable permission to transport oil under, over, or through the Park, nor grant Sable any rights to leave its Pipeline in the Park.

28. Sable has and continues to profit as a result of its trespasses at Gaviota State Park by transporting oil through the segment of the Pipeline that runs under the Park.

**Sable's Additional Trespasses Since March 2026**

a. Sable's Violation of the Right of Entry Permit Recently Issued by State Parks Allowing Sable to Perform Maintenance and Improvement Work on the Pipeline

29. On August 7, 2026, State Parks issued Sable a limited duration Right of Entry permit that allowed Sable to perform work related to a check valve on the pipeline ("check valve permit"). Paragraph 10 of the permit provides that "[a]ccess to the [Park] shall be limited to the access designated by Exhibits 'B' and 'C.'"

Paragraph 12 of the permit states that "[u]nder no circumstances, whether or not authorized by any regulatory agency, other permit or any person or entity other than State, shall work exceed that which is authorized by this Permit."

30. Exhibit B to the check valve permit contains a Site Map for Gaviota State Park that depicts the pipeline, a fifty-foot wide footprint surrounding the pipeline, and the perimeter of the temporary workspace that Sable proposed to use to perform the check valve work. The perimeter of that temporary workspace does not extend beyond the fifty-foot wide footprint. Exhibit C to the permit is the Project Description, and consists of a letter dated July 28, 2026, from Sable's counsel to Ms. Siverson addressing PPC's intention to perform the check valve work. That letter states, in pertinent part, that "[t]he proposed workspace and excavation would be fully contained within the existing 50-foot Right-of-Way ('ROW') within Gaviota State Park. Attachment A and Attachment B[6] provide a vicinity/parcel/access route map and site plan for the proposed work area"; that "[a]ll excavation and temporary workspace will remain within the existing ROW; the temporary workspace will be approximately 75 feet long by 50 feet wide"; and that "[s]taging will occur entirely within the existing ROW and temporary workspace, approximately 75 feet long by 50 feet wide. Equipment, vehicles, and materials will be parked and stored within this designated area. No staging will occur outside the approved footprint or within vegetated areas." The July 28, 2026 letter also states that the following equipment would be used for the project: "(1) Excavator with street pads; (3-4) Light and heavy-duty work trucks; (1) Dump truck; (1) Air compressor; (1) Water buffalo [trailer equipped with large water tank]." The check valve permit, and exhibits B and C to the check valve permit, are attached hereto as Exhibit G and incorporated herein by reference.

---

[6] Attachment B to the July 28, 2026 letter is the same Site Map that is exhibit B to the check valve permit.

31. Sable began the check valve work on August 10, 2026, and, on information and belief, completed the work on August 14, 2026. On at least three days during the term of the permit, some of the vehicles, equipment, and materials that Sable was using for the work were located outside of the fifty-foot wide footprint referenced in the check valve permit. Sable also used more vehicles than the number listed in the permit's Project Description.

32. By performing the check valve work outside of the fifty-foot wide footprint, and by using more vehicles than the number authorized by the check valve permit, Sable violated the terms of that permit and in so doing trespassed on State Parks' property.

b. Sable's Trespasses Related to Inline Inspection Work on the Pipeline

33. On August 19, 2026, Nathan Soderberg, a Sable employee, sent an email to Kate Wilson, a Chief Planner for State Parks, informing her that the following day (August 20, 2026) Sable would begin conducting inspection work on the pipeline that involved setting out tracking boxes at various locations in the Park. Ms. Wilson responded to Mr. Soderberg the same day, and informed him that "Sable still does not have any right to access Gaviota State Park and does not have permission to enter tomorrow."

34. On August 19, 2026, Ms. Siverson sent an email to Sable's counsel regarding Sable's request to perform the inspection work. Ms. Siverson stated that State Parks was "willing to issue another ROE for access on August 24" as long as Sable provided certain requested information and the parties executed a right of entry permit for the work. Ms. Siverson reiterated that "[u]nless and until State Parks receives this information and grants a new ROE for this project, Sable has no right to enter," and noted that "Sable exceeded the ROE footprint during the valve can project last week, which constituted a trespass, and must be avoided in the future."

35. On information and belief, on August 21, 2026, Sable trespassed at the Park by entering the Park and placing the tracking monitors. State Parks and Sable did not execute an agreement or permit allowing Sable to perform that work, nor did Sable otherwise have permission from State Parks to perform that work. On August 28, 2026, Sable again trespassed at the Park when at least two Sable work trucks accessed the Park in a location inaccessible to the public by vehicle without permission from State Parks.

**FIRST CAUSE OF ACTION**

**Continuing Trespass**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

36. The allegations in Paragraphs 1 to 35, above, are hereby incorporated by reference as though fully set forth herein.

37. By intentionally transporting oil through the segment of the Pipeline that runs under, over, and through the Park without the consent or permission of State Parks, Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 have trespassed on State Parks' property.

38. By trespassing at the Park, these Defendants have wrongfully occupied and encroached upon State Parks' property, have injured/harmed State Parks' property rights, and have interfered with State Parks' and the general public's use and enjoyment of the Park. State Parks is informed and believes and thereon alleges that these Defendants' trespass was conducted with malice so as to cause injury to State Parks.

39. These Defendants' trespass is abatable, in that these Defendants are capable of stopping the flow of oil through the Pipeline at any time. Accordingly, these Defendants' conduct constitutes a continuing trespass.

