LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

HOLLAND & KNIGHT LLP
James W. Noe (*pro hac vice*)
*jim.noe@hklaw.com*
Ashley Akers (*pro hac vice*)
*ashley.akers@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525
Facsimile: +1 202.955.5564

*Attorneys for Defendants Sable Offshore Corp. and Pacific Pipeline Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CALIFORNIA DEPARTMENT OF PARKS AND RECREATION,

Plaintiff,

v.

SABLE OFFSHORE CORP., PACIFIC PIPELINE COMPANY, and DOES 1-10 inclusive,

Defendants,

and

UNITED STATES OF AMERICA,

Intervenor-Defendant

Case No. 2:26-cv-02946-SVW-SSC

**DEFENDANTS SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S ANSWER TO FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF**

Hon. Stephen V. Wilson

Complaint Filed: March 17, 2026
Date Removed: March 19, 2026
Amended Complaint: October 9, 2026

Defendants Sable Offshore Corp. and Pacific Pipeline Company (collectively, "Sable"), by their attorneys, hereby answer the First Amended Complaint, ECF 69 ("FAC"), filed by Plaintiff California Department of Parks and Recreation ("State Parks").[1]

## NATURE OF ACTION[2]

1. Paragraph 1 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

2. Sable admits that State Parks previously granted an easement to Celeron Pipeline Company of California ("Celeron") with respect to the pipeline. Sable also admits that on or about March 14, 2026, oil transportation resumed as a result of Sable's compliance with a federal Defense Production Act order requiring Sable to immediately resume such oil transportation. Sable further admits that after the issuance of that federal Defense Production Act order and Sable's resumption of oil transportation, State Parks demanded that Sable remove the pipeline from Gaviota State Park. Otherwise, Paragraph 2 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

## PARTIES

3. Sable lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and, on that basis, denies them.

4. Sable denies that it is a Texas corporation and that Sable's principal place of business is in California. Sable admits that it, together with its subsidiary

---

[1] Sable notes that a different case before this Court, brought by Sable against State Parks and filed several days prior to this lawsuit, involves substantially similar issues. *See Sable Offshore Corp. v. Quintero*, No. 26-cv-02739-SVW-SSC (C.D. Cal. filed Mar. 13, 2026).

[2] For ease of reference, Sable uses the headers from the FAC, but Sable does not admit any factual allegations or acquiesce in any legal conclusions contained therein.

Pacific Pipeline Company, is the owner of the Santa Ynez Pipeline System ("SYPS"), that the SYPS is located in part in Santa Barbara County, and that the SYPS includes the facilities described, among others. Sable admits that a segment of CA-325, approximately four miles long, runs under Gaviota State Park. Sable admits that all oil that flows through the SYPS flows through CA-325.

5. Sable admits that Pacific Pipeline Company ("PPC") is a Delaware corporation authorized to do business in California and is wholly owned by Sable Offshore Corp. Sable denies that PPC's principal place of business is in California. Sable admits that Sable Offshore Corp. acquired PPC, including its assets Lines 901 and 903, which are now known as CA-324 and CA-325, respectively. To the extent the FAC implies that PPC no longer owns CA-324 and CA-325, Sable denies this. The remaining allegations in Paragraph 5 state legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

6. Sable admits that the United States has intervened as a defendant in this lawsuit.

7. Sable lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 regarding anonymous defendants and, on that basis, denies them. Otherwise, Paragraph 7 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

8. Paragraph 8 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

## VENUE AND JURISDICTION

9. Sable admits that it removed this action from the Superior Court of California, County of Santa Barbara. Otherwise, Paragraph 9 states legal arguments

and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

10. Sable admits that venue is proper in this Court. Otherwise, Paragraph 9 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

## BACKGROUND AND FACTUAL ALLEGATIONS

### Gaviota State Park

11. Sable admits Gaviota State Park is located at 1595 U.S. Highway 101, Goleta, CA 93117, in the southern part of Santa Barbara County. Sable lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11 and, on that basis, denies them.

### The Previous Easement Issued by State Parks to Sable's Predecessor-in-Interest

12. Sable admits that on August 26, 1987, State Parks entered into an easement agreement with Celeron. To the extent the remaining sentences of Paragraph 12 purport to paraphrase or quote documents, those documents speak for themselves and are the best evidence of their contents. Sable admits that the pipeline described in the easement is the same pipeline segment now designated CA-325, and that Sable is currently transporting oil through CA-325 pursuant to the federal Defense Production Act order requiring it to do so. Sable lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and, on that basis, denies them.

