ROB BONTA
Attorney General of California
JESSICA E. TUCKER-MOHL (SBN 262280)
Supervising Deputy Attorney General
E-mail: Jessica.Tuckermohl@doj.ca.gov
NICHOLAS TSUKAMAKI (SBN 253959)
E-mail: Nicholas.Tsukamaki@doj.ca.gov
ALICE SEGAL (SBN 288108)
E-mail: Alice.Segal@doj.ca.gov
AMANDA JOHNSON (SBN 303457)
E-mail: Amanda.Johnson@doj.ca.gov
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Tel: (510) 879-0982
*Attorneys for Plaintiff*
*Department of Parks & Recreation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF PARKS AND RECREATION,**<br>Plaintiff,<br>v.<br>**SABLE OFFSHORE CORP., PACIFIC PIPELINE COMPANY,** and **DOES 1-10** inclusive,<br>Defendants,<br>and<br>**UNITED STATES OF AMERICA**<br>Intervenor-Defendant | 2:26-cv-02946-SVW-SSC<br>**STATEMENT OF GENUINE DISPUTES IN SUPPORT OF PLAINTIFF CALIFORNIA DEPARTMENT OF PARKS AND RECREATION'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY**<br>Date: January 11, 2027<br>Time: 1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson<br>Trial Date:<br>Action Filed: 3/17/2026 |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56-2 of the Local Rules for the Central District of California, Plaintiff California Department of Parks and Recreation ("State Parks") respectfully submits this Statement of Genuine Disputes in support of its Opposition to Defendants Sable Offshore Corp.'s and Pacific Pipeline Company's (collectively "Sable") Motion for Summary Judgment.

| **Moving Party's Uncontroverted Facts and Supporting Evidence** | **Opposing Party's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 1. Gaviota State Park (the "Park") is owned and operated by the California Department of Parks and Recreation ("State Parks").<br><br>*Evidence:* FAC ¶¶ 3, 11, ECF No. 69. | 1. Undisputed |
| 2. Sable's Onshore Pipeline (CA-324 and CA-325) passes below ground through the Park.<br><br>*Evidence:* FAC ¶ 4; RJN Ex. 1 (Court's August 19, 2026 Order) at 2 n.2.[1] | 2. Disputed<br><br>Only a portion of Sable's Onshore Pipeline, segment CA-325 passes underground through Gaviota State Park.<br><br>*Evidence:* ECF No. 69, FAC ¶ 4; ECF No. 71-5, RJN Ex. 1 (Court's August 19, 2026 Order) at pp. 6-7. |
| 2. Moving Party's Response | |
| 3. At times, Sable accesses the surface of the Park to perform in-line inspection work and other safety and maintenance work.<br><br>*Evidence:* FAC ¶¶ 29-35; FAC Ex. G, ECF No. 69-7 at 14-15; RJN Ex. 1 at 19. | 3. Undisputed |

| | |
|---|---|
| | |
| 4. The in-line inspection and other safety and maintenance work is required to keep the Onshore Pipeline operational pursuant to the federal Consent Decree issued in *United States v. Plains All American Pipeline, L.P.*, No. 2:20-cv-02415-SVW-SSC (C.D. Cal.).<br><br>*Evidence:* FAC ¶¶ 29-35, Ex. G, ECF No. 69-7 at 14-15; RJN Ex. 1 at 19; RJN Ex. 12. | 4. Undisputed |
| 5. On January 20, 2025, the President of the United States issued Executive Order 14156, 90 Fed. Reg. 8433, "Declaring a National Energy Emergency."<br><br>*Evidence:* RJN Ex. 7 (Executive Order re: National Energy Emergency). | 5. Undisputed |
| 6. Executive Order 14156 finds that the "United States' insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy," leads to "diminished capacity to insulate itself from hostile foreign actors," and that "[t]hese numerous problems are most pronounced in our Nation's . . . West Coast, where dangerous State and local policies jeopardize our Nation's core national defense and security needs[.]" Executive Order 14156 directs that "agencies shall identify and use all lawful emergency or other authorities | 6. Disputed.<br><br>Undisputed that the Executive Order contains the quoted statements. Disputed that those quoted statements constitute the entirety of the Executive Order.<br><br>*Evidence:* ECF No. 71-11, Sable's RJN in Support of its Motion for Summary Judgment, Ex. 7 at 8433-34. |

