ROB BONTA
Attorney General of California
JESSICA E. TUCKER-MOHL (SBN 262280)
Supervising Deputy Attorney General
E-mail: Jessica.Tuckermohl@doj.ca.gov
NICHOLAS TSUKAMAKI (SBN 253959)
E-mail: Nicholas.Tsukamaki@doj.ca.gov
ALICE SEGAL (SBN 288108)
E-mail: Alice.Segal@doj.ca.gov
AMANDA JOHNSON (SBN 303457)
E-mail: Amanda.Johnson@doj.ca.gov
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Tel: (510) 879-0982
*Attorneys for Plaintiff*
*Department of Parks & Recreation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF PARKS AND RECREATION,**<br><br>Plaintiff,<br><br>**v.**<br><br>**SABLE OFFSHORE CORP., PACIFIC PIPELINE COMPANY,** and **DOES 1-10** inclusive,<br><br>Defendants,<br><br>and<br><br>**UNITED STATES OF AMERICA**<br><br>Intervenor-Defendant | 2:26-cv-02946-SVW-SSC<br><br>**STATEMENT OF GENUINE DISPUTES IN SUPPORT OF PLAINTIFF CALIFORNIA DEPARTMENT OF PARKS AND RECREATION'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT INTERVENOR UNITED STATES OF AMERICA**<br><br>Date: January 11, 2027<br>Time: 1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson<br>Trial Date:<br>Action Filed: 3/17/2026 |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56-2 of the Local Rules for the Central District of California, Plaintiff California Department of Parks and Recreation ("State Parks") respectfully submits this Statement of Genuine Disputes in support of its Opposition to Intervenor Defendant the United States of America's Motion for Summary Judgment.

| **Moving Party's Uncontroverted Facts and Supporting Evidence** | **Opposing Party's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 1. On January 20, 2025, the President issued Executive Order 14156, determining that the nation's "insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy." Declaring a National Energy Emergency, 90 Fed. Reg. 8,433 (Jan. 29, 2025). | 1. Undisputed |
| 2. On March 13, 2026, the Secretary of Energy issued an order under the Defense Production Act, titled, "Pipeline Capacity Prioritization and Allocation Order" (the "DPA Order"). Ex. A, Decl. of Ashley Nunes ¶ 3, Attach. 1 ("Nunes Decl."). | 2. Undisputed |
| 3. On March 13, 2026, the Secretary of Energy issued a document, titled "United States Department of Energy (DOE) Findings and Determinations and Prioritization and Allocation Plan for Hydrocarbon Transportation Services. *Id.* at ¶ 4, Attach. 2. | 3. Undisputed |
| 4. On March 13, 2026, the Department of Energy Office of Policy and Hydrocarbons and Geothermal Energy Office, through | 4. Undisputed |

| | |
|---|---|
| Deputy Secretary James P. Danly, issued a Memorandum for the Secretary of Energy addressing "Whether to issue a Defense Production Act prioritization/allocation order for the Sable pipeline." *Id.* at ¶ 5, Attach. 3. | |
| 5. California is vital to U.S. energy security and national security. *Id.* at ¶ 8. | 5. Undisputed |
| 6. California has the highest concentration of defense-related activities in the United States with approximately 470 federal military sites. | 6. Disputed. The proffered fact is vague and ambiguous, preventing meaningful investigation into the factual basis of this assertion. The United States has thus not provided the necessary admissible evidence pursuant to Federal Rules of Civil Procedure 8 and 56(c).<br><br>This proffered fact is also unsupported by any cited evidence.<br><br>There are 32 military sites within California, including Army, marine, navy, air force, and reserve and national guard installations.<br><br>*Evidence*: ECF No. 72-3, Attachment 3 at p. 28. |
| 6. Moving Party's Response | |
| 7. Since 2001, California has overseen a 65% drop in its in-state oil production. Nunes Decl. Attach. 3 p.4. | 7. Undisputed |