40. An injunction is an appropriate remedy for a continuing trespass, because otherwise a plaintiff would be required to bring a multiplicity of suits to obtain

adequate relief. See *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach* (2014) 232 Cal.App.4th 1171, 1184; *Allred v. Harris* (1993) 14 Cal.App.4th 1386, 1390. Accordingly, State Parks does not have an adequate remedy at law for the injuries it has suffered and will continue to suffer as a result of these Defendants' conduct.

41. Unless and until enjoined and restrained by order of this Court, these Defendants will continue trespassing on State Parks' property. State Parks is therefore entitled to an injunction directing these Defendants to cease trespassing at the Park.

**SECOND CAUSE OF ACTION**

**Permanent Trespass**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

42. The allegations in Paragraphs 1 to 41, above, are hereby incorporated by reference as though fully set forth herein.

43. By leaving, and not removing, the Pipeline under, over, and through the Park after the withdrawal of consent or permission of State Parks, Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 have trespassed on State Parks' property.

44. By trespassing at the Park, these Defendants have wrongfully occupied and encroached upon State Parks' property, have injured/harmed State Parks' property rights, and have interfered with State Parks' and the general public's use and enjoyment of the Park. State Parks is informed and believes and thereon alleges that these Defendants' trespass was conducted with malice so as to cause injury to State Parks.

45. State Parks does not have an adequate remedy at law for the injuries it has suffered and will continue to suffer as a result of these Defendants' conduct.

46. Unless and until enjoined by order of this Court, these Defendants will continue trespassing on State Parks' property. State Parks is therefore entitled to an injunction directing these Defendants to remove the Pipeline from the Park.

**THIRD CAUSE OF ACTION**

**Continuing Trespass to Land**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

47. The allegations in Paragraphs 1 to 46, above, are hereby incorporated by reference as though fully set forth herein.

48. By performing the check valve work at Gaviota State Park during the week of August 10, 2026, in a way that exceeded the scope of the limited check valve permit issued by State Parks, and by entering the Park on August 21 and 28, 2026, to perform work related to the Pipeline without the consent or permission of State Parks, Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 have trespassed on State Parks' property.

49. By trespassing at the Park, these Defendants have wrongfully occupied and encroached upon State Parks' property, have injured/harmed State Parks' property rights, and have interfered with State Parks' and the general public's use and enjoyment of the Park.

50. State Parks does not have an adequate remedy at law for the injuries it has suffered and will continue to suffer as a result of these Defendants' conduct.

51. Unless and until enjoined by order of this Court, these Defendants will continue trespassing on State Parks' property. State Parks is therefore entitled to an injunction directing these Defendants to obtain State Parks' prior express consent and permission any time these Defendants want to enter Gaviota State Park to conduct activities beyond the scope of authorized public access.

/ / /

/ / /

**FOURTH CAUSE OF ACTION**

**Declaratory Judgment**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

52. The allegations in Paragraphs 1 to 51, above, are hereby incorporated by reference as though fully set forth herein.

53. There is an actual controversy between State Parks and Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 regarding whether these Defendants are authorized to transport oil under and through the Park, whether these Defendants have the right to leave their Pipeline in the Park, and whether these Defendants are authorized to enter the Park to conduct activities beyond the scope of authorized public access without the prior express consent and permission of State Parks.

54. State Parks contends that these Defendants do not have the right to transport oil under and through the Park, the right to leave their Pipeline in the Park as of March 14, 2026, or the right to enter the Park to conduct activities beyond the scope of authorized public access without the express consent and permission of State Parks. These Defendants, on the other hand, contend that they have these rights.

55. State Parks seeks a judicial determination that (1) State Parks holds a fee interest as to the entirety of the Park; (2) the easement that State Parks issued to Sable's predecessor-in-interest expired in 2016 and no new easement has been granted; (3) Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 do not have a fee interest as to any portion of the Park; (4) these Defendants do not have the right to transport oil through that segment of the Pipeline that passes through the Park; (5) these Defendants do not have the right to leave their Pipeline in the Park; and (6) these Defendants do not have the right to

enter the Park to conduct activities beyond the scope of authorized public access without first obtaining State Parks' express consent and permission.

**PRAYER FOR RELIEF**

WHEREFORE, State Parks prays for judgment as follows:

1. For an order from the Court enjoining Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 from transporting oil through that segment of the Pipeline that runs under and through Gaviota State Park.

2. For an order from the Court requiring Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 to remove or otherwise render irreversibly inoperable that segment of the Pipeline that runs under and through Gaviota State Park.

3. For an order from the Court requiring Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 to obtain State Parks' prior express consent and permission any time these Defendants want to enter Gaviota State Park to conduct activities beyond the scope of authorized public access.

4. For a declaration that (1) State Parks holds a fee interest as to the entirety of the Park; (2) the easement that State Parks issued to Sable's predecessor-in-interest expired in 2016 and no new easement has been granted; (3) Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10 do not have a fee interest as to any portion of the Park; (4) these Defendants do not have the right to transport oil through that segment of the Pipeline that passes through the Park; (5) these Defendants do not have the right to leave their Pipeline in the Park; and (6) these Defendants do not have the right to enter the Park to conduct activities beyond the scope of authorized public access without first obtaining State Parks' express consent and permission.

5. For costs of suit, damages and costs pursuant to Civil Code section 3334 in an amount that is yet to be ascertained, punitive damages, attorneys' fees pursuant

to the terms of the Annual Permit, and for such other and further relief as the Court deems necessary and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1, State Parks demands a jury trial for all issues so triable.

Dated: September 30, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California

/s/ Nicholas Tsukamaki

NICHOLAS TSUKAMAKI
Deputy Attorney General
*Attorneys for Plaintiff*
*Department of Parks & Recreation*