13. Paragraph 13 states legal conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

### The 2015 Refugio Oil Spill

14. Sable admits that Segments CA-324 and CA-325 were owned by Plains Pipeline, L.P. ("Plains") on May 19, 2015, and that a portion of Segment CA-324

was publicly reported to have ruptured and discharged oil on that date into coastal areas of Santa Barbara County. Sable lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 and, on that basis, denies them.

15. Sable admits that PPC purchased Line 901 and portions of Line 903 from Plains in and around 2022, and that Sable acquired PPC and its assets in 2024. Sable admits that Line 901 and the portions of Line 903 purchased by PPC were renamed Segments CA-324 and CA-325. Sable further admits that on or about March 13, 2020, Plains, along with the United States, the State of California, and various State agencies, entered into a Consent Decree that, among other things, resolved litigation related to the oil spill. Sable denies the remaining allegations in Paragraph 15.

**The Annual Right of Entry Permits Issued by State Parks to Sable and Its Predecessors-in-Interest**

16. Sable admits that it entered into Right of Entry permits ("ROEs") in 2024 and 2025, and that previous owners of the portions of the SYPS that traverse Gaviota State Park also entered into ROEs in prior years. The terms of the permits speak for themselves and are the best evidence of their contents. Sable denies any allegations in Paragraph 16 that are inconsistent with the language of the permits. Sable denies the remaining allegations in Paragraph 16.

17. Sable admits that State Parks issued an ROE permit on July 25, 2025, that, pursuant to its terms, runs from July 27, 2025 through July 26, 2026, and that the above-described permit is attached as Exhibit D to the FAC. The remaining allegations in Paragraph 17 purport to paraphrase or quote the ROE, which requires no response. To the extent that a response is required, the permit speaks for itself and is the best evidence of its content. Sable denies any allegations in Paragraph 17 that are inconsistent with the language of the permit.

**The Right of Entry Permit Issued to PPC in May 2025 to Perform Anomaly Digs**

18. Sable admits that State Parks issued an ROE on May 8, 2025. The remainder of Paragraph 18 purports to paraphrase or quote an ROE, which requires no response. To the extent that a response is required, the permit speaks for itself and is the best evidence of its content. Sable denies any allegations in Paragraph 18 that are inconsistent with the language of the permit. Sable admits that the purpose of the ROE was for inspection and potential repairs, and that it completed eighteen anomaly digs in June 2025. Sable denies the remaining allegations in Paragraph 18.

**Sable's Prior Easement Application with State Parks**

19. Sable admits that it was engaged in discussions with State Parks from 2024 through 2026 concerning State Parks' position that Sable must obtain a new easement. The remainder of the first sentence of Paragraph 19 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them. The second sentence of Paragraph 19 purports to quote an email, which requires no response. To the extent that a response is required, the email speaks for itself and is the best evidence of its content. Sable denies any allegations in Paragraph 19 that are inconsistent with the language of the email, and further denies that the email, which states various conclusions and disputed legal contentions and is only a small part of the parties' negotiation history, has independent factual or legal significance.

20. Sable denies the allegations in Paragraph 20.

21. Sable admits that a meeting that discussed a pipeline easement through Gaviota State Park took place on May 22, 2025, between representatives of Sable and representatives of State Parks and the California Department of General Services. The remainder of Paragraph 21 characterizes the meeting; Sable denies this characterization.

22. Sable admits that a letter was sent by Ms. Siverson to Mr. Alcock and Sable's outside counsel on or about June 27, 2025. The remaining allegations in Paragraph 21 purport to quote the letter, which requires no response. To the extent that a response is required, the letter speaks for itself and is the best evidence of its content. Sable denies any allegations in Paragraph 21 that are inconsistent with the language of the letter, and further denies that the letter, which states various conclusions and disputed legal contentions and is only a small part of the parties' negotiation history, has independent factual or legal significance.

23. Sable admits that Ms. Siverson sent an email to Sable's counsel on July 25, 2025, and a separate email on December 31, 2025. The remaining allegations in Paragraph 23 purport to quote the two emails, which require no response. To the extent that a response is required, the emails speak for themselves and are the best evidence of their content. Sable denies any allegations in Paragraph 23 that are inconsistent with the language of the emails, and further denies that the emails, which state various conclusions and disputed legal contentions and are only a small part of the parties' negotiation history, have independent factual or legal significance.