| | |
|---|---|
| available to them to facilitate the supply, refining, and transportation of energy in and through the West Coast of the United States."<br><br>*Evidence:* RJN Ex. 7 at 8433-34. | |
| 6. Moving Party's Response | |
| 7. On March 13, 2026, the President of the United States issued Executive Order 14391, 91 Fed. Reg. 13199, delegating certain Presidential authority under the Defense Production Act.<br><br>*Evidence:* RJN Ex. 6 (DPA Delegation Order). | 7. Undisputed |
| 8. On March 13, 2026, under delegated authority pursuant to the Defense Production Act and 91 Fed. Reg. 13199, United States Energy Secretary Christopher Wright issued the Pipeline Capacity Prioritization and Allocation Order (the "DPA Order"), which expressly ordered Sable to restart the Onshore Pipeline.<br>*Evidence:* RJN Ex. 1 at 5; RJN Ex. 2 (DPA Order). | 8. Undisputed |
| 9. The DPA Order was accompanied by findings by United States Energy Secretary Christopher Wright entitled "United States Department of Energy Findings and Determinations and Prioritization and Allocation Plan for Hydrocarbon Transportation Services," | 9. Undisputed |

| | |
|---|---|
| which provide the Secretary's rationale for the DPA Order.<br><br>*Evidence*: RJN Ex. 3 (Findings Accompanying DPA Order). | |
| 10. After the issuance of the DPA Order, Sable restarted the flow of oil through the Onshore Pipeline.<br><br>*Evidence*: RJN Ex. 1 at 5. | 10. Undisputed |
| 11. On March 13, 2026, Sable filed a declaratory judgment action against the Director of State Parks, Armando Quintero, seeking a declaratory judgment that, inter alia, the DPA Order preempts any action brought under state law that would prevent Sable from compliance with the DPA Order, including a trespass action.<br><br>*Evidence*: RJN Ex. 8 (Quintero Complaint); RJN Ex. 1 at 6. | 11. Undisputed |
| 12. On March 17, 2026, State Parks filed its initial Complaint in this action, requesting a judicial order prohibiting Sable from transporting oil through the Onshore Pipeline and ordering Sable to remove or render inoperable the Onshore Pipeline; and declarations that, inter alia, Sable does not have the right to transport oil through the Onshore Pipeline or keep the Onshore Pipeline operational.<br><br>*Evidence*: Compl., Dkt. 1-1; RJN Ex. 1 at 6. | 12. Undisputed |
| 13. On May 26, 2026, Director Quintero moved to dismiss Sable's declaratory judgment action. | 13. Undisputed |

| | |
|---|---|
| *Evidence*: RJN Ex. 9 (Quintero motion to dismiss). | |
| 14. On June 8, 2026, Sable filed its opposition to Director Quintero's motion to dismiss its declaratory judgment action.<br><br>*Evidence*: RJN Ex. 10 (Sable opposition to Quintero motion to dismiss). | 14. Undisputed |
| 15. On June 15, 2026, Director Quintero filed his reply brief in further support of his motion to dismiss Sable's declaratory judgment action.<br><br>*Evidence*: RJN Ex. 11 (Quintero reply in support of motion to dismiss) | 15. Undisputed |
| 16. On August 19, 2026, this Court issued its Order in the related cases, United States v. Plains All American Pipeline L.P., No. 2:20-cv-02415-SVW-SSC, California v. Wright, No. 2:26-cv-03396-SVW-SSC, Sable Offshore Corp. v. Quintero, No. 2:26-cv-02739-SVW-SSC, and Center for Biological Diversity v. California Department of Forestry and Fire Protection, No. 2:26-cv-05242-SVW-SSC.<br>In the Order, this Court denied California's motion to preliminarily enjoin application of the DPA Order.<br>In the Order, this Court denied California's motion to dismiss in the Quintero case, entered Sable's requested declaratory judgment in Quintero, and closed the Quintero case. The Court stated that the DPA Order "does, as a matter of law, preempt the enforcement of any state law that | 16. Disputed.<br><br>Disputed that the Court denied California's motion to dismiss. Undisputed that the Court denied the motion to dismiss filed by the Director of State Parks, Armando Quintero in *Sable Offshore Corp. v. Quintero*, No. 2:26-cv-02739-SVW-SSC.<br><br>Undisputed that Sable has listed portions of the Court's Order. Disputed that Sable has listed the entirety of the Order, which provides that the Court went "beyond the present posture" of the motion to dismiss, determining that "not only does the DPA preemption argument survive the instant motion, but it also justifies issuing the [ ] requested declaratory judgment as a matter of law." |