| | |
|---|---|
| 8. By 2025, California imported 61% of its crude petroleum from foreign sources. *Id.* | 8. Undisputed |
| 9. The ongoing conflict with Iran and situation in the Strait of Hormuz has constrained supply in international oil markets and created fuel disruption risks. *Id.* | 9. Undisputed |
| 10. Sable Offshore Corp. and Pacific Pipeline Company (collectively "Sable") are the lessee, owner, and operator of the Santa Ynez Unit. *Id.* at Attach. 1 p.1. | 10. Undisputed |
| 11. The Santa Ynez Unit is one of the largest offshore oil fields in the United States. *Id.* at Attach. 1 p.2. | 11. Disputed. The cited link notes that only one of the offshore production platforms in the Santa Ynez Unit ranks 36 out of the top 100 to U.S. oil fields as of December 31, 2013. No subsequent data has been provided.<br><br>*Evidence*: https://www.eia.gov/naturalgas/crudeoilreserves/top100/pdf/top100.pdf |
| 11. Moving Party's Response | |
| 12. The Santa Ynez Unit consists of 16 federal leases, three offshore production platforms (Hondo, Harmony, and Heritage), and associated ancillary facilities located in federal waters off the coast of California. *Id.* at Attach. 2 p.2 n.3. | 12. Undisputed |
| 13. The Santa Ynez Pipeline System refers to the pipeline connecting the Santa Ynez Unit to the Pentland Station terminal, and includes Pipeline Segment 324 ("CA-324") | 13. Undisputed |

| | |
|---|---|
| and Pipeline Segment 325 ("CA-325"). *Id.* | |
| 14. CA-324 is an onshore pipeline running approximately 10.9 miles and carrying crude oil from the Las Flores Canyon processing facility to the Gaviota Pump Station. *Id.* at Attach. 3 p.15. | 14. Undisputed |
| 15. CA-325 is an onshore pipeline consisting of two segments. *Id.* | 15. Undisputed |
| 16. Segment CA-325A runs approximately 38.7 miles and carries crude oil from the Gaviota Pump Station, through Gaviota State Park, and then to the Sisquoc Pump Station. *Id.*; Ex. B, Decl. of Dustin B. Hubbard Attach. 2 p.3. | 16. Undisputed |
| 17. Segment CA-325B runs approximately 74.8 miles and carries crude oil from the Sisquoc Pump Station to the Pentland Station. Ex. A, Nunes Decl. Attach. 3 p.15. | 17. Undisputed |
| 18. On or about May 19, 2015, a portion of CA-324 (formerly known as "Line 901") ruptured and released oil in Santa Barbara County. Answer ¶ 13, Dkt. No. 62. | 18. Disputed.<br><br>On May 19, 2015, a portion of CA-324 (formerly known as "Line 901") ruptured and released approximately 2,934 barrels of heavy crude-oil in Santa Barbara County, a portion of which reached the Pacific Ocean and coastal areas within the County, including Refugio State Beach.<br><br>*Evidence*:<br>ECF 71-16 at p. 1 |
| 19. The Santa Ynez Unit System was closed in 2015, including CA-324 and CA-325. Nunes Decl. Attach. 3 p.15. | 19. Undisputed |

| | |
|---|---|
| 20. The DPA Order directed Sable to immediately prioritize and allocate transportation services for hydrocarbons from the Santa Ynez Unit through the Santa Ynez Pipeline, and to start performing under contracts for such transportation. *Id.* at Attach. 1 p.3. | 20.Undisputed |

**Additional Material Facts in Support of State Parks' Opposition to the United States' Motion for Summary Judgment**

| State Parks' Additional Material Facts | Supporting Evidence |
|---|---|
| 1. Sable is the owner and operator of what Sable calls the Santa Ynez Pipeline System ("SYPS"), which includes two onshore pipelines (CA-324 and CA-325, formerly known as Lines 901 and 903, respectively). | ECF 23-4, Decl. of Dena Bellman ISO Motion for Preliminary Injunction ¶ 2 |
| 2. A four-mile segment of CA-325 runs underground and through Gaviota State Park ("Pipeline"). | ECF 23-4 at ¶ 2 |
| 3. In 1987 State Parks granted an easement to Sable's predecessor, Celeron Pipeline Company of California ("Celeron"), to operate a pipeline under Gaviota State Park ("Park"). That pipeline is the same Pipeline through which Sable is currently transporting oil. The Celeron easement was for a term of thirty (30) years and expired in 2016. | ECF 23-4 at ¶¶ 5, 6 |
| 4. Since the Pipeline was originally constructed, Sable and its predecessors have been required to obtain State Parks' permission prior to entering the Park to perform work or maintenance related to the Pipeline. | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 2 |
| 5. Since 2016, State Parks has not issued an easement allowing the | ECF 23-4 at ¶ 6 |