24. Paragraph 24 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

25. Sable admits that on March 13, 2026, the United States Department of Energy issued a federal Defense Production Act order requiring Sable to immediately resume such oil transportation. The remaining allegations in Paragraph 25 purport to quote that order and a Politico article, which requires no response. To the extent that a response is required, the documents speak for themselves and are the best evidence of their content. Sable denies any allegations in Paragraph 25 that are inconsistent with the language of the documents.

26. Sable admits that State Parks sent it the letter attached as Exhibit F on March 14, 2026. The remainder of Paragraph 26 purports to paraphrase the letter, which requires no response. To the extent that a response is required, the letter speaks for itself and is the best evidence of its content. Sable denies any allegations in Paragraph 26 that are inconsistent with the language of the letter, and further denies that the letter, which states various conclusions and disputed legal contentions after this dispute arose, has independent factual or legal significance. The last sentence of Paragraph 26 also states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

27. Sable lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 27 and, on that basis, denies them. The second sentence of Paragraph 27 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

28. Paragraph 28 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

**Sable's Additional Trespasses Since March 2026**

29. Sable admits that State Parks issued an ROE permit on August 7, 2026. The allegations in Paragraph 29 purport to paraphrase or quote the ROE, which requires no response. To the extent that a response is required, the permit speaks for itself and is the best evidence of its content. Sable denies any allegations in Paragraph 29 that are inconsistent with the language of the permit.

30. The allegations in Paragraph 30 purport to paraphrase or quote the ROE, which requires no response. To the extent that a response is required, the permit speaks for itself and is the best evidence of its content. Sable denies any

allegations in Paragraph 30 that are inconsistent with the language of the permit.

31. Sable admits that work began pursuant to the ROE on August 10, 2026, and that this work completed on August 14, 2026. Sable admits that there may have been instances when the number of vehicles were exceeded and an existing turnaround was used in order to not disturb otherwise less disturbed areas inside the ROE footprint. Sable denies the remaining allegations in Paragraph 31.

32. Paragraph 32 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

33. Sable admits that Mr. Soderberg is employed by Sable and that he emailed Ms. Wilson at State Parks on August 19, 2026. Sable further admits that Ms. Wilson responded to that email on August 19, 2026. The remaining allegations in Paragraph 33 purport to paraphrase or quote those emails, which require no response. To the extent that a response is required, the emails speak for themselves and are the best evidence of their contents. Sable denies any allegations in Paragraph 33 that are inconsistent with the language of the emails.

34. Sable admits that Ms. Siverson emailed Sable, several of Sable's counsel, and the United States Department of Justice on August 19, 2026. The remaining allegations in Paragraph 34 purport to paraphrase or quote that email, which requires no response. To the extent that a response is required, the email speaks for itself and is the best evidence of its content. Sable denies any allegations in Paragraph 34 that are inconsistent with the language of the email, and further denies that the email, which states various conclusions and disputed legal contentions and is only a small part of the parties' negotiation history, has independent factual or legal significance.

35. Paragraph 35 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable

denies them.

**FIRST CAUSE OF ACTION**

**Continuing Trespass**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

36. Sable repeats and reasserts its responses to Paragraphs 1 to 35 as if fully set forth herein.

37. Paragraph 37 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

38. Paragraph 38 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

39. Paragraph 39 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

40. Paragraph 40 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

41. Paragraph 41 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

**SECOND CAUSE OF ACTION**

**Permanent Trespass**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

42. Sable repeats and reasserts its responses to Paragraphs 1 to 41 as if fully

set forth herein.

43. Paragraph 43 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

44. Paragraph 44 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

45. Paragraph 45 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

46. Paragraph 46 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

## THIRD CAUSE OF ACTION

**Continuing Trespass to Land**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

47. Sable repeats and reasserts its responses to Paragraphs 1 to 46 as if fully set forth herein.

48. Paragraph 48 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

49. Paragraph 49 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

50. Paragraph 50 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable

denies them.