| | |
|---|---|
| conflicts with Sable's ability to operate the Onshore Pipeline, including the trespass claim" and "bars California's Department of Parks and Recreation from bringing legal action to prevent Sable from complying with the DPA Order by operating the Onshore Pipeline."<br>The Order advised that this declaration would be "dispositive" in this trespass action.<br><br>*Evidence*: RJN Ex. 1 at 2, 29-31, 40, 44-45. | *Evidence*: ECF No. 71-11, Sable's RJN in Support of its Motion for Summary Judgment, Ex. 1 at 2, 29-31, 40, 44-45. |
| 16. Moving Party's Response | |
| 17. On October 9, 2026, State Parks filed its First Amended Complaint in this action, requesting a judicial order prohibiting Sable from transporting oil through the Onshore Pipeline, ordering Sable to remove or render inoperable the Onshore Pipeline, and declarations that, inter alia, Sable does not have the right to transport oil through the Onshore Pipeline or keep the Onshore Pipeline operational.<br><br>*Evidence*: FAC | 17. Disputed<br><br>Undisputed that Sable has described some of the relief requested in the First Amended Complaint. Disputed that Sable has fully described all of the relief sought in the First Amended Complaint.<br><br>*Evidence*: FAC |
| 17. Moving Party's Response | |
| 18. State Parks has refused to extend Sable an easement for the section of the Onshore Pipeline located in the Park. | 18. Disputed.<br><br>The easement was not "refused" to Sable. Instead between April 2024 and February 2026, State Parks and |

| | |
|---|---|
| *Evidence:* FAC ¶ 17; ECF No. 27 (Rusch Decl.) ¶ 20. | Sable participated in negotiations regarding the issuance of a new easement to Sable. They were unable to reach an agreement regarding the terms of the requested easement.<br><br>Also disputed that State Parks refused to "extend" Sable an easement. The easement previously issued to Sable's predecessor-in-interest expired in 2016. Therefore, State Parks and Sable were negotiating a new easement, not an extension of the previous easement.<br><br>*Evidence:* ECF No. 69, FAC ¶¶ 19-26 |
| 18. Moving Party's Response | |

**Additional Material Facts in Support of State Parks' Opposition to Sable's Motion for Summary Judgment**

| State Parks' Additional Material Facts | Supporting Evidence |
|---|---|
| 1. Sable is the owner and operator of what Sable calls the Santa Ynez Pipeline System ("SYPS"), which includes two onshore pipelines (CA-324 and CA-325, formerly known as Lines 901 and 903, respectively). | ECF 23-4, Decl. of Dena Bellman ISO Motion for Preliminary Injunction ¶ 2 |
| 2. A four-mile segment of CA-325 runs underground and through Gaviota State Park ("Pipeline"). | ECF 23-4 at ¶ 2 |
| 3. In 1987 State Parks granted an easement to Sable's predecessor, Celeron Pipeline Company of California ("Celeron"), to operate a pipeline under Gaviota State Park ("Park"). That | ECF 23-4 at ¶¶ 5, 6 |

| | |
|---|---|
| pipeline is the same Pipeline through which Sable is currently transporting oil. The Celeron easement was for a term of thirty (30) years and expired in 2016. | |
| 4. Since the Pipeline was originally constructed, Sable and its predecessors have been required to obtain State Parks' permission prior to entering the Park to perform work or maintenance related to the Pipeline. | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 2 |
| 5. Since 2016, State Parks has not issued an easement allowing the transportation of oil through the Pipeline. | ECF 23-4 at ¶ 6 |
| 6. In 2015, a portion of Line 901 ruptured and discharged approximately 2,934 barrels of heavy crude-oil in Santa Barbara County, a portion of which reached the Pacific Ocean. | ECF 71-16 at p. 1 |
| 7. At the time of the oil spill, Lines 901 and 903 were owned and operated by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline, L.P. ("Plains"). | ECF 71-16 at pp. 1, 3 |
| 8. In 2020, Plains, along with the United States, the State of California, and various State agencies, entered into a court-issued consent decree ("Consent Decree") that resolved litigation related to the oil spill. | ECF 71-16 |
| 9. The Consent Decree imposed numerous obligations on Plains, including, *inter alia*, that it conduct biannual in line inspections of Lines 901 and 903 during the first two years of the Consent Decree, and annual inspections thereafter. Those inspection requirements did not exempt Plains from obtaining the consent of any of the underlying property owners (including State Parks) to enter their property to | ECF 71-16, Appx. B ¶¶ 4.A.2.a and 4.A.2.b |