| | |
|---|---|
| transportation of oil through the Pipeline. | |
| 6. In 2015, a portion of Line 901 ruptured and discharged approximately 2,934 barrels of heavy crude-oil in Santa Barbara County, a portion of which reached the Pacific Ocean. | ECF 71-16 at p. 1 |
| 7. At the time of the oil spill, Lines 901 and 903 were owned and operated by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline, L.P. ("Plains"). | ECF 71-16 at pp. 1, 3 |
| 8. In 2020, Plains, along with the United States, the State of California, and various State agencies, entered into a court-issued consent decree ("Consent Decree") that resolved litigation related to the oil spill. | ECF 71-16 |
| 9. The Consent Decree imposed numerous obligations on Plains, including, *inter alia*, that it conduct biannual in line inspections of Lines 901 and 903 during the first two years of the Consent Decree, and annual inspections thereafter. Those inspection requirements did not exempt Plains from obtaining the consent of any of the underlying property owners (including State Parks) to enter their property to perform inspections of Lines 901 and 903. | ECF 71-16, Appx. B ¶¶ 4.A.2.a and 4.A.2.b |
| 10. The Consent Decree states, *inter alia*, that Plains is "responsible for achieving and maintaining full compliance with all applicable federal, state, and local laws, regulations, and permits." | ECF 71-16 at ¶ 78 |
| 11. In or around 2022, Pacific Pipeline Company ("PPC") purchased Lines 901 and 903 from Plains, and in or around 2024, Sable purchased the SYPS | ECF 23-4 at ¶ 7; State Parks' Request for Judicial Notice ISO Opp. to the United States' Motion for Summary Judgment, Ex. B at p. 7, fn. 2 |

| | |
|---|---|
| and acquired PPC and its assets, including Lines 901 and 903, which had been renamed CA-324 and CA-325, respectively. | |
| 12. Sable purchased those assets without a permit or easement from State Parks allowing it to restart the Pipeline. | ECF 23-4 at ¶ 6 |
| 13. Sable agreed to be bound by the Consent Decree, including the requirement to comply with all state laws and permitting requirements related to the pipelines. | State Parks' Request for Judicial Notice ISO Opp. to the United States' Motion for Summary Judgment, Ex. B at p. 7, fn. 2 |
| 14. In April 2024, Sable requested an easement from State Parks that would allow Sable to restart the transportation of oil through the Pipeline. | ECF 23-5 at ¶ 2 and Ex. I |
| 15. Sable knew it did not have an easement to transport oil under the Park, and Sable knew it needed an easement before it could begin operating its pipelines. | ECF 23-5 at ¶ 2 and Ex. I |
| 16. Between approximately April 2024 and February 2026, Sable was in discussions with State Parks regarding Sable's request for an easement. Those discussions did not result in State Parks granting an easement to Sable. | ECF 23-5 at ¶¶ 2, 10<br><br>ECF 23-4 at ¶ 6 |
| 17. One of the reasons that those discussions did not result in State Parks granting an easement to Sable was that Sable failed to satisfy all of State Parks' requests for information, including the information that State Parks needed to perform the review required under the California Environmental Quality Act (CEQA). | ECF 23-5 at ¶ 6 |
| 18. Between 2016 and 2025, State Parks issued limited annual Right of Entry ("ROE") permits to | ECF 23-4 at ¶¶ 8-10 |

| | |
|---|---|
| Sable's predecessors-in-interest or companies affiliated with Sable that allowed them to enter the Park to physically access the Pipeline and perform minimal maintenance on it. | |
| 19. The last annual ROE permit expired on July 26, 2026. | ECF 23-4 at ¶ 10 |
| 20. The annual ROE permits were necessary because Sable does not have an easement that would otherwise allow it to access the Park. | ECF 23-4 at ¶ 8 |
| 21. On May 8, 2025, State Parks issued a separate ROE permit to PPC that allowed it to perform eighteen (18) "anomaly" digs along the Pipeline. The purpose of those digs was to expose the Pipeline in certain locations to allow a physical inspection of it and to determine if repairs of the Pipeline were needed. | ECF 23-4 at ¶ 11 and Ex. F |
| 22. The anomaly dig permit states that it "does not create or vest in [PPC] any interest" in Gaviota State Park, and that "[i]n no event shall this Permit authorize work in excess or contrary to the terms and conditions of any regulatory agency permit or approval. Under no circumstances, whether or not authorized by any regulatory agency, other permit or any person or entity other than State, shall work exceed that which is authorized by this Permit." | ECF 23-4, Ex. F |
| 23. In May or June 2025, PPC completed the 18 anomaly digs. PPC did not, however, complete one of the conditions of the ROE permit that required PPC to rehabilitate (by way of reseeding) some of the dig areas, and remediate a road located in the Park that PPC damaged. The permit expired on August 8, 2025. As a consequence of the | ECF 23-4 at ¶ 11 |