51. Paragraph 51 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

## FOURTH CAUSE OF ACTION

**Declaratory Judgment**

**(Against Defendants Sable Offshore Corp., Pacific Pipeline Company, and DOES 1-10)**

52. Sable repeats and reasserts its responses to Paragraphs 1 to 51 as if fully set forth herein.

53. Paragraph 53 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

54. Paragraph 54 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

55. Paragraph 55 states legal arguments and conclusions to which no response is necessary. To the extent those allegations are deemed factual, Sable denies them.

## PRAYER FOR RELIEF

Sable denies that State Parks is entitled to any relief.

## AFFIRMATIVE DEFENSES

Sable asserts the following affirmative defenses to the FAC.

**First Defense**

**(Issue Preclusion)**

State Parks' claims are barred in whole or in part, by the doctrine of estoppel. This Court's August 19, 2026 order in the related case *Sable Offshore Corp. v.*

*Quintero*, No. 2:26-cv-02739-SVW-SSC, resolved the identical legal question presented here in a final judgment on the merits, with the same parties. State Parks' claims for trespass and declaratory judgment seek precisely the legal relief that the Order forecloses. Collateral estoppel requires summary judgment in favor of Sable on both claims.

**Second Defense**

**(Estoppel)**

State Parks' claims are barred, in whole or in part, by the doctrine of estoppel. State Parks was a signatory to the Consent Decree entered in *United States and California v. Plains All American Pipeline, L.P.*, No. 2:20-cv-02415-SVW-SSCx, ECF 6-1 (C.D. Cal. Mar. 13, 2020), which precludes State Parks from seeking to compel removal of the SYPS or from seeking to prevent the transportation of oil through the SYPS consistent with the Consent Decree.

**Third Defense**

**(Statute of Limitations)**

State Parks' claims are barred, in whole or in part, by the applicable statute of limitations. The limitations period for a permanent trespass—encompassing both the presence of the SYPS and any oil transportation contained within it—began running in 2016 and fully ran in 2019.

**Fourth Defense**

**(Acquiescence)**

State Parks' claims are barred, in whole or in part, by the doctrine of acquiescence. State Parks acquiesced in the present use of the SYPS and may not now seek to change its position.

**Fifth Defense**

**(Unclean Hands)**

State Parks' claims are barred, in whole or in part, by the doctrine of unclean hands. State Parks did not negotiate and act in good faith with regard to the Gaviota State Park easement.

**Sixth Defense**

**(Preemption – Pipeline Safety Act)**

State Parks' claims are barred, in whole or in part, by the Pipeline Safety Act, 49 U.S.C. § 60101 et seq.

**Seventh Defense**

**(Preemption – Defense Production Act)**

State Parks' claims are barred, in whole or in part, by the Defense Production Act, 50 U.S.C. § 4501 et seq.

**Eighth Defense**

**(Preemption – U.S. Constitution, Commerce Clause)**

State Parks' claims are barred, in whole or in part, by the Commerce Clause, U.S. Const. art. I, § 8, cl. 3.

**Ninth Defense**

**(Preemption – U.S. Constitution, Import-Export Clause)**

State Parks' claims are barred, in whole or in part, by the Import-Export Clause, U.S. Const. art. I, § 10, cl. 2.

**Tenth Defense**

**(Propriety of Relief)**

State Parks' prayer for injunctive relief is barred, in whole or in part, because State Parks has not shown its entitlement to any equitable relief.

**Eleventh Defense**

**(Limitation on Damages)**

State Parks' recovery, if any, is limited because the alleged trespass is permanent in nature and bars any recovery of prospective damages. In the alternative, to the extent the trespass is deemed continuing, State Parks may recover only past and present damages and is not entitled to prospective or diminution-in-value damages.

**Twelfth Defense**

**(Bar to Punitive Damages)**

State Parks' demand for punitive damages is barred because Defendants acted in good faith and in reasonable reliance on the March 13, 2026 Pipeline Capacity Prioritization and Allocation Order and the position of the United States, and engaged in no conduct constituting malice, oppression, or fraud.

**RESERVATION**

Sable reserves the right to add defenses as may be developed during litigation.

Dated: November 9, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

HOLLAND & KNIGHT LLP
James W. Noe (*pro hac vice*)
*jim.noe@hklaw.com*
Ashley Akers (*pro hac vice*)
*ashley.akers@hklaw.com*
800 17th St., NW, Suite 1100
Washington, DC 20006
Telephone: +1 202.469.5525
Facsimile: +1 202.955.5564

*Attorneys for Defendants Sable Offshore Corp. and Pacific Pipeline Company*