| | |
|---|---|
| perform inspections of Lines 901 and 903. | |
| 10. The Consent Decree states, *inter alia*, that Plains is "responsible for achieving and maintaining full compliance with all applicable federal, state, and local laws, regulations, and permits." | ECF 71-16 at ¶ 78 |
| 11. In or around 2022, Pacific Pipeline Company ("PPC") purchased Lines 901 and 903 from Plains, and in or around 2024, Sable purchased the SYPS and acquired PPC and its assets, including Lines 901 and 903, which had been renamed CA-324 and CA-325, respectively. | ECF 23-4 at ¶ 7; State Parks' Request for Judicial Notice ISO Opp. to Sable's Motion for Summary Judgment, Ex. A at p. 7, fn. 2 |
| 12. Sable purchased those assets without a permit or easement from State Parks allowing it to restart the Pipeline. | ECF 23-4 at ¶ 6 |
| 13. Sable agreed to be bound by the Consent Decree, including the requirement to comply with all state laws and permitting requirements related to the pipelines. | State Parks' Request for Judicial Notice ISO Opp. to Sable's Motion for Summary Judgment, Ex. A at p. 7, fn. 2 |
| 14. In April 2024, Sable requested an easement from State Parks that would allow Sable to restart the transportation of oil through the Pipeline. | ECF 23-5 at ¶ 2 and Ex. I |
| 15. Sable knew it did not have an easement to transport oil under the Park, and Sable knew it needed an easement before it could begin operating its pipelines. | ECF 23-5 at ¶ 2 and Ex. I |
| 16. Between approximately April 2024 and February 2026, Sable was in discussions with State Parks regarding Sable's request for an easement. Those discussions did not result in State Parks granting an easement to Sable. | ECF 23-5 at ¶¶ 2, 10<br><br>ECF 23-4 at ¶ 6 |

| | |
|---|---|
| 17. One of the reasons that those discussions did not result in State Parks granting an easement to Sable was that Sable failed to satisfy all of State Parks' requests for information, including the information that State Parks needed to perform the review required under the California Environmental Quality Act (CEQA). | ECF 23-5 at ¶ 6 |
| 18. Between 2016 and 2025, State Parks issued limited annual Right of Entry ("ROE") permits to Sable's predecessors-in-interest or companies affiliated with Sable that allowed them to enter the Park to physically access the Pipeline and perform minimal maintenance on it. | ECF 23-4 at ¶¶ 8-10 |
| 19. The last annual ROE permit expired on July 26, 2026. | ECF 23-4 at ¶ 10 |
| 20. The annual ROE permits were necessary because Sable does not have an easement that would otherwise allow it to access the Park. | ECF 23-4 at ¶ 8 |
| 21. On May 8, 2025, State Parks issued a separate ROE permit to PPC that allowed it to perform eighteen (18) "anomaly" digs along the Pipeline. The purpose of those digs was to expose the Pipeline in certain locations to allow a physical inspection of it and to determine if repairs of the Pipeline were needed. | ECF 23-4 at ¶ 11 and Ex. F |
| 22. The anomaly dig permit states that it "does not create or vest in [PPC] any interest" in Gaviota State Park, and that "[i]n no event shall this Permit authorize work in excess or contrary to the terms and conditions of any regulatory agency permit or approval. Under no circumstances, whether or not authorized by any regulatory | ECF 23-4, Ex. F |

| | |
|---|---|
| agency, other permit or any person or entity other than State, shall work exceed that which is authorized by this Permit." | |
| 23. In May or June 2025, PPC completed the 18 anomaly digs. PPC did not, however, complete one of the conditions of the ROE permit that required PPC to rehabilitate (by way of reseeding) some of the dig areas, and remediate a road located in the Park that PPC damaged. The permit expired on August 8, 2025. As a consequence of the failed rehabilitation and lack of reseeding, the dig areas at issue are currently overgrown with invasive plants. | ECF 23-4 at ¶ 11 |
| 24. Even when the ROE permits were in effect, they did not allow the transport of oil across State lands. | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 4 |
| 25. In December 2025, and while its easement negotiations with State Parks were still ongoing, Sable requested that the U.S. Department of Energy use the Defense Production Act ("DPA") to authorize Sable to restart the pipelines. | ECF 71-9 at pp. 3-4 |
| 26. Upon receiving Sable's request, the General Counsel of the Department of Energy sought an opinion from the Office of Legal Counsel (OLC) within the U.S. Department of Justice. | ECF 71-9 at p. 1 |
| 27. On March 3, 2026, the United States Department of Justice, Office of Legal Counsel responded to Sable's request for authorization to restart the pipelines under the DPA by issuing a legal opinion taking the novel view that a DPA order issued to Sable by the President or his delegee "would preempt the California laws currently impeding Sable from resuming | ECF 71-9 at p. 1 |