| | |
|---|---|
| failed rehabilitation and lack of reseeding, the dig areas at issue are currently overgrown with invasive plants. | |
| 24. Even when the ROE permits were in effect, they did not allow the transport of oil across State lands. | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 4 |
| 25. In December 2025, and while its easement negotiations with State Parks were still ongoing, Sable requested that the U.S. Department of Energy use the Defense Production Act ("DPA") to authorize Sable to restart the pipelines. | ECF 71-9 at pp. 3-4 |
| 26. Upon receiving Sable's request, the General Counsel of the Department of Energy sought an opinion from the Office of Legal Counsel (OLC) within the U.S. Department of Justice. | ECF 71-9 at p. 1 |
| 27. On March 3, 2026, the United States Department of Justice, Office of Legal Counsel responded to Sable's request for authorization to restart the pipelines under the DPA by issuing a legal opinion taking the novel view that a DPA order issued to Sable by the President or his delegee "would preempt the California laws currently impeding Sable from resuming production and operating the associated pipeline infrastructure." | ECF 71-9 at p. 1 |
| 28. On March 13, 2026, the President added the Secretary of Energy to the list of executive officers authorized to issue orders under the DPA. | *Adjusting Certain Delegations Under the Defense Production Act*, Exec. Order No. 14391, 91 Fed. Reg. 13,199 (Mar. 13, 2026) |
| 29. On March 13, 2026, Energy Secretary Chris Wright issued an order pursuant to Sections 101(a) and (c) of the DPA, entitled *Pipeline Capacity Prioritization and Allocation Order* ("DPA | ECF 71-6 |

| | |
|---|---|
| Order"), which directed Sable to restart the flow of oil through the SYPS, including the section of CA-325 running under the Park. | |
| 30. On March 14, 2026, Sable started pumping oil through Lines CA-324 and CA-325 without any easement from State Parks. | ECF 23-2, Ex. 2 |
| 31. After learning that Sable "ha[d] begun or imminently intend[ed] to begin" restarting CA-325 without its permission, State Parks terminated its negotiations with Sable, denied Sable's easement request, and demanded that Sable halt its trespass. | ECF 69-6 |
| 32. On August 7, 2026, and pursuant to Sable's request, State Parks issued Sable a limited duration ROE permit that allowed Sable to perform work related to a check valve on the Pipeline ("check valve permit"). | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 5 |
| 33. The check valve permit required that Sable perform all work within a fifty-foot wide footprint surrounding the Pipeline, including the parking and storage of equipment, vehicles, and materials. The permit also placed a limit on the number of trucks and other equipment Sable could use for the work. | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 5 and Ex. A |
| 34. Sable violated the terms of the check valve permit, in that some of the vehicles, equipment, and materials that Sable used for the check valve work were located outside of the fifty-foot wide footprint referenced in the permit. Sable also used more vehicles than the number allowed under the permit. | Declaration of David Dimond ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 3; ECF 73, Sable's Answer to First Amended Complaint, ¶ 31 |
| 35. Sable did not have permission from State Parks to operate outside of the fifty-foot wide footprint set forth in the check | Declaration of David Dimond ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 3 |

| | |
|---|---|
| valve permit, or to use more vehicles than the number allowed under the permit. | |
| 36. On August 28, 2026, at least two Sable work trucks accessed the Park in a location inaccessible to the public by vehicle. Sable did not have permission from State Parks to enter the Park on that day. | Declaration of David Elias ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 2 |
| 37. Recognizing the current reality that Sable's oil has been flowing through the Park without an easement for several months over State Parks' objection, State Parks has allowed Sable access to the Park to ensure that the Pipeline is properly maintained in order to protect the Park and public safety. | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 6 |
| 38. State Parks has informed Sable that it needs to provide information to State Parks regarding the extent of its maintenance-related entries at the Park, and that it needs to obtain State Parks' prior consent in the form of a permit or easement before entering the Park to perform that maintenance. | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 7 |
| 39. State Parks needs to know the extent of Sable's entries and activities at the Park so that State Parks can condition the manner in which Sable conducts those activities to address any effects to the property and the public (e.g., tribal notification, allocating staff and resources to monitor the entries, notifying the public before closing areas to public access, etc.). | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 8 |
| 40. State Parks is not preventing or seeking to prevent Sable from accessing the Park to maintain the Pipeline. | Declaration of Dena Bellman ISO State Parks' Opposition to the United States' Motion for Summary Judgment, ¶ 9 |
| 41. In December 2025, and at | State Parks' Request for Judicial Notice |

| | |
|---|---|
| Sable's urging, PHMSA redesignated Lines CA-324 and 325 as interstate. | ISO Opp. to the United States' Motion for Summary Judgment, Ex. A |

Dated: November 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JESSICA E. TUCKER-MOHL
Supervising Deputy Attorney General

*/s/ Alice M. Segal*

ALICE M. SEGAL
Deputy Attorney General
*Attorneys for Plaintiff*
*Department of Parks & Recreation*