| | |
|---|---|
| production and operating the associated pipeline infrastructure." | |
| 28. On March 13, 2026, the President added the Secretary of Energy to the list of executive officers authorized to issue orders under the DPA. | *Adjusting Certain Delegations Under the Defense Production Act*, Exec. Order No. 14391, 91 Fed. Reg. 13,199 (Mar. 13, 2026) |
| 29. On March 13, 2026, Energy Secretary Chris Wright issued an order pursuant to Sections 101(a) and (c) of the DPA, entitled *Pipeline Capacity Prioritization and Allocation Order* ("DPA Order"), which directed Sable to restart the flow of oil through the SYPS, including the section of CA-325 running under the Park. | ECF 71-6 |
| 30. On March 14, 2026, Sable started pumping oil through Lines CA-324 and CA-325 without any easement from State Parks. | ECF 23-2, Ex. 2 |
| 31. After learning that Sable "ha[d] begun or imminently intend[ed] to begin" restarting CA-325 without its permission, State Parks terminated its negotiations with Sable, denied Sable's easement request, and demanded that Sable halt its trespass. | ECF 69-6 |
| 32. On August 7, 2026, and pursuant to Sable's request, State Parks issued Sable a limited duration ROE permit that allowed Sable to perform work related to a check valve on the Pipeline ("check valve permit"). | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 5 |
| 33. The check valve permit required that Sable perform all work within a fifty-foot wide footprint surrounding the Pipeline, including the parking and storage of equipment, vehicles, and materials. The permit also placed a limit on the number of trucks and other equipment Sable could use for the work. | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 5 and Ex. A |

| | |
|---|---|
| 34. Sable violated the terms of the check valve permit, in that some of the vehicles, equipment, and materials that Sable used for the check valve work were located outside of the fifty-foot wide footprint referenced in the permit. Sable also used more vehicles than the number allowed under the permit. | Declaration of David Dimond ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 3; ECF 73, Sable's Answer to First Amended Complaint, ¶ 31 |
| 35. Sable did not have permission from State Parks to operate outside of the fifty-foot wide footprint set forth in the check valve permit, or to use more vehicles than the number allowed under the permit. | Declaration of David Dimond ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 3 |
| 36. On August 28, 2026, at least two Sable work trucks accessed the Park in a location inaccessible to the public by vehicle. Sable did not have permission from State Parks to enter the Park on that day. | Declaration of David Elias ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 2 |
| 37. Recognizing the current reality that Sable's oil has been flowing through the Park without an easement for several months over State Parks' objection, State Parks has allowed Sable access to the Park to ensure that the Pipeline is properly maintained in order to protect the Park and public safety. | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 6 |
| 38. State Parks has informed Sable that it needs to provide information to State Parks regarding the extent of its maintenance-related entries at the Park, and that it needs to obtain State Parks' prior consent in the form of a permit or easement before entering the Park to perform that maintenance. | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 7 |
| 39. State Parks needs to know the extent of Sable's entries and activities at the Park so that State | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 8 |

| | |
|---|---|
| Parks can condition the manner in which Sable conducts those activities to address any effects to the property and the public (e.g., tribal notification, allocating staff and resources to monitor the entries, notifying the public before closing areas to public access, etc.). | |
| 40. State Parks is not preventing or seeking to prevent Sable from accessing the Park to maintain the Pipeline. | Declaration of Dena Bellman ISO State Parks' Opposition to Sable's Motion for Summary Judgment, ¶ 9 |

Dated: November 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JESSICA E. TUCKER-MOHL
Supervising Deputy Attorney General

*/s/ Alice M. Segal*

ALICE M. SEGAL
Deputy Attorney General
*Attorneys for Plaintiff*
*Department of Parks & Recreation*